PSYCH-APPEAL, INC.
Meiram Bendat (Cal. Bar No. 198884)
8560 West Sunset Boulevard, Suite 500
West Hollywood, CA 90069
Tel: (310) 598-3690, x 101
Fax: (888) 975-1957
mbendat@psych-appeal.com

ZUCKERMAN SPAEDER LLP
D. Brian Hufford (admitted *pro hac vice*)
Jason S. Cowart (admitted *pro hac vice*)
485 Madison Avenue, 10th Floor
New York, NY 10022
Tel: (212) 704-9600
Fax: (212) 704-4256
dbhufford@zuckerman.com
jcowart@zuckerman.com

ZUCKERMAN SPAEDER LLP
Caroline E. Reynolds (admitted *pro hac vice*)
1800 M St., NW, Suite 1000
Washington, DC 20036
Tel: (202) 778-1800
Fax: (202) 822-8106
creynolds@zuckerman.com

*Attorneys for Plaintiff and the Putative Class*
*(Additional Counsel on Signature Page)*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| MARY JONES, through her agent, on her own behalf and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH,<br><br>Defendant. | Case No. 3:19-cv-06999-RS<br><br>**AMENDED CLASS ACTION COMPLAINT** |

Plaintiff Mary Jones (a pseudonym),[1] through her duly-appointed agent, complains as follows on her own behalf and on behalf of all others similarly situated, based on the best of her knowledge, information and belief, formed after an inquiry reasonable under the circumstances by herself and her undersigned counsel, against Defendant United Behavioral Health ("UBH"):

**INTRODUCTION**

1. This case arises from Defendant UBH's creation of its 2017 "Level of Care Guidelines" and its use of those Guidelines to determine whether mental health and/or substance use disorder services for which coverage was requested were consistent with generally accepted standards of care.

2. As detailed below, the 2017 Level of Care Guidelines at issue herein were among the UBH Guidelines challenged in two certified class actions pending in this Court: *Wit, et al. v. United Behavioral Health*, Case No. 14-cv-02346-JCS (N.D. Cal.) and *Alexander, et al. v. United Behavioral Health*, Case No. 14-cv-05337-JCS (N.D. Cal.). The cases have been consolidated and will be referred to collectively herein as the "*Wit* Litigation." The plaintiffs in the *Wit* Litigation asserted claims against UBH under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 - 1461.

3. Following a trial on the merits of the *Wit* Litigation, Chief Magistrate Judge Joseph C. Spero of this Court found that the UBH Level of Care Guidelines in effect from 2011 through 2017—including the 2017 Level of Care Guidelines at issue herein—were unreasonable and did not reflect generally accepted standards of care, and thus conflicted with the relevant terms of the *Wit* class members' plans. Accordingly, Judge Spero concluded that UBH breached its ERISA fiduciary duties by adopting its pervasively-flawed Guidelines and that UBH abused its

---

[1] In this litigation Plaintiff challenges Defendant's development of Guidelines applicable to mental illnesses and its use of those Guidelines to deny her requests for coverage of residential treatment for her mental health conditions. Because mental illness, unfortunately, remains subject to pervasive stigma, Plaintiff has legitimate concerns about publicly disclosing her identity. Thus, Plaintiff has chosen to file this action pseudonymously, using the name "Mary Jones." Her identity will be fully disclosed to Defendant and to the Court, so long as such identifying information is not released into the public record. Plaintiff's motion to proceed under a pseudonym will be filed contemporaneously with this Amended Complaint.

1  discretion when it used the Guidelines to deny coverage to the *Wit* class members. At the time this Complaint is being filed, Judge Spero has not yet issued a remedies order in the *Wit* Litigation.

4.  The three certified classes in the *Wit* Litigation (collectively, the "*Wit* Class") include only UBH members whose requests for coverage were denied by UBH between May 22, 2011 and June 1, 2017. As a result, UBH insureds, like Plaintiff, whose requests for coverage were denied by UBH on or after June 2, 2017 based on the defective 2017 Level of Care Guidelines are not members of the *Wit* Class and will not share in any of the remedies ultimately ordered by the Court in that case—even though UBH continued using its pervasively-flawed 2017 Level of Care Guidelines until May 9, 2018.

5.  UBH has already been found liable for breaching its fiduciary duties and violating ERISA by creating the pervasively-flawed 2017 Level of Care Guidelines and using them to deny coverage to thousands of its members. Plaintiff brings this action to ensure that *all* UBH members who were injured by UBH's proven misconduct with respect to the 2017 Level of Care Guidelines, including Plaintiff, will obtain all the relief available to them under ERISA.

**THE PARTIES**

6.  Plaintiff Mary Jones (a pseudonym), is a beneficiary of the S&P Global Inc. Plan, an employee welfare benefit plan sponsored by her mother, Sandra Tomlinson's employer (the "Tomlinson Plan" or the "Plan"). Plaintiff's mother is a participant in the Plan. Plaintiff's permanent residence is in Maplewood, New Jersey. On November 26, 2019, Plaintiff executed a general and durable power of attorney, granting her mother the authority to, among other things, commence, prosecute, settle, adjust, and compromise any and all legal proceedings on her behalf as her agent.

7.  Defendant United Behavioral Health ("UBH"), which also operates as OptumHealth Behavioral Solutions, is a corporation organized under California Law, with its principal place of business in San Francisco, California.

8.  UBH administers mental health and substance use disorder benefits for commercial welfare benefit plans. In this role, UBH administers requests for coverage on behalf

of members of health benefit plans governed by ERISA, including the health benefit plans of Plaintiff and the members of the putative class alleged herein. UBH thus has the authority to make final and binding benefit coverage determinations for mental health and substance use disorder services (collectively, "behavioral health services") under the plans it administers.

9. Because of the role UBH plays in making benefit determinations under the plans it administers, UBH is a fiduciary under ERISA.

## JURISDICTION AND VENUE

10. Defendant UBH's actions in administering employer-sponsored health care plans, including exercising discretion with respect to determinations of coverage for Plaintiff under the Tomlinson Plan, are governed by ERISA, 29 U.S.C. §§ 1001 - 1461. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and 29 U.S.C. § 1132(e) (ERISA).

11. Personal jurisdiction over Defendant UBH exists with this Court. United Behavioral Health is a corporation organized under California law, with significant contacts in California.

12. Venue is appropriate in this District. Defendant is headquartered in this District, administers plans here and conducts significant operations here.

## INTRADISTRICT ASSIGNMENT

13. This case should be assigned to the San Francisco Division of this Court because Defendant UBH is headquartered in this District, administers plans here and conducts significant operations here. In addition, assignment to the San Francisco Division is appropriate because this action is related to two consolidated actions currently pending before Chief Magistrate Judge Joseph C. Spero in this Division, *Wit, et al. v. United Behavioral Health*, Case No. 14-cv-02346-JCS (N.D. Cal.) and *Alexander, et al. v. United Behavioral Health*, Case No. 14-cv-05337-JCS (N.D. Cal.).

## STATEMENT OF FACTS

**I. Plaintiff's Plan**

14. The Tomlinson Plan is a self-funded plan governed by ERISA.

15. The Plan covers treatment for sickness, injury, mental illness, and substance use disorders. Residential treatment is a covered benefit under the Plan. The Plan does not limit coverage for residential treatment to emergency, short-term or crisis stabilization services.

16. As the behavioral health administrator for the Tomlinson Plan, UBH exercises its discretion to interpret Plan terms, limitations, and exclusions, to make determinations of coverage for behavioral health services, and to cause any resulting benefit payments to be made by the Plan. Under the terms of the Tomlinson Plan, an essential condition of coverage is that covered services must be consistent with generally accepted standards of care.

17. Therefore, one of the essential determinations UBH must make when reviewing claims for coverage under the Plan is whether the services for which coverage is requested are consistent with generally accepted standards of care. As described below, UBH developed its Level of Care Guidelines to use in making those determinations.

## II. UBH's Fiduciary Status

18. Because UBH has and exercises discretion with respect to the administration of the Plan, and because it makes all benefit determinations for behavioral health coverage under the Plan, UBH is a fiduciary within the meaning of ERISA, 29 U.S.C. § 1104.

19. As an ERISA fiduciary, UBH owes a duty of loyalty to plan participants and beneficiaries, which requires it to discharge its duties "solely in the interests of the participants and beneficiaries" of the plans it administers and for the "exclusive purpose" of providing benefits to participants and beneficiaries and paying reasonable expenses of administering the plan. UBH also owes plan participants and beneficiaries a duty of care, which requires it to act with reasonable "care, skill, prudence, and diligence" and in accordance with the terms of the plans, so long as such terms are consistent with ERISA.

## III. Generally Accepted Standards of Medical Practice

20. Generally accepted standards of care, in the context of mental health and substance use disorder services, are the standards that have achieved widespread acceptance among behavioral health professionals.

21. In the area of mental health and substance use disorder treatment, there is a continuum of intensity at which services are delivered. There are generally accepted standards of care for matching patients with the level of care that is most appropriate and effective for treating patients' conditions.

22. These generally accepted standards of care can be gleaned from and are reflected in multiple sources, including peer-reviewed studies in academic journals, consensus guidelines from professional organizations, and guidelines and materials distributed by government agencies, including: (a) the American Society of Addiction Medicine ("ASAM") Criteria; (b) the American Association of Community Psychiatrists' ("AACP") Level of Care Utilization System; (c) the Child and Adolescent Level of Care Utilization System ("CALOCUS") developed by AACP and the American Academy of Child and Adolescent Psychiatry ("AACAP"); and the Child and Adolescent Service Intensity Instrument ("CASII") which was developed by AACAP in 2001 as a refinement of CALOCUS; (d) the Medicare benefit policy manual issued by the Centers for Medicare and Medicaid Services ("CMS"); (e) the APA Practice Guidelines for the Treatment of Patients with Substance Use Disorders, Second Edition; (f) the American Psychiatric Association's Practice Guidelines for the Treatment of Patients with Major Depressive Disorder; and (g) AACAP's Principles of Care for Treatment of Children and Adolescents with Mental Illnesses in Residential Treatment Centers.

23. The generally accepted standards of care for matching patients with the most appropriate and effective level of care for treating patients' mental health conditions and substance use disorders include the following:

   a. **First**, many mental health and substance use disorders are long-term and chronic. While current symptoms are typically related to a patient's chronic condition, it is generally accepted in the behavioral health community that effective treatment of individuals with mental health or substance use disorders is not limited to the alleviation of the current symptoms. Rather, effective treatment requires treatment of the chronic underlying condition as well.

    b. **Second**, many individuals with behavioral health diagnoses have multiple, co-occurring disorders. Because co-occurring disorders can aggravate each other, treating any of them effectively requires a comprehensive, coordinated approach to all conditions. Similarly, the presence of a co-occurring medical condition is an aggravating factor that may necessitate a more intensive level of care for the patient to be effectively treated.

    c. **Third**, in order to treat patients with mental health or substance use disorders effectively, it is important to "match" them to the appropriate level of care. The driving factors in determining the appropriate treatment level should be safety and effectiveness. Placement in a less restrictive environment is appropriate only if it is likely to be safe and *just as effective* as treatment at a higher level of care

    d. **Fourth**, when there is ambiguity as to the appropriate level of care, generally accepted standards call for erring on the side of caution by placing the patient in a higher level of care. Research has demonstrated that patients with mental health and substance use disorders who receive treatment at a lower level of care than is clinically appropriate face worse outcomes than those who are treated at the appropriate level of care. On the other hand, there is no research that establishes that placement at a higher level of care than is appropriate results in an increase in adverse outcomes.

    e. **Fifth**, while effective treatment may result in improvement in the patient's level of functioning, it is well-established that effective treatment also includes treatment aimed at preventing relapse or deterioration of the patient's condition and maintaining the patient's level of functioning.

    f. **Sixth**, the appropriate duration of treatment for behavioral health disorders is based on the individual needs of the patient; there is no specific limit on the duration of such treatment. Similarly, it is inconsistent with generally accepted standards of medical practice to require discharge as soon as a patient becomes unwilling or unable to participate in treatment.

      g. **Seventh**, one of the primary differences between adults, on the one hand, and children and adolescents, on the other, is that children and adolescents are not fully "developed," in the psychiatric sense. The unique needs of children and adolescents must be taken into account when making level of care decisions involving their treatment for mental health or substance use disorders. One of the ways practitioners take into account the developmental level of a child or adolescent in making treatment decisions is by relaxing the threshold requirements for admission and continued service at a given level of care.

      h. **Eighth**, the determination of the appropriate level of care for patients with mental health and/or substance use disorders should be made on the basis of a multidimensional assessment that takes into account a wide variety of information about the patient. Except in acute situations that require hospitalization, where safety alone may necessitate the highest level of care, decisions about the level of care at which a patient should receive treatment should be made based upon a holistic, biopsychosocial assessment that involves consideration of multiple dimensions.

24.    UBH, as a claims administrator and ERISA fiduciary, owed the participants and beneficiaries of the plans it administers a fiduciary duty to take reasonable steps to interpret the plans, including when establishing the criteria by which it would determine whether services are consistent with generally accepted standards of care.  It was UBH's duty to use due care and act prudently and solely in the interests of the plan participants and beneficiaries when doing so.

25.    When interpreting its plans, UBH had access to the independent, publicly available sources, described above, that elucidate the generally accepted standards of care.  Thus, UBH knew, or should have known, what the generally accepted standards of care are.

**IV.    The 2017 Level of Care Guidelines**

26.    UBH exercised its discretion under the plans it administers by, among other things, developing, adopting, and applying its own clinical criteria for determining whether services for

which coverage is requested are consistent with generally accepted standards of care. The clinical criteria UBH adopted and applied are called the UBH Level of Care Guidelines.

27. The Level of Care Guidelines are organized by the situs of care, or "level of care," according to progressive levels of service intensity along the continuum of care (*i.e.*, outpatient, intensive outpatient, partial hospitalization, residential, and hospital).

28. The 2017 Level of Care Guidelines at issue in this case contained a set of mandatory "Common Criteria," all of which had to be satisfied for coverage to be approved at any level of care. In addition, the Guidelines contained specific criteria applicable to particular levels of care in the context of either mental health conditions or substance use disorders, which also had to be satisfied in order for coverage to be approved at a particular level of care.

29. As noted above, Judge Spero found, after a trial on the merits in the *Wit* Litigation, that UBH's 2017 Level of Care Guidelines (among others) were pervasively more restrictive than the generally accepted standards of care described above, and thus conflicted with the terms of the ERISA plans at issue, which—like Plaintiff's Plan—required services to be consistent with generally accepted standards.

30. In a detailed opinion, Judge Spero held that the UBH Level of Care Guidelines in effect from 2011 to 2017 were pervasively more restrictive than generally accepted standards of care because they restricted coverage to the treatment of acute behavioral health conditions and symptoms, in contrast to generally accepted standards of care that include concurrent effective treatment to address chronic or co-occurring conditions or symptoms.

31. As Judge Spero held, UBH's Level of Care Guidelines, including the 2017 Level of Care Guidelines, were "riddled with requirements that provided for narrower coverage than is consistent with generally accepted standards of care." Judge Spero further found that these defects were driven by UBH's financial self-interest, and that use of the Level of Care Guidelines to determine whether services were consistent with generally accepted standards was "unreasonable and an abuse of discretion because they were more restrictive than generally accepted standards of care."

32.     Judge Spero's decision in the *Wit* Litigation thus applies directly to the 2017 Level of Care Guidelines that UBH used to deny coverage to Plaintiff.

33.     Following the trial in the *Wit* Litigation, in late 2018, UBH announced that it would "retire" its proprietary substance use guidelines and instead begin applying the ASAM Criteria when administering benefits for substance use disorder treatment.

34.     Only after Judge Spero issued his ruling on the merits in the *Wit* Litigation, UBH announced that it also intends to discontinue use of its Level of Care Guidelines for mental health treatment and to transition to non-profit, clinical specialty association guidelines by early 2020.

35.     Notwithstanding these subsequent developments, and even though UBH knew, or should have known, that its 2017 Level of Care Guidelines were much more restrictive than generally accepted standards of care, and that UBH developed them to advance its own financial self-interest as well as that of its other corporate affiliates and employer-plan sponsors, UBH continued to apply its unreasonably overly-restrictive 2017 Level of Care Guidelines until May 9, 2018, when UBH released a new (and equally flawed) version of the Guidelines.

36.     By continuing to use its own overly-restrictive Guidelines, UBH, among other things, a) avoided or reduced the benefit expense it would otherwise pay from its own assets if approving coverage under insured plans; b) saved its plan-sponsor employers money (albeit in contravention of plan terms), making it more likely that plan sponsors would employ UBH as claims administrator, thus prioritizing UBH's own financial interest; c) avoided incurring licensing and other costs it would have incurred if it used third-party guidelines.

**V.     UBH Denied Coverage to Plaintiff Pursuant to its Overly Restrictive 2017 Level of Care Guidelines**

37.     On May 12, 2017, Plaintiff was admitted to Uinta Academy in Wellsville, Utah, for residential treatment of her co-occurring reactive attachment disorder, major depressive disorder, post-traumatic stress disorder and other mental health conditions. UBH authorized coverage for about five weeks, but then denied any further coverage from June 21, 2017 forward.

38.     In its June 27, 2017 written notification of the adverse benefit determination, UBH stated:

> United Behavioral Health (UBH) is responsible for making benefit coverage determinations for mental health and substance abuse services that are provided to UBH Members. . . .
>
> Based on the Optum Level of Care Guideline for Mental Health Residential Treatment Center Level of Care, it is my determination that no further authorization can be provided from 6/21/2017-forward.

39. UBH thus denied coverage for Plaintiff's residential treatment, in whole or in part, based on UBH's 2017 Level of Care Guidelines.

40. Plaintiff submitted an internal appeal to UBH requesting review of its denial of her residential treatment.

41. UBH denied the appeal, upholding the denial of coverage. In a July 3, 2018 letter, UBH reiterated that benefit coverage was not available "[b]ased on the Optum Level of Care Guideline for the Mental Health Residential Treatment Center Level of Care and Common Criteria and Clinical Best Practices for all levels of care."

42. Plaintiff submitted a second-level appeal, which UBH also denied. In an October 25, 2018 letter, UBH again upheld the denial of coverage, again citing "the Optum Level of Care Guideline for the Mental Health Residential Treatment Center Level of Care."

43. The Tomlinson Plan also permits members to seek external review of an adverse benefit determination from a so-called "independent" review organization contracted with UBH. On January 28, 2019, Plaintiff requested an external review of UBH's denial of coverage for her residential treatment at Uinta. On March 14, 2019, the External Review organization, MES Peer Review Services, upheld the denial, citing, among other things, the "Optum Level of Care Guidelines: Mental Health Conditions."

44. On April 12, 2019, UBH sent a "corrected letter," again denying coverage for Plaintiff's residential treatment, again citing "the Optum Level of Care Guideline for the Mental Health Residential Treatment Center Level of Care." This denial letter stated, "[t]his is the Final

Adverse Determination of your internal appeal.  All internal appeals through UBH have been exhausted."

45. Based on the clinical advice of her treating providers, Plaintiff remained in residential treatment at Uinta until May 15, 2018.  Plaintiff's mother incurred significant unreimbursed out-of-pocket expenses for Plaintiff's residential treatment services.

46. Each of UBH's letters denying coverage to Plaintiff also stated that "care could continue" in the Partial Hospitalization Program setting.

47. Residential treatment subsumes all the clinical components of a partial hospitalization program.  Thus, services at a partial hospitalization level of care are necessarily included within residential treatment services.

48. Nevertheless, UBH did not approve benefits for the services Plaintiff received at the rate applicable to the lesser included level of care.  Instead, UBH denied coverage in full, despite its own recognition that Plaintiff needed ongoing treatment.

**VI.   UBH Violated ERISA and the Plan's Terms**

49. In light of its central role in administering claims for coverage of mental health and substance use disorder treatment, UBH is an ERISA fiduciary as defined by 29 U.S.C. § 1104(a).  By developing, adopting, and applying its own Level of Care Guidelines, which are overly restrictive and in contravention of generally accepted standards of care, UBH violated its fiduciary duties.  Moreover, by using those Guidelines to deny Plaintiff's requests for coverage, UBH violated the written terms of Plaintiff's Plan.

## CLASS CLAIMS

50. Plaintiff incorporates by reference all preceding paragraphs as though each were fully stated herein.

51. UBH followed the same policies and practices when administering Plaintiff's requests for coverage as when administering the coverage requests of other similarly-situated individuals seeking coverage under their health plans for residential behavioral health treatment.

52. As such, Plaintiff brings each of her claims, set forth in the counts below, on behalf of the following class ("Class"):

> Any participant or beneficiary in a health benefit plan governed by ERISA whose request for coverage of residential treatment services for a mental illness or substance use disorder was denied by UBH, in whole or in part, on or after June 2, 2017, based upon UBH's 2017 Level of Care Guidelines.

53. The members of the class can be objectively ascertained through the use of information contained in UBH's files because UBH knows who its members are, by which plans they are insured, what type of requests for coverage they have filed, and how those claims were adjudicated.

54. Upon information and belief, the members of the Class are so numerous that joinder of all members is impracticable. While the number of class members is solely within UBH's possession, Plaintiff in good faith believes that the Class consists of at least hundreds of ERISA participants and beneficiaries. The evidence in the *Wit* Litigation established that UBH denied more than 1,000 requests for coverage of residential treatment services under the 2017 Level of Care Guidelines between March 12, 2017 and June 1, 2017, a period of less than three months. UBH continued using the 2017 Level of Care Guidelines for another eleven months after the *Wit* Class period closed.

55. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class, including but not limited to: (a) the collateral estoppel effect of Judge Spero's post-trial Findings of Fact and Conclusions of Law in the *Wit* Litigation with respect to the 2017 Level of Care Guidelines; and (b) what remedies are available to the Class for UBH's breaches of fiduciary duties and violations of ERISA.

56. Certification is desirable and proper because the Plaintiff's claims are typical of the claims of the members of the class Plaintiff seeks to represent, because, as alleged herein, the 2017 Level of Care Guidelines UBH developed and used to deny coverage to Plaintiff were also used by UBH to deny coverage to the other members of the Class.

57. Plaintiff will fairly and adequately protect the interests of the members of the Class, is committed to the vigorous prosecution of this action, has retained counsel competent and

experienced in class action and ERISA health insurance-related litigation, and has no interests antagonistic to or in conflict with those of the Class.

58. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because joinder of all members of the Class is impracticable. Further, the expense and burden of individual litigation make it irrational for class members individually to redress the harm done to them. Moreover, because this case involves class members who suffer from behavioral health conditions, and those who suffer from such conditions continue to experience social stigma, it is unlikely that many class members would be willing to have their conditions become public knowledge by filing individual lawsuits. Given the uniform policy and practices at issue, there will also be no difficulty in the management of this litigation as a class action.

## COUNT I
## Breach of Fiduciary Duty

59. Plaintiff incorporates by reference the preceding paragraphs as though such paragraphs were fully stated herein.

60. Plaintiff brings this Count on behalf of herself and all others similarly situated, pursuant to 29 U.S.C. § 1132(a)(1)(B), to remedy UBH's breaches of fiduciary duty alleged above.

61. As explained above, UBH exercised its discretionary authority to interpret and apply plan terms when it created its 2017 Level of Care Guidelines and when it used those Guidelines to make coverage determinations under Plaintiff's and the class members' plans. As such, UBH was an ERISA fiduciary.

62. As an ERISA fiduciary, pursuant to 29 U.S.C. § 1104(a), UBH was required, among other things, to carry out its duties solely in the interests of the participants and beneficiaries of the plans, to exercise reasonable prudence and due care, and to comply with the terms of Plaintiff's and the class members' plans.

63. UBH violated its fiduciary duties by adopting the restrictive 2017 Level of Care Guidelines at issue herein. Despite the facts that Plaintiff's and the class members' plans provide

for UBH to determine whether services for which coverage is requested are consistent with generally accepted standards of care; that the generally accepted standards of care are widely available and well-known to UBH; and that UBH asserted that its guidelines were consistent with such standards, UBH's 2017 Level of Care Guidelines are in fact—and as proven at the *Wit* Litigation trial—much more restrictive than generally accepted standards. In adopting the 2017 Level of Care Guidelines and using them to deny coverage to Plaintiff and the class members, UBH did not act "solely in the interests of the participants and beneficiaries" for the "exclusive purpose" of "providing benefits." It did not utilize the "care, skill, prudence and diligence" of a "prudent man" acting in a similar capacity. It did not act in accordance with the terms of Plaintiff's or the class members' Plans.

64. Instead, UBH elevated its own interests and those of its corporate affiliates and plan-sponsor employer customers above the interests of plan participants and beneficiaries. By adopting its improperly restrictive guidelines, UBH dramatically narrowed the scope of coverage available under the Plaintiff's and class members' Plans and artificially decreased the number and value of covered claims, thereby benefiting itself, its corporate affiliates, and its employer customers.

65. Plaintiff and the members of the Class have been harmed by UBH's breaches of fiduciary duty because UBH's development and adoption of the excessively restrictive standards in the 2017 Level of Care Guidelines narrowed the scope of coverage available under their plans and because their requests for benefits were determined according to a standard that conflicted with the terms of their plans. UBH's use of these excessively restrictive guidelines made it less likely that UBH would determine that their claims were covered.

66. Plaintiff and the members of the Class seek the relief identified below to remedy UBH's breaches of fiduciary duty.

**COUNT II**
**Violation of Plan Terms**

67. Plaintiff incorporates by reference the preceding paragraphs as though such paragraphs were fully stated herein.

68. Plaintiff brings this Count on behalf of herself and all others similarly situated, pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B).

69. UBH denied the requests for coverage of residential treatment submitted by Plaintiff and the other members of the Class, at least in part, based on its systematic practice of using its 2017 Level of Care Guidelines to determine whether services were consistent with generally accepted standards of care, even though those Guidelines were much more restrictive than generally accepted standards and thus violated the relevant terms of the applicable Plans.

70. Additionally, UBH wrongfully failed to approve coverage for services that it deemed medically necessary under its Guidelines (*e.g.*, partial hospitalization treatment) for no other reason than that those services were obtained as part of treatment at a higher level of care (*e.g.*, residential treatment).

71. UBH's denials of coverage to Plaintiff and the Class were thus wrongful and violated ERISA.

72. Plaintiff and the members of the Class seek the relief identified below to remedy these ERISA violations.

## COUNT III
## Claim for Injunctive Relief

73. Plaintiff incorporates by reference the preceding paragraphs as though such paragraphs were fully stated herein.

74. Plaintiff brings this Count on behalf of herself, and all others similarly situated, pursuant to 29 U.S.C. § 1132(a)(3)(A), to enjoin Defendant UBH's acts and practices that violate ERISA, as detailed above. Plaintiff brings this claim only to the extent that the Court finds that the injunctive relief sought is unavailable pursuant to 29 U.S.C. § 1132(a)(1)(B).

75. Plaintiff and the class have been harmed, and are likely to be harmed in the future, by UBH's ERISA violations described above.

76. In order to remedy these harms and prevent future harm, Plaintiff and the Class are entitled to enjoin these acts and practices pursuant to 29 U.S.C. § 1132(a)(3)(A).

# COUNT IV
## Claim for Appropriate Equitable Relief

77. Plaintiff incorporates by reference all preceding paragraphs as though each were fully stated herein.

78. Plaintiff brings this Count on behalf of herself, and all others similarly situated, pursuant to 29 U.S.C. § 1132(a)(3)(B), to obtain appropriate equitable relief to redress Defendant UBH's breaches of fiduciary duty and ERISA violations, as detailed above. Plaintiff brings this claim only to the extent that the Court finds that the equitable relief available pursuant to 29 U.S.C. § 1132(a)(1)(B) is inadequate to fully remedy the violations alleged in Counts I and/or II above.

79. Plaintiff and the Class have been harmed, and are likely to be harmed in the future, by UBH's breaches of fiduciary duty and ERISA violations described above.

80. Additionally, by engaging in this misconduct, UBH unjustly enriched itself and/or allowed its corporate affiliates to be unjustly enriched insofar as they were not required to pay benefit claims or were required to pay less for those claims than required under the relevant plan terms.

81. In order to remedy these harms, Plaintiff and the Class are entitled to appropriate equitable relief pursuant to 29 U.S.C. § 1132(a)(3)(B).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment in her favor against Defendant as follows:

A. Certifying the Class and their claims, as set forth in this Complaint, for class treatment;

B. Appointing the Plaintiff as Class Representative for the Class;

C. Designating Zuckerman Spaeder LLP and Psych-Appeal, Inc. as Class Counsel;

D. Declaring that the criteria in the 2017 Level of Care Guidelines are not consistent with generally accepted standards of care;

E. Permanently enjoining UBH from using the 2017 Level of Care Guidelines to administer requests for benefits by the Plaintiff, or the members of the Class;

  F. Ordering UBH to reprocess the Plaintiff's and the class members' requests for coverage that it wrongfully denied based in whole or in part on its 2017 Level of Care Guidelines, pursuant to new guidelines that are consistent with generally accepted standards of medical practice;

  G. Awarding other appropriate equitable relief, including but not necessarily limited to an appropriate monetary award based on disgorgement, restitution, surcharge or other basis, and additional declaratory and injunctive relief;

  H. Awarding Plaintiff disbursements and expenses of this action, including reasonable attorneys' and expert fees, in amounts to be determined by the Court, pursuant to 29 U.S.C. § 1132(g); and

  I. Granting such other and further relief as is just and proper in light of the evidence, including but not limited to removal of UBH as a fiduciary as a result of its pattern of conduct in violation of its fiduciary duties under ERISA.

Dated: January 31, 2020

*/s/ Caroline E. Reynolds*
Caroline E. Reynolds (admitted *pro hac vice*)
ZUCKERMAN SPAEDER LLP
1800 M St., NW, Suite 1000
Washington, DC 20036
Tel: (202) 778-1800
Fax: (202) 822-8106
creynolds@zuckerman.com

D. Brian Hufford (admitted *pro hac vice*)
Jason S. Cowart (admitted *pro hac vice*)
ZUCKERMAN SPAEDER LLP
485 Madison Avenue, 10th Floor
New York, NY 10022
Tel: (212) 704-9600
Fax: (212) 704-4256
dbhufford@zuckerman.com
jcowart@zuckerman.com

Adam Abelson (admitted *pro hac vice*)
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
Tel: (410) 332-0444

Fax: (410) 659-0436
aabelson@zuckerman.com

Meiram Bendat (Cal. Bar No. 198884)
PSYCH-APPEAL, INC.
8560 West Sunset Boulevard, Suite 500
West Hollywood, CA 90069
Tel: (310) 598-3690, x 101
Fax: (888) 975-1957
mbendat@psych-appeal.com

*Counsel for Plaintiff and the Putative Class*