1

2

3

4

5

6

7                              UNITED STATES DISTRICT COURT

8                             NORTHERN DISTRICT OF CALIFORNIA

9

10    MARY JONES, et al.,                          Case No.  19-cv-06999-RS

            Plaintiffs,

11

        v.

12                                                 **ORDER GRANTING MOTION FOR**
                                                   **CLASS CERTIFICATION**
13    UNITED BEHAVIORAL HEALTH,

            Defendant.

14

15         Plaintiff "Mary Jones" ("plaintiff")[1] brings this putative class action to redress alleged

16    ERISA violations committed by defendant United Behavioral Health ("UBH"). Pertinently, this

17    district recently adjudicated a similar dispute. In *Wit v. United Behavioral Health*,[2] the court was

18    presented with allegations that UBH, acting in its capacity as the administrator of mental health

19    and substance abuse benefits under various ERISA-governed plans, wrongfully denied coverage

20    requests on the basis of policies inconsistent with generally accepted standards of care. After

21    certifying a class comprised of individuals whose requests were denied in whole or in part because

22    of those policies, the *Wit* court went on to conclude that UBH's adoption and implementation of

23    the policies contravened (i) UBH's fiduciary duty to those individuals, and (ii) the terms of each

24    individual's specific plan.

25

26    _____

      [1] Plaintiff, "Mary Jones," brings this action by and through her mother, Sandra Tomlinson.

27
      [2] *Wit, et al. v. United Behavioral Health,* 14-cv-02346-JCS, *consolidated with Alexander, et al. v.*
28    *United Behavioral Health*, 14-cv-05337-JCS (together, "*Wit*").

This case addresses putative class members falling outside the bounds of *Wit*'s class definition. Specifically, while the *Wit* class period ended June 1, 2017, UBH continued the offending practices from *Wit* for some eight months thereafter. Plaintiff's claims accordingly stem from the same sort of coverage requests, denied by UBH under the same policy regime, in the period spanning June 2, 2017 (the day after the *Wit* class period closed) to February 7, 2018 (the day UBH changed policies). Advancing arguments already credited in *Wit,* plaintiff now seeks Rule 23 class certification. For the reasons set forth herein, the motion is granted.

## II. BACKGROUND[3]

### A. UBH

UBH serves as the plan administrator for ERISA-governed behavioral health plans (*i.e.,* plans for mental health and substance abuse benefits) nationwide. Of the various statutory obligations this role entails, three are implicated here. First, an as ERISA fiduciary, UBH must "discharge [its] duties with respect to a plan solely in the interest of [the plan's] participants and beneficiaries[.]" 29 U.S.C. § 1104(a)(1). Second, UBH's plan administration must adhere to the generally accepted standards of care of modern behavioral health practice. *See* § 1104(a)(1)(B) ("[A] fiduciary shall discharge [its] duties . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.") Third, in administering a given ERISA plan, UBH must issue "benefits due," and honor "rights" created, "under the terms of [that] plan." § 1132(a)(1)(B).

From June 2, 2017 through February 7, 2018, UBH used internally-developed Level of Care Guidelines and Coverage Determination Guidelines (collectively, the "2017 Guidelines") to make discretionary coverage decisions relating to the behavioral health claims of members of ERISA-governed plans. As for the underlying plans, each one—while distinct in some regards—

---

[3] The facts underlying this controversy are familiar to the parties, and are summarized here for purposes of providing a brief synopsis. Additional detail is included as necessary in the discussion below. *See generally infra* Part III.

United States District Court
Northern District of California

required, as a precondition to behavioral health coverage, that the requested treatment comport with generally accepted standards of care.

**B. Plaintiff's Allegations**

Plaintiff was a beneficiary under an ERISA-governed behavioral health plan (the "Tomlinson Plan") administered by UBH. In May 2017, while suffering from major depressive disorder, post-traumatic stress disorder, and other mental health issues, she was admitted to a residential treatment center, where she remained until May 2018. Initially, UBH determined plaintiff's treatment was necessary under the Tomlinson Plan. That changed five weeks into her stay, when UBH notified plaintiff that, based in part on the 2017 Guidelines, "no further authorization" for her treatment "[could] be provided." Plaintiff's subsequent appeals of this about-face, with both UBH and an independent review organization, proved unsuccessful.

To the extent UBH's denial stemmed from its application of the 2017 Guidelines, plaintiff alleges her claim was processed in a manner inconsistent with generally accepted standards of care. In her view, UBH fashioned overly-restrictive criteria, reflecting an excessive emphasis on short-term/crisis-stabilizing services, for mental health and substance abuse coverage determinations; embedded those criteria within the 2017 Guidelines; and, by applying those Guidelines to her claim, violated its duties to her under ERISA. More specifically—and like the plaintiffs in *Wit*—plaintiff argues the 2017 Guidelines neglect the following eight generally accepted patient placement/effective level of care behavioral health standards:

- Effective treatment requires treatment of the individual's underlying conditions and is not limited to alleviation of the individual's current symptoms[;]

- Effective treatment requires treatment of co-occurring behavioral health disorders and/or medical conditions in a coordinated manner that considers the interactions of the disorders and conditions and their implications for determining the appropriate level of care[;]

- Patients should receive treatment for mental health and substance use disorders at the least intensive and restrictive level of care that is safe and effective[;]

- When there is ambiguity as to the appropriate level of care, the practitioner should err

on the side of caution by placing the patient in a higher level of care[;]

- Effective treatment of mental health and substance use disorders includes services needed to maintain functioning or prevent deterioration[;]

- The appropriate duration of treatment for behavioral health disorders is based on the individual needs of the patient; there is no specific limit on the duration of such treatment[;]

- The unique needs of children and adolescents must be taken into account when making level of care decisions involving their treatment for mental health or substance use disorders[;]

- The determination of the appropriate level of care for patients with mental health and/or substance use disorders should be made on the basis of a multi-dimensional assessment that takes into account a wide variety of information about the patient.

Mot. for Class. Cert., Dkt. 63 at 14-15 (citing *Wit*, Findings of Fact and Conclusions of Law, 2019 WL 1033730, at ¶¶ 71-81 (N.D. Cal. March 5, 2019)). By January 2020—some two months after this case was filed—UBH had implemented policies addressing these and other of plaintiff's concerns. Plaintiff does not challenge any of UBH's present practices.

### C. Proposed Class and Putative Class Claims

Plaintiff moves to certify the following class:

Any participant or beneficiary in a health benefit plan governed by ERISA whose request for coverage of residential treatment services for a mental illness or substance use disorder was denied by UBH, in whole or in part, on or after June 2, 2017, based upon UBH's 2017 Level of Care Guidelines ("LOCGs") or upon a Coverage Determination Guideline that incorporates the 2017 LOCGs, and whose request was not subsequently approved, in full, following an administrative appeal.[4]

Targeting the development and application of the 2017 Guidelines, plaintiff advances claims for

---

[4] "In order to hew as closely as possible to the definition of" the corresponding *Wit* class, plaintiff's class definition goes on to exclude certain individuals whose claims were adjudicated under the laws of Connecticut, Rhode Island, or Texas. *See* Mot. for Class. Cert., Dkt. 63 at 8-9 n.2.

United States District Court
Northern District of California

1  UBH's alleged (i) breach of the fiduciary duty it owed putative class members, in contravention of

2  ERISA § 1104(a), and (ii) violation of the putative class members' plan terms, in contravention of

3  ERISA § 1132(a)(1)(B).[5] She seeks relief exclusively on a class-wide basis, in the form of (i) a

4  declaration that the 2017 Guidelines are inconsistent with generally accepted standards of care, (ii)

5  an order permanently enjoining UBH from administering the putative class's claims with the 2017

6  Guidelines, and (iii) an order requiring UBH to reprocess the claims of plaintiff and putative class

7  members.

### III. LEGAL STANDARD

9      Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure, which

10 represents more than a mere pleading standard. To obtain class certification, plaintiffs bear the

11 burden of showing they have met each of the four requirements of Rule 23(a) and at least one

12 subsection of Rule 23(b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186, *amended

13 by* 273 F.3d 1266 (9th Cir. 2001). "A party seeking class certification must affirmatively

14 demonstrate ... compliance with the Rule[.]" *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350

15 (2011).

16     Rule 23(a) provides that a court may certify a class only if: "(1) the class is so numerous

17 that joinder of all members is impracticable; (2) there are questions of law or fact common to the

18 class; (3) the claims or defenses of the representative parties are typical of the claims or defenses

19 of the class; and (4) the representative parties will fairly and adequately protect the interests of the

20 class." These requirements are commonly referred to as numerosity, commonality, typicality, and

21 adequacy. *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012). If all four Rule

22 23(a) prerequisites are satisfied, a court must also find that plaintiffs "satisfy through evidentiary

23 proof" at least one of the three subsections of Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27,

24 33 (2013).

---

[5] Plaintiff's third and fourth claims, under ERISA § 1132(a)(3)(A) and (B), are brought "only to the extent that . . . the relief plaintiff seeks" is unavailable under the prior two. *See* Mot. for Class. Cert., Dkt. 63 at 9.

ORDER GRANTING MOTION FOR CLASS CERTIFICATION
CASE NO. 19-cv-06999-RS

5

1    "[A] court's class-certification analysis must be 'rigorous' and may 'entail some overlap

2    with the merits of the plaintiff's underlying claim.'" *Amgen Inc. v. Conn. Ret. Plans and Trust*

3    *Funds*, 568 U.S. 455, 465-66 (2013) (quoting *Dukes,* 564 U.S. at 351); *see also Mazza*, 666 F.3d

4    at 588. This "rigorous" analysis applies to both Rule 23(a) and Rule 23(b). *See Comcast*, 569 U.S.

5    at 33-34. Nevertheless, "Rule 23 grants courts no license to engage in free-ranging merits inquiries

6    at the certification stage." *Amgen*, 568 U.S. at 466. "Merits questions may be considered to the

7    extent—but only to the extent—that they are relevant to determining whether the Rule 23

8    prerequisites for class certification are satisfied." *Id.* (citations omitted). If a court concludes that

9    the moving party has met its burden of proof, then the court has broad discretion to certify the

10    class. *Zinser*, 253 F.3d at 1186.

**IV. DISCUSSION**

### A. Threshold Determinations

13    Two cross-cutting issues wander the perimeter of this case: the preclusive force of *Wit*, and

14    the requisite elements of an ERISA claim where, as here, the claimant seeks reprocessing of a

15    denied request for coverage. While plaintiff overstates the former, UBH is mistaken as to the

16    latter.

17    First, plaintiff intimates the doctrine of issue preclusion largely directs the outcome of this

18    motion. "[T]he application of offensive nonmutual issue preclusion is appropriate only if (1) there

19    was a full and fair opportunity to litigate the identical issue in the prior action; (2) the issue was

20    actually litigated in the prior action; (3) the issue was decided in a final judgment; and (4) the

21    party against whom issue preclusion is asserted was a party or in privity with a party to the prior

22    action." *Syverson v. International Business Machines,* 472 F.3d 1072, 1078 (9th Cir. 2007)

23    (citations omitted). The Supreme Court has "grant[ed] . . . broad discretion to trial courts . . . when

24    considering whether to apply offensive nonmutual issue preclusion, even where the above-listed

25    standard prerequisites are met." *Id.* at 1078-79 (internal quotation marks and citation omitted).

26    As plaintiff stresses, *Wit* overlaps extensively with this action: there the court, after

27    prolonged, hard-fought litigation, found that seven years' worth of UBH Guidelines (including the

2017 Guidelines) led UBH to "breach[] its fiduciary duty . . . and its duty to comply with plan terms" through administration practices that were "unreasonable and [did] not reflect generally accepted standards of care." *Wit*, Findings of Fact and Conclusions of Law, 2019 WL 1033730, at ¶ 203. Yet, as UBH correctly counters, plaintiff's typicality and adequacy arguments, along with various factual characteristics of the putative class, necessarily are unique to this dispute. Faced with analogous disagreement around *Wit*'s preclusive effect, another court in this district has elected a "pick-and-choose" approach. *Compare Bain v. Oxford Health Ins., Inc.,* 2020 WL 808236, at *9 (N.D. Cal. Feb. 14, 2020) (rejecting *Wit*'s collateral estoppel effect in one regard), *with id.* at *10 (crediting it in another). Thankfully, no such parsing is necessary here. Setting the collateral estoppel doctrine entirely aside, plaintiff's motion independently satisfies each of Rule 23's requirements, s*ee generally infra* Part IV.B, rendering certification appropriate irrespective of *Wit*'s formally preclusive value. Given this, "broad discretion" counsels in favor of treating *Wit*, at this juncture of this litigation, as highly persuasive, rather than controlling, authority. *See Syverson,* 472 F.3d at 1078-79 (citation omitted).

Second, turning to the elements of putative class claims, UBH splices its briefing with the notion that it is only liable to each proposed class member insofar as the member can prove (i) a harm separate and apart from the ERISA-noncompliant processing of his or her claim (e.g., a monetary harm), and (ii) that UBH's particular application, of the specifically contested aspects of the 2017 Guidelines, to his or her individual claim, was the sole but-for cause of that harm. On this view, class-wide evidence cannot establish class-wide liability. Whereas some proposed class members may have been left on the hook for uncovered services, others may have secured coverage through secondary insurance; whereas one denial may be rooted in a faulty portion of the 2017 Guidelines, another may be attributable to a legitimate 2017 Guidelines provision; and so on. Were the universe of ERISA actions limited to those seeking an entitlement to benefits, this logic would be compelling. After all, and as the cases UBH invokes on this score confirm, a claimant seeking to be made whole following a denial of benefits must show, on their part, a corresponding out-of-pocket outlay. *See, e.g., Durham v. Health Net*, 1995 WL 429252, at *3 (N.D. Cal. June 22,

1995) (holding that a plaintiff could not seek money damages for a treatment she did not receive).

The problem for UBH, though, is that plaintiff is not after "make-whole" relief, but rather equitable relief going to claims processing—including, most prominently, the ERISA-compliant reprocessing of coverage requests. *See Wit*, Order on Mot. for Summary Judgment, 2020 WL 6469764, at *13 (N.D. Cal. Nov. 3, 2020) ("UBH's argument that Plaintiffs must demonstrate that flaws in their Guidelines actually caused the Plaintiffs' denial of benefits misses the mark."). Under controlling Ninth Circuit precedent, this is a perfectly appropriate remedy for her to pursue. *See Saffle v. Sierra Pacific Power Co.,* 85 F.3d 455, 461 (9th Cir. 1996) ("We now make it explicit, that remand for reevaluation of the merits of a claim is the correct course to follow when an ERISA plan administrator, with discretion to apply a plan, has misconstrued the Plan and applied a wrong standard to a benefits determination."). Moreover, because the harm plaintiff alleges resides *in* the coverage request processing itself, plaintiff's only "but-for" burden is to show that but for the application of the 2017 Guidelines, coverage requests would have been processed in an ERISA-compliant manner. *See generally Wit*, Order on Mot. for Summary Judgment, 2020 WL 6469764, at *12-*13 (finding "UBH's causation argument" unsupported by both the text of ERISA and the weight of Ninth Circuit caselaw); *see also Shaver v. Operating Engineers Local 428 Pension Trust Fund,* 332 F.3d 1198, 1203 (9th Cir. 2003) (reasoning that where "plaintiffs seek purely equitable relief . . . to enjoin future misconduct" in the ERISA breach-of-duty context, "[r]equiring a showing of loss" tethered to "the fiduciaries' imprudent behavior" would offend "the language of ERISA, the common law, [and] common sense"). Accordingly, plaintiff's ability to trace the 2017 Guidelines' alleged defects to a discrete financial harm suffered by every proposed class member is, for present purposes, irrelevant.[6]

---

[6] For the same reasons, UBH's attempt to repackage these injury and causation arguments as a matter of Article III standing is likewise unavailing. Nor, contrary to UBH's footnoted insinuations, has the law of ERISA standing radically shifted since class certification in *Wit.* First, the Supreme Court's *Thole v. U.S. Bank N.A.* decision dealt with an ERISA-governed retirement plan in which the "retirees receive[d] a fixed payment each month, and the payments [did] not fluctuate . . . because of the plan fiduciaries' good or bad investment decisions." 140 S. Ct. 1615, 1618 (2020). The Court eventually concluded the plaintiffs "lack[ed] Article III standing" because "[w]inning or losing th[e] suit would not change the plaintiffs' monthly pension benefits." *Id.* at

United States District Court
Northern District of California

**B. Class Certification**

    **1.**     <u>Rule 23(a)</u>

UBH concedes numerosity but challenges certification under Rule 23(a)'s commonality, typicality, and adequacy requirements. These efforts uniformly come up short.

    ***i.***     ***Commonality***

Stripped of its erroneous harm/causation theory, *see supra* Part IV.A, UBH's anti-commonality argument reduces to the notion that, to prove UBH violated the "generally accepted standards of care" provision of a given plan, plaintiff will have to determine whether that plan had a separate provision "excluding services that are not consistent with" the 2017 Guidelines. *See* Opp'n Brief, Dkt. 70 at 28. Absent this individualized assessment, UBH warns, a liability determination predicated on one provision may "essentially nullify[]" another. *Id.* This argument is, to put it gently, a red herring: while some plans doubtless contain language incorporating the 2017 Guidelines, such incorporation impliedly is coterminous with the 2017 Guidelines' legality. UBH does not, and could not, offer any authority suggesting otherwise. Accordingly, because UBH fails to demonstrate a meaningful risk that individualized inquiry will overwhelm this case— and because scrutiny of a single policy (the 2017 Guidelines), as applied to a single aspect of every class member's plan (the "generally accepted standards of care" provision), under a single statutory framework (ERISA), will "generate common *answers* apt to drive the resolution of the litigation"—plaintiff clears Rule 23(a)'s commonality hurdle. *See Dukes,* 564 U.S. at 350 (2011)

---

1622. As UBH neglects to mention, however, this narrow holding (i) relied in part on plaintiffs' failure to assert that "mismanagement of the plan was so egregious it substantially increased the risk" of future harm to the plaintiffs, *see id.* (citations omitted); and (ii) "d[id] not concern" other types of ERISA actions, *see id.* at 1621 n.1 (citations omitted). *Ramirez v. TranUnion LLC* is similarly inapposite: there, the Ninth Circuit "addressed the question of who must have standing at the final stage of a *money damages* suit when class members are to be awarded *individual monetary damages.*" 951 F.3d 1008, 1023 (9th Cir. 2020) (emphasis added). Finally, although the Eleventh Circuit did indeed confront a "class action alleging defendants unlawfully denied certain insurance benefits" in *AA Suncoast Chiropractic Clinic, P.A. v. Progressive American Ins. Co.,* that action implicated *car* insurance, under *Florida* law. *Compare* Opp'n Brief, Dkt. 70 at 35, *with* 938 F.3d 1170, 1172 (11th Cir. 2019) (citations omitted) ("Under Florida law, car insurance policies must provide personal injury protection . . . benefits up to $10,000.")

1    (emphasis in original) (citation omitted).

2                    *ii.        Typicality*

3           As with commonality, UBH commits the brunt of its typicality briefing to its own, wishful

4    view of ERISA injury and causation. Once again, this tactic is fruitless. UBH's suggestion, for

5    instance, that plaintiff's personal grievance does not go to UBH's alleged "fail[ure] to address the

6    unique needs of children and adolescents," overlooks the fact that plaintiff alleges a common

7    course of conduct by UBH, resulting in a common harm to the proposed class's adults and

8    children alike. *See* Opp'n Brief, Dkt. 70 at 29-30. So too for UBH's objection around the

9    assignment of benefit claims: while other proposed class members, unlike plaintiff, may have

10   assigned their benefits claims to providers, the relief to which those claims correspond is

11   entitlement to benefits, not coverage request reprocessing. In short, plaintiff's "personal narrative

12   . . . falls within the common contours" of the proposed class's "theory of liability" as to UHB's

13   alleged misconduct. *See Torres v. Mercer Canyons, Inc.,* 835 F.3d 1125, 1141 (9th Cir. 2016). For

14   purposes of Rule 23(a)(3), she therefore is a sufficiently typical representative of the proposed

15   class.

16                   *iii.       Adequacy*

17          Moving away from its artificially narrow view of what qualifies as an ERISA claim, UBH

18   articulates three reasons why plaintiff cannot be expected to "fairly and adequately protect the

19   interests of the class." Fed. R. Civ. P. 23(a)(4). None is persuasive.

20          First, UBH asserts that "[b]y narrowing her case to a facial challenge" of the 2017

21   Guidelines, plaintiff makes a "tactical decision . . . preclud[ing] other class members from

22   pursuing potentially viable claims . . . that could have been asserted in this case." Opp'n Brief,

23   Dkt. 70 at 31. This argument falters as a matter of law: "under the doctrine of *res judicata*[,],

24   adjudication of claims that are common to a class does not preclude subsequent litigation of

25   *individual* claims that were not pursued by the class." *Wit,* Order on Mot. for Leave to File for

26   Reconsideration, 2016 WL 5930576, at *3 (N.D. Cal. Oct. 12, 2016) (emphasis in original) (citing

27   *Akootchook v. United States,* 271 F.3d 1160, 1164 (9th Cir. 2001)).

United States District Court
Northern District of California

Next, pointing to the fact that the Tomlinson Plan entitles plaintiff to remand to UBH for reprocessing under an abuse of discretion standard, UBH characterizes her claims as "antagonistic" to class members with plans creating the right to *de novo* district court review. For two reasons, this concern is unfounded. First, in the event any class member determines mandatory reprocessing will hinder his or her ability to bring a benefits action against UBH for federal *de novo* review, that class member may elect to opt-out of reprocessing altogether. Second, and more fundamentally, any reprocessing order flowing from this litigation need not (and, should such an order issue, will not) extinguish any other rights granted to the proposed class members by their underlying plans. *See Wit,* Remedies Order, 2020 WL 6479273, at *53 (N.D. Cal. Nov. 3, 2020) (providing that any "adverse benefit determination" UBH renders following reprocessing "shall be considered an initial adverse benefit determination for purposes of ERISA," leaving untouched "the class member['s] . . . entitle[ment] to avail himself or herself of all rights to administrative appeal, including external appeal, available pursuant to ERISA and the class member's plan and/or any causes of action arising from such adverse benefit determination").

Finally (and least effectively), UBH conjures an intra-class evidentiary discrepancy, given that "[u]nder the express terms of [plaintiff's] plan"—but not necessarily those of other class members—she "may only rely on her own administrative record in litigation." *See* Opp'n Brief, Dkt. 70 at 32. As plaintiff points out, this conflict is illusory: prior discovery orders in this litigation have directly disclaimed the construction of the evidence provision that UBH, now confronting class certification, seeks to revive. *See generally* Order Regarding Joint Discovery Letter Brief, Dkt. 51 at 6 (finding that "UBH's reliance on the Evidence Provision to avoid all discovery outside of the administrative record is improper"); Order Denying Mot. for Relief From Non-Dispositive Pretrial Order of Magistrate Judge, Dkt. 56 at 2 (affirming the same). Despite UBH's best efforts, plaintiff therefore appears free of any material "conflicts of interest with other class members," and prepared, along with her counsel,[7] to "prosecute the action vigorously on

---

[7] The adequacy of plaintiff's counsel is not subject to disagreement.

behalf of the class." *See Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 985 (9th Cir. 2011)

(internal quotation marks and citation omitted).

### 2.   **Rule 23(b)**

Plaintiff seeks certification under Rules 23(b)(1)(A), 23(b)(2), and 23(b)(3). As in *Wit,* all

three provisions authorize this action to proceed on a class basis.

#### i.   *23(b)(1)(A)*

Rule 23(b)(1)(A) provides for certification where "separate actions by or against individual

class members would create a risk of . . . inconsistent or varying adjudications with respect to

individual class members that would establish incompatible standards of conduct for the party

opposing the class[.]" Fed. R. Civ. P. 23(b)(1)(A). As the Supreme Court has explained, "Rule

23(b)(1)(A) takes in cases where the party is obliged by law to treat the members of the class

alike[.]" *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (internal quotation marks

and citation omitted); *see also Kanawi v. Bechtel Corp.,* 254 F.R.D. 102, 111 (N.D. Cal 2008)

(citations omitted) ("Most ERISA class actions are certified under Rule 23(b)(1).") Here, plaintiff

contends that without certification, certain proposed class members might bring separate actions

seeking equitable relief at odds with that sought both here and in *Wit.* Picking up a theme it carries

over into its Rule 23(b)(2) opposition, UBH counters that insofar as plaintiff pursues declaratory

relief, her 23(b)(1)(a) request "is moot because UBH *already* adopted the Guidelines she

proposes." Opp'n Brief, Dkt. 70 at 33.

UBH is, in one respect, correct: its current practices accord with those embodied by

plaintiff's sought-after relief. Yet, as plaintiff effectively parries, that alone does not satisfy UBH's

"heavy burden of persuading the court that the challenged conduct cannot reasonably be expected

to recur[.]" *See Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528

U.S. 167, 170 (2000) (citation omitted). Instead, to establish mootness, UBH must make a

"showing that its voluntary compliance moots [the] case by convincing the court that 'it is

*absolutely clear*'" the administration practices plaintiff challenges will not, at some future point,

resume. *See Lozano v. AT & T Wireless Services, Inc.,* 504 F.3d 718, 732 (9th Cir. 2007)

(emphasis added) (quoting *Friends of the Earth,* 528 U.S. at 170). By any honest assessment, UBH has not made such a showing here.[8] Consequently, plaintiff's request for forward-looking injunctive relief is not moot. Further, because that request seeks to enforce UBH's legal obligation to "treat the members of the class alike"—that is, to administer the class members' underlying plans in a manner consistent with both its fiduciary obligations and the underlying plans' terms— it is appropriate for certification under Rule 23(b)(1)(A). *See Amchem Products, Inc.,* 521 U.S. at 614 (internal quotation marks and citation omitted).

### *ii.    23(b)(2)*

Rule 23(b)(2) sanctions certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2). Plaintiff suggests this mechanism is appropriate given that the rule is "unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class a whole." *See Parsons v. Ryan,* 754 F.3d 657, 688 (9th Cir. 2014) (citation omitted). Beyond an unavailing reprisal of its mootness theory, UBH responds that an order calling for reprocessing of class coverage requests would not constitute "final" injunctive relief.

This position runs headlong into *Wit's* well-reasoned finding to the contrary. As the court, addressing UBH's identical Rule 23(b)(2) argument, deftly explained:

> The Court is not persuaded by UBH's argument that the injunctive relief requested here is
> not 'final' for the purposes of Rule 23(b)(2) because the outcome of the reprocessing is
> uncertain. The Ninth Circuit has held that 'remand for reevaluation of the merits of a claim
> is the correct course to follow when an ERISA plan administrator, with discretion to apply

---

[8] This is particularly true in view of *Wit*'s studied determination "that UBH executives put in place business practices that ensured that financial considerations would take precedence over faithful administration of class members' plans," and that such "financial considerations may tempt UBH to commit future violations." *See Wit,* Remedies Order, 2020 WL 6479273, at \*42 (internal quotation marks and bracketing omitted).

a plan, has misconstrued the Plan and applied a wrong standard to a benefits determination.' *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan,* 85 F.3d 455, 461 (9th Cir. 1996). A similar remedy was approved in the class context in *Bowen v. City of New York,* 476 U.S. 467, 106 S. Ct. 2022, L.Ed.2d 462 (1986). . . .

Based on these cases, the Court concludes that where a defendant has relied on an unlawful policy to determine eligibility for benefits, ordering the defendants to redetermine the plaintiffs' eligibility without the taint of the unlawful policy is a 'final' remedy[.]

*Wit,* Order Granting Class Certification, 317 F.R.D. 106, 136-37 (N.D. Cal. 2016). Absent any justification from UBH to depart from this thorough and accurate reading of the caselaw, plaintiff's petition for certification under Rule 23(b)(2) accordingly is granted.

### iii.    23(b)(3)

Certification under Rule 23(b)(3) is proper where the trial court "finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3)'s predominance analysis "presumes that the existence of common issues of fact or law have been established pursuant to" Rule 23(a)'s commonality requirement, *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1022 (9th Cir. 1998), *overruled on other grounds by Dukes*, 564 U.S. at 338; and from that starting point, tests "the balance between individual and common issues." *Wang v. Chinese Daily News, Inc.,* 737 F.3d 538, 546 (9th Cir. 2013) (internal quotation marks and citation omitted). Rule 23(b)(3)'s superiority component, by contrast, asks if a class-wide proceeding "is the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover North America, LLC,* 617 F.3d 1168, 1175 (9th Cir. 2010) (internal quotation marks and citation omitted).

Struggling to undercut *Wit*'s highly persuasive predominance analysis, *see Wit*, Order Granting Class Certification, 317 F.R.D at 140, UBH points to the Ninth Circuit's recent decision in *Castillo v. Bank of America, NA,* 980 F.3d 723 (9th Cir. 2020). There, reviewing a denial of class certification in the context of an employee challenge to wage-and-hour policies, the panel

United States District Court
Northern District of California

United States District Court
Northern District of California

explained that before determining "common questions predominate over individual ones, the court must ensure that the class is not defined so broadly as to include a great number of members who for some reason could not have been harmed by defendant's allegedly unlawful conduct." *Id.* at 730 (internal quotation marks and citation omitted). Ultimately, the court affirmed the denial of class certification. *Id.* at 733. Crucially, though, and as the *Castillo* opinion repeatedly emphasizes, the plaintiff in that action defined her class to include "every . . . employee who worked during the class period," *including* "those who were never exposed to either [challenged] policy." *See id.* at 732-33. As UBH acknowledges elsewhere in its briefing, that is hardly the case here. By its terms, plaintiff's proposed class encompasses persons "whose request[s] for coverage . . . [were] denied by UBH, in whole or in part . . . based upon [the 2017 Guidelines]," Mot. for Class. Cert., Dkt. 63 at 8; and thereby *excludes* individualized inquiry around which class members "were never exposed to . . . [that] policy." *Castillo,* 930 F.3d at 732. In other words, *Castillo* is mismatched to the task UBH assigns it. Like in *Wit,* the predominance requirement is met.

Neither, for that matter, does UBH break any new ground with its argument against superiority. Resorting once more to its (illusory) "monetary harm" roadblock, UBH draws upon a string of out-of-circuit district court cases for the proposition that individual benefit entitlement determinations tend to undermine the efficiency of a class-wide format. Once more, this theme misses the mark. *See generally supra* Part IV.A. Because "it is in the interest of judicial economy to adjudicate the class members' challenge to the [2017] Guidelines, which is the main issue as to all of the putative class members," in a class action format, the superiority requirement is satisfied. *Wit,* Order Granting Class Certification, 317 F.R.D. at 140. This litigation consequently may proceed on a class-wide basis under Rule 23(b)(3).

### V. CONCLUSION

Consistent with the foregoing, the proposed class is hereby certified under Rules 23(a), 23(b)(1)(A), 23(b)(2), and 23(b)(3). Additionally, Plaintiff "Mary Jones" is appointed class representative, and the firms of Zuckerman Spaeder LLP and Psych-Appeal, Inc. are appointed co-

lead class counsel.[9]

**IT IS SO ORDERED**.

Dated: March 11, 2021

_____
RICHARD SEEBORG
Chief United States District Judge

United States District Court
Northern District of California

---

[9] In connection with this class certification motion, both parties move to seal a number of exhibits filed in support of their respective briefing. *See* Dkts. 59, 69, 71. Collectively, these motions amount to a narrowly-tailored request that certain individuals' potentially sensitive health records be kept from the judicial record. Because these requests do not unduly burden the public's interest in access to court materials, they are hereby granted.

ORDER GRANTING MOTION FOR CLASS CERTIFICATION
CASE No. 19-cv-06999-RS