PSYCH-APPEAL, INC.
Meiram Bendat (Cal. Bar No. 198884)
7 West Figueroa Street, Suite 300
PMB #300059
Santa Barbara, CA 93101
Tel: (310) 598-3690, x 101
Fax: (888) 975-1957
mbendat@psych-appeal.com

ZUCKERMAN SPAEDER LLP
Caroline E. Reynolds (admitted *pro hac vice*)
1800 M St., NW, Suite 1000
Washington, DC 20036
Tel: (202) 778-1800
Fax: (202) 822-8106
creynolds@zuckerman.com

ZUCKERMAN SPAEDER LLP
D. Brian Hufford (admitted *pro hac vice*)
Jason S. Cowart (admitted *pro hac vice*)
485 Madison Avenue, 10th Floor
New York, NY 10022
Tel: (212) 704-9600
Fax: (212) 704-4256
dbhufford@zuckerman.com
jcowart@zuckerman.com

*Attorneys for Plaintiff and the Class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| MARY JONES, through her agent, on her own behalf and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>        v.<br><br>UNITED BEHAVIORAL HEALTH,<br><br>                    Defendant. | Case No. 3:19-cv-06999-RS<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO MODIFY CLASS CERTIFICATION ORDER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date:        April 10, 2025<br>Hearing Time:        1:30 p.m.<br>Judge:                   Richard Seeborg<br><br>**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |

# TABLE OF CONTENTS

**Page**

I.    Background.................................................................................................. 2

    A.    The Class's Claims and Their Overlap with *Wit*........................................... 2

        1.    The Challenged Guideline Criteria ............................................ 3

        2.    The Class Members' Claims and Requested Relief................ 6

    B.    The Certified Class ................................................................................ 7

    C.    The Ninth Circuit's Ruling in *Wit* .......................................................... 8

ARGUMENT .................................................................................................. 10

I.    The Ninth Circuit Has Clarified the Standard for Obtaining a Reprocessing Remedy Under ERISA. .................................................................................... 10

II.    The Court Should Modify the Class Definition in Accordance with *Wit III*. ........ 12

III.    The Court Should Certify a Reprocessing Subclass............................................. 13

    A.    The Proposed Subclass .......................................................................... 14

        1.    The Proposed Subclass Includes Only Class Members Who Incurred Unreimbursed Expenses as a Result of UBH's Arbitrary and Capricious Denial. ............................................ 14

        2.    The Proposed Subclass Excludes Any Class Members Whose Denials Were Based, Even in Part, on an Independent Ground................................................................................... 17

        3.    The Proposed Subclass Excludes Class Members Whose Denials Were Based, Even in Part, Upon An Unchallenged Guideline Criterion............................................................... 19

    B.    The Proposed Subclass Satisfies the Requirements of Rule 23(a)............. 20

        1.    The Subclass Is So Numerous That Joinder Is Impracticable. ................................................................................... 20

        2.    Questions of Law and Fact are Common to Plaintiff and the Subclass. ............................................................................. 21

        3.    Plaintiff's Claims are Typical of the Claims of the Subclass. ................................................................................... 22

        4.    Plaintiff and Her Counsel Fairly and Adequately Represent the Interests of the Proposed Class........................................ 22

    C.    The Reprocessing Subclass Satisfies Rule 23(b)(3).................................... 23

        1.    Predominance. ........................................................................ 23

2.    Superiority ............................................................... 24

IV.    Conclusion ............................................................................ 25

# TABLE OF AUTHORITIES

**CASES**

*Abadilla v. Precigen, Inc.*,
No. 20-CV-06936-BLF, 2023 WL 7305053 (N.D. Cal. Nov. 6, 2023)...................................25

*Abatie v. Alta Health & Life Ins. Co.*,
458 F.3d 955 (9th Cir. 2006) ...............................................................................................10

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)..............................................................................................................25

*Bautista v. Valero Mktg. & Supply Co.*,
322 F.R.D. 509 (N.D. Cal. 2017)..........................................................................................15

*Booth v. Appstack, Inc.*,
No. C13-1533JLR, 2015 WL 12964722 (W.D. Wash. July 13, 2015)..................................16

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017) ...............................................................................................15

*Brown v. DirecTV, LLC*,
562 F. Supp. 3d 590 (C.D. Cal. 2021) ...................................................................................24

*Doe v. Blue Shield of California*,
620 F. Supp. 3d 875 (N.D. Cal. 2022) ...................................................................................12

*Ellenburg v. Brockway, Inc.*,
763 F.2d 1091 (9th Cir. 1985) ...............................................................................11, 12, 15

*Evon v. Law Offices of Sidney Mickell*,
688 F.3d 1015 (9th Cir. 2012) ...............................................................................................21

*Firestone Tire & Rubber Co. v. Bruch*,
489 U.S. 101 (1989)...............................................................................................................11

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982)..........................................................................................................12, 22

*Gold v. Lumber Liquidators, Inc.*,
323 F.R.D. 280 (N.D. Cal. 2017).............................................................................21, 22, 23

*Hancock v. Montgomery Ward Long Term Disability Tr.*,
787 F.2d 1302 (9th Cir. 1986) ...............................................................................11, 15

*In re Coll. Athlete NIL Litig.*,
No. 20-cv-03919 CW, 2023 WL 8372787 (N.D. Cal. Nov. 3, 2023)....................................24

*In re Optical Disk Drive Antitrust Litig.*,
    No. 3:10-MD-2143 RS, 2016 WL 467444 (N.D. Cal. Feb. 8, 2016) ...................................... 21

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. M 07-1827 SI, 2012 WL 253298 (N.D. Cal. Jan. 26, 2012)............................................. 16

*Kamakahi v. Am. Soc'y for Reproductive Med.*,
    305 F.R.D. 164 (N.D. Cal. 2015)............................................................................................ 15

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ................................................................................................. 21

*Patterson v. Hughes Aircraft Co.*,
    11 F.3d 948 (9th Cir. 1993) .................................................................................................. 11

*Ries v. Ariz. Beverages USA LLC*,
    287 F.R.D. 523 (N.D. Cal. 2012)........................................................................................... 16

*Ruiz Torres v. Mercer Canyons Inc.*,
    835 F.3d 1125 (9th Cir. 2016) ............................................................................................... 24

*Ryan S. v. UnitedHealth Grp., Inc.*,
    98 F.4th 965 (9th Cir. 2024) ................................................................................................. 14

*Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*,
    85 F.3d 455 (9th Cir. 1996) ........................................................................................ 10, 11, 12

*United Behav. Health v. United States Dist. Ct. for N. Dist. of California*,
    No. 24-242, 2024 WL 4036574 (9th Cir. Sept. 4, 2024) ("*Wit IV*") ....................................... 10

*United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv.*
    *Workers Int'l Union v. ConocoPhillips Co.*,
    593 F.3d 802 (9th Cir. 2010) ................................................................................................. 12

*Wit v. United Behavioral Health*,
    317 F.R.D. 106 (N.D. Cal. 2016) ("*Wit* Class Certification Order")................................... 23, 24

*Wit v. United Behavioral Health*,
    58 F.4th 1080 (9th Cir. 2023) ("*Wit II*") .................................................................................. 8

*Wit v. United Behavioral Health*,
    79 F.4th 1068 (9th Cir. 2023) ("*Wit III*") ...................................................................... passim

*Wit v. United Behavioral Health*,
    No. 14-cv-02346-JCS, 2019 WL 1033730 (N.D. Cal. Mar. 5, 2019) .............................. passim

**STATUTES**

29 U.S.C. §§ 1001–1446.............................................................................................................. 2

29 U.S.C. § 1133(1) ................................................................................................................ 17

**RULES**

Fed. R. Civ. P. 23 ............................................................................................................ 2, 14

Fed. R. Civ. P. 23(a)(1) ........................................................................................................ 20

Fed. R. Civ. P. 23(a)(2) ................................................................................................... 21, 22

Fed. R. Civ. P. 23(a)(3) ........................................................................................................ 22

Fed. R. Civ. P. 23(a)(4) ........................................................................................................ 22

Fed. R. Civ. P. 23(b)(3) ................................................................................................ 1, 15, 23, 24

Fed. R. Civ. P. 23(c)(1)(C) ..................................................................................................... 1

Fed. R. Civ. P. 23(c)(5) ........................................................................................................ 14

**REGULATIONS**

29 C.F.R. § 2560.503-1(g)(1) ................................................................................................ 18

## NOTICE OF MOTION AND MOTION TO
## MODIFY CLASS CERTIFICATION ORDER

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on April 10, 2025, at 1:30 p.m., in Courtroom 3, 17th Floor, 450 Golden Gate Avenue, San Francisco, California, before the Honorable Richard Seeborg, Plaintiff Mary Jones, by and through her agent ("Plaintiff"), will and hereby does move pursuant to Federal Rule of Civil Procedure 23(c)(1)(C) to modify the Court's March 11, 2021 Order Granting Motion for Class Certification (ECF No. 76), as set forth herein.

The relief Plaintiff requests in this motion is an order: (1) modifying the Court's Order Granting Motion for Class Certification, ECF No. 76, to (a) amend the class definition and (b) certify the proposed Reprocessing Subclass defined below; (2) appointing Plaintiff as representative for the Reprocessing Subclass; and (3) appointing Zuckerman Spaeder LLP and Psych-Appeal, Inc. as Co-Lead Class Counsel for the Subclass.

Plaintiff's motion is made pursuant to Federal Rules of Civil Procedure 23(c)(1)(C) and 23(b)(3). Plaintiff's motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities and all exhibits thereto, the Declaration of Caroline E. Reynolds, all pleadings on file in the above-captioned case, and such other support as may be presented to the Court.

## STATEMENT OF ISSUES TO BE DECIDED

The issues for this Court to decide are: (1) whether the Court should modify the definition of the certified Class as proposed herein; (2) whether the Court should certify the proposed Reprocessing Subclass under Fed. R. Civ. P. 23(b)(3); (3) whether the Court should appoint Plaintiff Mary Jones as representative for the Reprocessing Subclass; and (4) whether the Court should appoint Zuckerman Spaeder LLP and Psych-Appeal, Inc. as Co-Lead Class Counsel for the Reprocessing Subclass.

## MEMORANDUM OF POINTS AND AUTHORITIES

This Court's Class Certification Order, ECF No. 76, should be modified to conform to the Ninth Circuit's decision in *Wit v. United Behavioral Health*, 79 F.4th 1068, 1090 (9th Cir. 2023) ("*Wit III*"). In *Wit III*, the Ninth Circuit clarified the showing an ERISA plaintiff needs to make to be entitled to a reprocessing remedy for an arbitrary and capricious denial of benefits under an ERISA plan. *Id.* at 1084. It held that such a plaintiff must show that "his or her claim was denied based on the wrong standard *and* that he or she might be entitled to benefits under the proper standard." *Id.* To ensure compliance with that clarified standard, and to avoid the same potential for overbreadth that tripped up the classes in the *Wit* case, Plaintiffs seek to certify a Reprocessing Subclass that is limited to Class members who satisfy the Ninth Circuit's test. Specifically, Plaintiffs seek certification of a Subclass that is limited to Class members who incurred expenses for residential treatment for which benefits were not paid, and whose denials were based solely on the Guideline criteria that Plaintiff challenges in this action. Because Rule 23 explicitly authorizes this relief, and the motion is supported by evidence demonstrating that the proposed Subclass satisfies all the applicable Rule 23 requirements, the motion should be granted.

## I.      BACKGROUND

### A.      The Class's Claims and Their Overlap with *Wit*

Plaintiff "Mary Jones" (a pseudonym) brought this action on her own behalf and on behalf of the now-certified Class seeking redress for UBH's violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1446. The Class alleges that each Class member's employer-sponsored health benefit plan "required, as a precondition to behavioral health coverage, that the requested treatment comport with generally accepted standards of care" (i.e., the "GASC Requirement"). Order Granting Mot. for Class Certification (the "Class Certification Order"), ECF No. 76 (Mar. 11, 2021) at 3. As the claims administrator for mental health and substance use disorder benefits under each of the Class members' plans, UBH developed its own, internal Level of Care Guidelines ("LOCGs") and Coverage

Determination Guidelines ("CDGs") (collectively, the "Guidelines") for its use in implementing the plans' GASC Requirement. In creating its Guidelines, however, UBH deliberately replaced "generally accepted standards" with much narrower coverage criteria for the express purpose of allowing it to deny more claims and thereby advance its own financial interests, rather than acting solely in the interests of the plan members. Plaintiffs allege that by developing and relying upon its improper Guidelines to determine whether the plans' GASC precondition was met, and then denying claims on that improper basis, UBH breached its fiduciary duties and wrongfully denied Class members' claims. *See generally id.* at 1-5 (summarizing Plaintiff's allegations). Reprocessing would require UBH to re-evaluate requests for coverage it denied under the Guidelines, except this time it would have to apply the plans' correct standard.

As the Court knows, this case stems directly from another certified class action pending in this Court: *Wit v. United Behavioral Health* (No. 3:14-CV-02346-JCS).[1] *See* Class Cert. Order at 1-2. The *Wit* Litigation challenged UBH's common course of conduct spanning from May 22, 2011 through June 1, 2017, and involved challenges to the 2011 through 2017 versions of UBH's Guidelines. *Wit v. United Behavioral Health*, No. 14-cv-02346-JCS, 2019 WL 1033730, at *4 (¶ 13) (N.D. Cal. Mar. 5, 2019) ("*Wit* FFCL"). This case picks up where *Wit* leaves off, with a Class Period running from June 2, 2017 through February 7, 2018, and only concerns the 2017 versions of UBH's Guidelines, which were challenged in *Wit* and found to be unreasonably more restrictive than GASC. *See* Class Cert. Order at 2; *Wit* FFCL, 2019 WL 1033730, at *22-42 (¶¶ 82-156); *id.* at *55 (¶ 212). *Wit III*, 79 F.4th at 1088 n.6 ("We hold that it was not error for the district court to rule that UBH abused its discretion because the challenged portions of the Guidelines did not *accurately* reflect GASC.") (original emphasis).

### 1. The Challenged Guideline Criteria

The 2017 LOCGs, on their face, specifically identify certain sections as laying out *criteria* for coverage. *See generally* Ex. 1 (the 2017 LOCGs). Only a few of those sections

---

[1] *Wit* was consolidated for discovery and trial with *Alexander v. United Behavioral Health* (No. 3:14-CV-05337-JCS). Plaintiff refers to the two cases collectively as the "*Wit* Litigation" and to the three classes certified in that case, collectively, as the "*Wit* Classes."

contain criteria applicable to the residential treatment services at issue here: first, the "common criteria" applicable to "all levels of care," Ex. 1 at 8-0006-07, 8-0011, & 8-0024-25; second, the criteria for residential treatment of mental health conditions, *id*. at 8-0018-19; and third, the criteria for residential treatment of substance use disorders, *id*. at 8-0035-36.[2] Exhibit 2 is a demonstrative exhibit showing only the criteria from the 2017 LOCGs that applied to the Class members' claims.

The LOCGs' various coverage criteria are **mandatory**—every single one has to be satisfied before UBH will approve coverage. *Wit* FFCL, 2019 WL 1033730, at *11-12 (¶¶ 43-44); *see also, e.g.*, Ex. 1 at 8-007 (multiple challenged criteria joined by "AND"). The *Wit* Plaintiffs challenged—successfully—all but a small handful of the LOCG criteria applicable to residential treatment.[3] *See* Reynolds Decl. ¶ 4; *see also* Ex. 6 (annotated version of Exhibit 2, showing criteria challenged in *Wit* with citations to the *Wit* record). In this case, Plaintiff challenges all of those provisions for the same common reasons—and intends to rely at least in part on collateral estoppel to establish, by common proof, that all of those Guideline criteria are far more restrictive than GASC. In addition, there are three provisions that the *Wit* plaintiffs did

---

[2] Criteria for coverage at levels of care other than residential treatment are not applicable to the Class members' denials in this case. *See* Ex. 1 at pp. 8-0013 to 8-0018; 8-0019 to 8-0021; 8-0026 to 8-0035; 8-0036 to 8-0039. Likewise, the entirety of the Level of Care Guidelines for Wraparound Services, *id*. at pp. 8-0042 through 8-0056, are also inapplicable to the Class members' requests for coverage of residential treatment.

[3] As explained in the Declaration of Caroline E. Reynolds filed with this motion, the *Wit* Plaintiffs submitted a "Consolidated Claims Chart" after trial in the *Wit* Litigation, in which they specifically challenged individual criteria throughout UBH's Guidelines on multiple grounds. *See generally Wit* ECF No. 404-2; Reynolds Decl. ¶ 7; Ex. 5. In his Findings of Fact and Conclusions of Law, Judge Spero found that each challenged criterion was inconsistent with generally accepted standards of care on the grounds the *Wit* Plaintiffs asserted. *See Wit* FFCL, 2019 WL 1033730, at *22 n.12 (as to "acuity" ground); *id*. at *28 n.13 (as to "co-occurring" ground); *id*. at *29 n.14 (same as to "Drive Down" ground, with three exceptions not relevant here); *id*. at *35 n.16 (same as to "Custodial" ground); *id*. at *31 (¶ 118) (same as to "maintenance"); *id.* at *34 (¶ 128) (same as to "motivation").

not specifically challenge, which Plaintiff will prove with common evidence are also inconsistent with GASC. *See* Ex. 6 at 4 (criteria in yellow boxes).[4]

The LOCG criteria Plaintiff does not challenge in this case fall into two categories. First, a few provisions in the LOCGs' "common criteria" section refer to plan provisions other than the plans' GASC Requirements. *See* Ex. 3 (chart identifying "Independent Criteria" in the 2017 LOCGs). For example, the first few criteria articulate the plans' standard administrative requirements that the member must be "eligible for benefits," that the member's "condition" and the "proposed service(s)" must be covered by the plan, and that the services must be "within the scope of the provider's professional training and licensure." Ex. 1 at 8-0006; Ex. 3 at Nos. 1, 2, 3.[5] Another criterion specifies that the services must *not* be "considered experimental," referencing the plans' common exclusion of coverage for treatments that are considered experimental and investigational. Ex. 1 at 8-0007; Ex. 3 at No. 4.[6]

---

[4] In addition to the evidence demonstrating that specific criteria *in* the LOCGs are incompatible with generally accepted standards of care, common evidence will also show that the Guidelines were more restrictive than GASC because of what they *lack*. For example, there are no criteria that take into account the unique treatment needs of children and adolescents. *Wit* FFCL, 2019 WL 1033730, at *20-21, 34 (¶¶ 77-78, 130-32). Nor do the Guidelines call for consideration of whether the requested level of care is needed to ensure *effective* treatment of co-occurring conditions. *Id.* at *18, 28-29 (¶¶ 72, 107-09). Overall, the Guidelines "instruct clinicians to collect a wide array of information… but do not allow for adequate consideration of this information in the rules and requirements that govern coverage determinations." *Id.* at ** 21, 40 (¶¶ 79-81, 149). In sum, all of the Guidelines' affirmative defects *and* glaring omissions led Judge Spero to find that the 2017 LOCGs were an unreasonable implementation of the plans' GASC Requirement because, taken as a whole, they improperly narrow the scope of covered residential treatment services to only acute crises. *Id.* at, *e.g.*, **22, 48, 55 (¶¶ 82, 183, 212).

[5] UBH uses distinct "denial reason" codes in its electronic records to indicate denials based on these exclusions. *See* Ex. 15-A (Bridge testimony) at 903-0004 to 0005; Ex. 15-B (data dictionary) at 290-0012 (codes for, e.g., "Lack of Insurance," "Excluded Diagnosis," "Excluded Service," "Not a Covered Benefit").

[6] Residential treatment is a well-accepted part of the continuum of care for behavioral health conditions; it is not "experimental or investigational." *See, e.g.*, *Wit* FFCL, 2019 WL 1033730, at *16 (¶ 63); Ex. 1 (2017 LOCGs) at 8-0018, 8-0035. In any case, UBH also uses a distinct "denial reason" code for denials based on the experimental/investigational exclusion. *See* Ex. 15-A (Bridge testimony) at 903-0004 to 0005; Ex. 15-B (data dictionary) at 290-0012 (code for "Experimental Treatment").

Second, there are several criteria Plaintiff does not challenge as inconsistent with GASC; those "Unchallenged Criteria" are identified in Exhibit 4. One such criterion requires that services must be "consistent with [UBH's] best practice guidelines." Ex. 4 at No. 1. Plaintiff does not intend to argue that the "best practices" are inconsistent with GASC.[7] Three other Unchallenged Criteria are designed to confirm that the patient does not require a *higher* level of care, such as inpatient hospitalization, residential detoxification, or inpatient detoxification. *See* Ex. 4 at Nos. 2, 3, 6. Another ensures that the member does not require "medical/surgical treatment," which would not be available in a residential treatment setting. *Id*. at 7. Finally, Plaintiff does not challenge the portion of the LOCGs' definition of "custodial services" that is consistent with GASC—although she *does* challenge the portion of that definition that is more restrictive than GASC. *Id.* at No. 5.[8]

## 2.    The Class Members' Claims and Requested Relief

The Class in this case, like the *Wit* Classes, asserts two distinct claims: first, that UBH breached its fiduciary duties of loyalty and care by allowing its Guideline-development process to be driven by its own bottom line rather than developing the Guidelines solely in the interests of the plan participants and beneficiaries (the "Breach of Fiduciary Duty Claim"); and second, that UBH's denials of the Class members' requests for benefits were arbitrary and capricious because the Guidelines were much more restrictive than the plans' actual GASC Requirements, which UBH used the Guidelines to implement (the "Denial of Benefits Claim"). *See, e.g.*, Class

---

[7] UBH's corporate designee testified at trial in *Wit* that UBH does not base denials on the Guidelines' "Clinical Best Practices" sections. Ex. 16 (excerpt from *Wit* trial testimony of Dr. Andrew Martorana) at 980-81. This makes sense, because those sections generally describe actions healthcare providers should take, rather than enumerating criteria for when UBH will or will not approve coverage. *See* Ex. 1 at 8-007 to 8-009; 8-0012 to 8-0013, 8-0025 to 8-0026. The "best practices" sections, moreover, do not provide rules for determining the patient's *need* for services at a particular level of care. *Id*.

[8] *See Wit* FFCL, 2019 WL 1033730, at *35-39 (¶¶ 133-48). Some Class members' plans include, in full, the same non-GASC definition of "custodial" care as in the LOCGs. *Compare, e.g.*, Ex. F-24 to Pl.'s Mot. for Class Cert., ECF No. 60-14, at 114 (UBHJONES0024458) (SPD definition of "custodial care"), *with* Ex. 1 at 8-0018 (2017 LOCGs' definition of "custodial" services). In those instances *only*, Plaintiff has categorized the "custodial" exclusion as an "independent" ground for denial. *See* Ex. 3 at No. 5.

Cert. Order at 5; *compare*, *e.g.*, *Wit* FFCL, 2019 WL 1033730, at *5 (¶¶ 16-18) (describing the *Wit* Plaintiffs' claims). *See also Wit III*, 79 F.4th at 1088 ("To the extent the district court concluded that the challenged portions of the Guidelines represented UBH's *implementation* of the GASC requirement, we find no clear error.").

As relief for both claims, the Class seeks forward-looking declaratory and injunctive relief and an order requiring UBH to reprocess the Class members' wrongfully-denied requests for benefits. Class Cert. Order at 5. Therein lies the present need for action by this Court: because the Ninth Circuit, in ruling on UBH's appeal in the *Wit* Litigation, clarified what an ERISA plaintiff needs to show to be entitled to a reprocessing remedy, it is now apparent that the Class as certified in this case contains some members who would not be entitled to that relief. For that reason, Plaintiff respectfully requests that the Court modify its Class Certification Order to ensure that only Class members who meet the Ninth Circuit's clarified test obtain a reprocessing remedy.

## B.    The Certified Class

The Court previously certified a Class defined as follows:

> Any participant or beneficiary in a health benefit plan governed by ERISA whose request for coverage of residential treatment services for a mental illness or substance use disorder was denied by UBH, in whole or in part, on or after June 2, 2017, based upon UBH's 2017 Level of Care Guidelines ("LOCGs") or upon a Coverage Determination Guideline that incorporates the 2017 LOCGs, and whose request was not subsequently approved, in full, following an administrative appeal.

> The Class excludes any member of a fully-insured plan governed by both ERISA and the state law of Connecticut, Rhode Island or Texas, whose request for coverage of residential treatment was related to a substance use disorder, except that the Class includes members of plans governed by the state law of Texas who were denied coverage of substance use disorder services sought or provided outside of Texas.

Class Cert. Order at 4, 16. The Court appointed Plaintiff as the Class Representative for the Class, and the law firms Zuckerman Spaeder LLP and Psych-Appeal Inc. as co-lead class counsel. *Id.* at 15-16.

1   UBH has filed a motion to decertify the Class, ECF No. 124, which Plaintiff has opposed.

2   *See* Plaintiff's Opposition to UBH's Mot. for Class Decertification, ECF No. 125. To minimize

3   confusion, this Motion assumes that the Court's Class Certification Order remains in effect and

4   unchanged.

5       **C.      The Ninth Circuit's Ruling in *Wit***

6   UBH's appeal in *Wit* focused on certification of the denial of benefits claims for

7   reprocessing. UBH asserted three grounds for reversal: (1) that Plaintiffs failed to prove

8   causation as a requirement for Article III injury in fact and a claim for wrongful denial of

9   benefits under ERISA; (2) that the district court erroneously failed to defer to UBH's

10  interpretation of plan terms; and (3) that the district court erred in excusing absent class members

11  from exhausting administrative remedies. Def.-Appellant's Opening Brief, No. 20-17363 (9th

12  Cir. Mar. 15, 2021), App. ECF No. 25 at ii-iii. UBH did not argue on appeal that any of the

13  Court's factual findings were clearly erroneous. *See generally id*.

14  The Ninth Circuit's August 22, 2023 opinion is the third iteration of its ruling on the

15  appeal.[9] As it had in the prior two decisions, the Panel first rejected UBH's Article III standing

16  argument, finding with respect to **both** of the *Wit* Plaintiffs' claims that the plaintiffs suffered

17  concrete, particularized injuries-in-fact that were "fairly traceable" to UBH's misconduct. *Wit*

18  *III,* at 1082-83.

19  Turning to the class certification order, the Panel first "deem[ed] any challenge to

20  certification of the breach of fiduciary duty claim forfeited," leaving "class certification as to that

21  claim intact." *Id.* at 1084 n.5. With regard to the denial of benefits claim, however, the Panel

22  concluded "that the district court erred in granting class certification here based on its

23

24  _____

25  [9] The Ninth Circuit panel (the "Panel") initially issued a 7-page, unsigned, and unpublished Memorandum disposition reversing the judgment. No. 20-17363 (9th Cir. Mar. 22, 2022), App.

26  ECF No. 92-1 ("*Wit I*"). After the *Wit* Plaintiffs sought rehearing en banc, the Panel withdrew its Memorandum disposition and issued an opinion for publication that affirmed in part and

27  reversed in part. *Wit v. United Behavioral Health*, 58 F.4th 1080 (9th Cir. 2023) (hereafter, "*Wit II*"). The *Wit* Plaintiffs again sought rehearing en banc, which resulted in the August 22, 2023

28  opinion affirming in part, reversing in part, and remanding the case. *Wit III*, 79 F.4th at 1076.

determination that the class members were entitled to have their claims reprocessed regardless of the individual circumstances at issue in their claims." *Id.* at 1084. Reasoning that "remand" to the plan administrator is available as relief for an improper denial of benefits only when the participant "might be entitled to benefits under the proper standard," *id.*, the Panel identified two groups of *Wit* Class members who would not meet that standard: (1) those whose claims were denied "solely based on unchallenged provisions" of the Guidelines, *id.* at 1085, and (2) those whose claims were denied "*in part* based on the Guidelines" but also for independent reasons. *Id.* The Panel therefore reversed the certification of the *Wit* Classes' denial of benefits claim, squarely predicating that reversal on the fact that the Classes were overbroad for purposes of the reprocessing relief. *Id.* at 1086 (reversing class certification "[b]ecause the classes were not limited to those claimants whose claims were denied based only on the challenged provisions of the Guidelines").

On the merits, the Panel upheld the district court's findings that UBH had a financial conflict of interest, ruling they were "not clearly erroneous." *Id.* at 1087. The Panel acknowledged a dispute between the parties as to whether the district court had misinterpreted the plans to require coverage of *all* services that were consistent with GASC. *Id.* at 1087-88. Rather than resolve that dispute, however, the Panel issued conditional rulings on the merits of the denial of benefits claim. The Panel held that "it was not error for the district court to rule that UBH abused its discretion because the challenged portions of the Guidelines did not *accurately* reflect GASC." *Id.* at 1088 n.6. But "to the extent" the district court "interpreted the Plans to require coverage for all care consistent with GASC," it erred. *Id.* at 1088.

The Panel noted that the judgment on the breach of fiduciary duty claim also "relied heavily" on the "conclusion that the Guidelines impermissibly deviated from GASC," but acknowledged that other findings were also relevant to the ruling on that claim. *Id.* at 1088 n.7. In particular, the Panel pointed to the district court's findings, "among other things, that financial incentives infected UBH's Guideline development process and that UBH developed the Guidelines with a view toward its own interests," *id.*, and stated that its "decision does not

disturb these findings to the extent they were not intertwined with an incorrect interpretation of the Plans." *Id.* The Panel, accordingly, reversed the judgment on the breach of fiduciary duty claim only "to the extent" it was based on the "erroneous interpretation of the Plans" that the Panel had identified. *Id.* at 1088 (emphasis added). Turning to exhaustion, the Panel noted that the district court had not addressed the threshold question of whether any exhaustion requirements apply to the *Wit* Plaintiffs' breach of fiduciary claim, and if so, whether exhaustion was excused either for futility or because exhaustion by class representatives was sufficient. *Id.* at 1089-90.[10]

## **ARGUMENT**

## **I.    THE NINTH CIRCUIT HAS CLARIFIED THE STANDARD FOR OBTAINING A REPROCESSING REMEDY UNDER ERISA.**

*Wit III* did not disturb the long line of controlling authority in this Circuit holding that, where a plan delegates discretion to the plan administrator, it is "up to the administrator, not the courts," to apply the plan terms (properly construed) to plan members' claims in the first instance. *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 460 (9th Cir. 1996). This is because, when a plan gives an administrator discretion to make benefit determinations, the court's role is to review the administrator's decision "only for an abuse of discretion," not to make a fresh determination *de novo*. *Id.* at 458 (cleaned up); *see also*, *e.g.*, *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 965 (9th Cir. 2006) (citing

---

[10] On remand, the district court interpreted the scope of *Wit III*'s mandate as allowing for further proceedings on the denial of benefits claim, and UBH sought a writ of mandamus to preclude any further action on that claim. In an unpublished memorandum disposition, the Panel granted mandamus on the ground that, notwithstanding the conditional language it used repeatedly in *Wit III* to modify its reversal on the merits of the named plaintiffs' denial of benefits claim, the Panel intended to resolve that claim "definitively" and "without remand." *United Behav. Health v. United States Dist. Ct. for N. Dist. of California*, No. 24-242, 2024 WL 4036574, at *3 (9th Cir. Sept. 4, 2024) ("*Wit IV*"). By contrast, the Panel reiterated that it had expressly remanded the *Wit* Classes' breach of fiduciary duty claims for the district court to determine "whether the entirety of the fiduciary duty claim was based on misinterpretation of the Plans' GASC precondition," or whether "some part of that claim did survive." *Id.* at *2.

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). In other words, deference to the administrator's plan-conferred discretion ***is why*** remand for reprocessing is the "correct course to follow" when the administrator's error means that the administrator "has not yet had the opportunity of applying the Plan, properly construed," to the participant's benefit claim. *Saffle*, 85 F.3d at 460-61 (remanding for the administrator to apply the corrected plan definition of "total disability" to the plaintiff's claim).

In *Wit III*, the Ninth Circuit reiterated its longstanding rule that reprocessing is an appropriate remedy for a plan administrator's "application of the wrong standard" in denying benefits, so long as using the wrong standard "*could have* prejudiced the claimant" because "he or she *might be* entitled to benefits under the proper standard." 79 F.4th at 1084 (emphasis added) (citing, with approval, *Saffle*, 85 F.3d at 460-61 and *Patterson v. Hughes Aircraft Co.*, 11 F.3d 948, 949-51 (9th Cir. 1993)). Conversely, reprocessing is *not* appropriate if the record before the court clearly demonstrates that the administrator's error "did not prejudice the claimant" or proves that "the claimant was ineligible for benefits." *Wit III,* at 1084 (citing, *inter alia*, *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1095-96 (9th Cir. 1985) and *Hancock v. Montgomery Ward Long Term Disability Tr.*, 787 F.2d 1302, 1308 (9th Cir. 1986)).

Applying that test, the Ninth Circuit found that, for purposes of the reprocessing remedy, the *Wit* Guidelines Classes were overbroad because the record (i.e., a sample of the Class members' denial letters) clearly demonstrated that the Classes included some members who were "ineligible for benefits" notwithstanding the Guideline defects the *Wit* Plaintiffs had proven: (1) members whose denial letters reflected that UBH relied on a "wholly independent ground" for denial in addition to the Guidelines, 79 F.4th at 1084-85; and (2) members whose Guideline denial was "*solely* based on unchallenged provisions" of the Guidelines (whether the LOCGs or the CDGs), 79 F.4th at 1085 (emphasis added). The Court reasoned that in those circumstances,

the denial would remain unchanged even if the Guideline defects were corrected, making

reprocessing "a 'useless formality.'" *Id.* at 1086 (quoting *Ellenburg*, 763 F.2d at 1095-96).

*Wit III* did not hold, of course, that an ERISA plaintiff must demonstrate actual

entitlement to benefits in order to be eligible for reprocessing; such a standard would make

reprocessing pointless in *every* case. The reason *Wit III* phrased its test the way it did—holding

that reprocessing is an appropriate remedy if application of the wrong standard "*could have*

prejudiced" the claimant and that the claimant "*might be* entitled to benefits" under the proper

standard, 79 F.4th at 1084 (emphasis added)—is that a court applying *Firestone* deference

should not be deciding entitlement to benefits in the first instance. Remand to the administrator is

unnecessary if the correct outcome is *clear* from the existing record and no additional factual

questions need to be resolved, but short of such clear evidence, "remand for reprocessing

remains the "correct course to follow" so that the administrator can apply the plan terms

correctly in the first instance. *Saffle*, 85 F.3d at 460-61. *See also*, e.g., *Doe v. Blue Shield of

California*, 620 F. Supp. 3d 875, 883 (N.D. Cal. 2022) (Seeborg, J.) (remanding portion of

benefit claim for administrator "to make factual determinations of unresolved issues" the

administrator did not previously address).

## II.    THE COURT SHOULD MODIFY THE CLASS DEFINITION IN ACCORDANCE WITH *WIT III*.

"Even after a certification order is entered, the judge remains free to modify it in the light

of subsequent developments in the litigation." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160

(1982); *see also, e.g.*, *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. &

Serv. Workers Int'l Union v. ConocoPhillips Co.*, 593 F.3d 802, 809 (9th Cir. 2010) (until it

enters a final judgment, a district court "retains the flexibility to address problems with a

certified class as they arise"); Fed. R. Civ. P. 23(c)(1)(C). In light of the Ninth Circuit's new

guidance clarifying that a Class seeking a reprocessing remedy under ERISA should be limited

12

only to members who meet both parts of the test enunciated in *Wit III*, 79 F.4th at 1084, Plaintiff

requests that the Court modify the Class definition to include the following limitation:

> The Class asserts claims for (1) breach of fiduciary duty; and
> (2) arbitrary and capricious denial of benefits, under 29 U.S.C.
> § 1132(a)(1)(B) or, in the alternative, 29 U.S.C. § 1132(a)(3), and
> seeks appropriate equitable remedies including declaratory and
> injunctive relief. Only the members of the Reprocessing Subclass
> seek a reprocessing remedy.

Modifying the Class definition in this way will ensure that the Class, as certified, fully conforms

to the *Wit III* decision and its reprocessing test.

## III.    THE COURT SHOULD CERTIFY A REPROCESSING SUBCLASS.

In *Wit III*, the Ninth Circuit confirmed that courts can order a reprocessing remedy for

ERISA plaintiffs who were denied benefits based on an incorrect standard, upon a showing that

they might be entitled to benefits under the correct standard and that they could have been

prejudiced by the administrator's use of the wrong standard. As discussed above, the Ninth

Circuit identified two ways in which the *Wit* Classes, as certified, were overbroad with respect to

the requested reprocessing remedy: first, the *Wit* Classes, as certified, included people whose

claims were denied based on UBH's Guidelines and also based on one or more "wholly

independent" grounds unrelated to the Guidelines—that is, a different plan provision that UBH

did not implement through its Guidelines. *Wit III*, 79 F.4th at 1085. Second, the *Wit* Classes, as

certified, could include people whose claims were denied based "solely" on portions of the

Guidelines that the *Wit* Plaintiffs did not challenge. *Wit III*, 79 F.4th at 1085. The Ninth Circuit

held that people whose claims were denied on independent grounds and/or solely based on

unchallenged Guideline provisions could not meet the standard for a reprocessing remedy. *Id.* at

1084. Including those individuals in classes seeking reprocessing, therefore, ran afoul of the

Rules Enabling Act. *Id.* at 1086.

But *Wit III* did not doom reprocessing classes as a matter of law. Indeed, the Ninth

Circuit recently confirmed that, under *Wit III*, "reprocessing could still be an appropriate

equitable remedy" for a class of "individuals whose claims were denied *because*

13

UnitedHealthcare applied the challenged review process." *Ryan S. v. UnitedHealth Grp., Inc.*, 98 F.4th 965, 970 n.2 (9th Cir. 2024).

This Court, accordingly, should further modify its Class Certification Order to make it consistent with the Ninth Circuit's ruling in *Wit III* by certifying a Reprocessing Subclass comprised only of individuals whose denials meet the standard the Ninth Circuit enunciated in *Wit III*, and limiting any request for a reprocessing injunction only to members of that Subclass.

### A.     The Proposed Subclass

Rule 23 permits a certified class to be "divided into subclasses that are each treated as a class" under the rule. Fed. R. Civ. P. 23(c)(5). Plaintiff requests that the Court certify a "Reprocessing Subclass," defined as follows:

> Any member of the Class who incurred expenses for residential treatment for which benefits were not paid, except that the Reprocessing Subclass shall not include Class members whose written notification of denial, as reflected in UBH's records, (a) identifies a reason for denying the request for coverage other than the Class member's failure to satisfy UBH's 2017 LOCGs or a Coverage Determination Guideline that incorporates the 2017 LOCGs, and/or (b) specifies that the member's failure to satisfy the applicable Guideline was based, even in part, on a portion of the applicable Guideline that was unchallenged in this action.

> Members of the Reprocessing Subclass seek a reprocessing injunction to remedy UBH's abuse of discretion in denying their requests for coverage based upon an incorrect standard.

Certifying the proposed Subclass and limiting any reprocessing remedy to the members of that Subclass will ensure that the Certified Class in this case will avoid the overbreadth problems the Ninth Circuit identified in *Wit III*.

      1.    <u>The Proposed Subclass Includes Only Class Members Who Incurred Unreimbursed Expenses as a Result of UBH's Arbitrary and Capricious Denial.</u>

As noted above, in *Wit III*, the Ninth Circuit held that a reprocessing remedy is appropriate relief for an arbitrary and capricious benefit denial only when "a plaintiff has shown that his or her claim was denied based on the wrong standard *and* that he or she might be entitled

to benefits under the proper standard." *Wit III*, 79 F.4th at 1084. The Panel emphasized that the second part of the test cannot be satisfied if it is "clear that the claimant [is] ineligible for benefits." *Id.* at 1084-85 (citing *Ellenburg*, 763 F.2d at 1095-96 (declining to order reprocessing where claimant's age made him ineligible for early retirement benefits) and *Hancock*, 787 F.2d at 1308 (declining to order reprocessing to provide a more detailed denial letter where, on *de novo* review, court upheld the denial of benefits)). Thus, in this case, reprocessing would be appropriate relief for Class members who—like Mary Jones—received residential treatment services for which they incurred expenses, which were never reimbursed with benefits because of UBH's arbitrary and capricious denial. It would not be appropriate for a Class member who did not receive the services for which coverage was sought and did not, therefore, incur any expenses. For that reason, the proposed Reprocessing Subclass excludes the latter type of Class members.[11][12]

This prerequisite for Subclass membership is objectively ascertainable. *See, e.g.*, *Kamakahi v. Am. Soc'y for Reproductive Med.*, 305 F.R.D. 164, 185 (N.D. Cal. 2015) ("In order for a proposed class to satisfy the ascertainability requirement, membership must be determinable from objective, rather than subjective, criteria."). The only question with regard to this element is whether each potential Subclass member, notwithstanding UBH's denial, actually went ahead received residential treatment services for which he or she incurred expense—a yes/no question that can be objectively ascertained through medical and financial records or other documentation submitted by or on behalf of the potential Subclass member during claims

---

[11] Rather than paying for treatment out of pocket, such Class members were forced to accept treatment at a lower level of care than their doctors prescribed or had to forego treatment altogether.

[12] Although some courts have implied an "ascertainability" requirement for class certification pursuant to Rule 23(b)(3), the Ninth Circuit has recognized that "Rule 23 neither provides nor implies that demonstrating an administratively feasible way to identify class members is a prerequisite to class certification." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1133 (9th Cir. 2017); *see also, e.g., Bautista v. Valero Mktg. & Supply Co.*, 322 F.R.D. 509, 518 (N.D. Cal. 2017) (certifying class despite uncertainty that class members could be ascertained). Were such a requirement imposed here—and one should not be—the members of the proposed Subclass are objectively ascertainable.

administration, if UBH is found liable. *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2012 WL 253298, at *3 (N.D. Cal. Jan. 26, 2012) (the need for "proof of class membership" does not "undermine the ascertainability of the class" if the class is "defined by objective criteria"); *see also, e.g.*, *Booth v. Appstack, Inc.*, No. C13-1533JLR, 2015 WL 12964722, at *3 (W.D. Wash. July 13, 2015) ("[I]t is not fatal for class definition purposes if a court must inquire into individual records, so long as the inquiry is not so daunting as to make the class definition insufficient."); *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 535 (N.D. Cal. 2012) (Seeborg, J.) ("There is no requirement that the 'identity of the class members . . . be known at the time of certification.'").

Indeed, UBH's own records demonstrate by a preponderance of the evidence that many Class members received residential treatment services for which UBH denied benefits and thereby incurred unreimbursed expenses. For example, the full list of Guideline-based denials UBH produced in connection with the claim sampling process demonstrates that UBH denied coverage to 125 Class members on a post-service basis, i.e., *after* the residential treatment was already provided. *See* Reynolds Decl. ¶ 12. Plaintiff Mary Jones is one of them; she received nearly a year of residential treatment services for which UBH denied coverage on a post-service basis. *See* Ex. 13 at 2-3. In addition, the case files UBH produced for the Sample Class Members[13] demonstrate that members often remained in residential treatment while UBH was making its decision, or even after UBH denied further coverage. *See generally* Ex. 8 (chart entitled, "Sample Class Members Who Received Residential Treatment for Which UBH Denied Coverage"); Reynolds Decl. ¶ 12; *see also, e.g.*, Ex. 8 at 1 (entry for Mem. No. 10034); Ex. 13 at 10 (case notes for member No. 10034 reflecting ███████████████████████████ ███████████████████████████████████████); Ex. 8 at 3 (Mem. No. 12227); Ex.

---

[13] Plaintiff uses the term "Sample Class Member" to refer to a Claim Sample member who meets the criteria for membership in the certified Class, as reflected in the evidence Plaintiff submitted in support of her Motion for Class Certification. *See, e.g.*, Amended Exhibit C in support of Plaintiff's Mot. for Class Cert., ECF No. 71-5 (Under Seal). Of course, only Class members qualify for membership in the proposed Subclass.

13 at 228 (case notes reflecting member No. 12227 ███████████████████

███████); Ex. 8 at 3 (Mem. No. 12370); Ex. 13 at 239 (case notes dated December 14, 2017

reflecting member No. 12370 █████████████████████████████

██████████████████). In total, the records UBH has produced show that nearly two-thirds

(at least 39 out of 60) of the Sample Class Members received at least one day of residential

treatment for which UBH denied benefits. *See generally*, Ex. 8; *see also* Reynolds Decl. ¶ 12.

2.    <u>The Proposed Subclass Excludes Any Class Members Whose Denials<br>Were Based, Even in Part, on an Independent Ground.</u>

As explained above, the other reason the Ninth Circuit found the *Wit* Classes were

overbroad was that the Panel believed the classes included (or could include) members whose

requests for coverage were denied based on UBH's Guidelines ***and also*** based on one or more

"wholly independent" grounds unrelated to the plans' GASC Requirements. *Wit III*, 79 F.4th at

1085. Since the *Wit* Litigation did not invalidate any such independent grounds for denial, the

Panel reasoned that reprocessing to remedy UBH's use of the wrong standard through its

Guidelines would be a "useless formality," because the denial based on the independent ground

would still stand. *Id*. at 1086.

The Reprocessing Subclass proposed here also avoids this type of overbreadth. It

expressly limits Subclass membership—and thus, any reprocessing remedy—to Class members

whose denials were based *solely* on the 2017 Guidelines or on a CDG that incorporates the 2017

Guidelines. Class members whose denials were *also* based on a "wholly independent" ground—

including those identified in Exhibit 3—would not be members of the Subclass.

This Subclass membership criterion is also objectively ascertainable, this time entirely

from UBH's own records—specifically, its records of the denial letters it sent to the Class

members. As a matter of law, UBH was (and is) required to "provide adequate notice in writing

to any participant or beneficiary whose claim for benefits under the plan has been denied, setting

forth the specific reasons for such denial, written in a manner calculated to be understood by the

participant." 29 U.S.C. § 1133(1). The written notice has to state the "specific reason or reasons"

for the denial; refer to the "specific plan provisions" on which it is based; identify any internal

17

"rule, guideline, protocol, or other similar criterion" relied upon; and explain the "clinical judgment for the determination." 29 C.F.R. § 2560.503-1(g)(1) (ERISA claims procedures regulation specifying the information that must be included in such written notification). And as a matter of fact—as found in the *Wit* Litigation—it was UBH's standard operating policy during the Class Period to include *all* the grounds for denial in its denial letters. *See Wit* FFCL, 2019 WL 1033730, at *13 (¶ 50). Thus, under ERISA, and as established in *Wit,* UBH's denial letters are conclusive proof of the ground(s) on which UBH relied to deny coverage to each Class member.

The Claim Sample includes just one Sample Class Member whose request for coverage was based on an Independent Ground.[14] UBH denied coverage to Member No. 11574 █████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███. *See* Ex. 9 (chart entitled, "UBH's Denial Reasons as Stated in Sample Members' Denial Letters") at 9; Ex. 14 at 58-59. Member 11574's plan not only excluded coverage for custodial care, but *also* defined "custodial care" exactly the same way as the 2017 LOCGs do. *Compare* Ex. F-24 to Pl.'s Mot. for Class Cert., ECF No. 60-14, at 114 (UBHJONES0024458) (SPD definition of "custodial care") *with* Ex. 1 at 8-0018 (2017 LOCGs' definition of "custodial" services). For that reason, even if UBH reprocessed that member's denial under GASC-

---

[14] This is not surprising. The Claim Sample was selected from a larger list of all denials in the Class Period for which UBH's electronic records reflect that the LOCGs or a CDG was used in the determination or that the "denial type" was either "Medical Necessity Criteria Not Met," "Clinical Coverage Determination," or "Lack of Active and Progressive Treatment." *See* Ex. 7 hereto (Joint Stipulation Concerning Sampling Methodology (the "Sampling Stipulation")) at ¶ 2. Those denial types are the only ones UBH used that could indicate a Guideline-based denial. *See, e.g.*, Ex. 15-A (*Wit* Trial Ex. 903, designated deposition testimony of Frances Bridge) at 903-0003 to 0004.

In addition, common evidence shows that UBH *only* conducted clinical reviews on coverage requests that meet all administrative criteria for coverage. *See, e.g.*, *Wit* FFCL, 2019 WL 1033730, at *12 (¶¶ 48-49). Since all the Class members' Guideline denials, by definition, were clinical denials, *e.g.*, Ex. 7 (Sampling Stipulation) at ¶ 9(d), it is very unlikely that an administrative reason for denial (e.g., that the member is not enrolled in the plan) was invoked as even part of the denial rationale for any Class member's request for coverage.

compliant Guidelines, the denial would still stand under the plan's definition. Because UBH relied upon an independent ground for denial, Member No. 11574 must be excluded from the Subclass.

In two other instances, the Sample Member's *initial* denial letter identified a non-Guideline reason for denial, and did not cite the Guidelines at all. *See* Ex. 9 at 13 (entry for Sample Member 12782; ██████████████████████); *id.* at 14 (entry for Sample Member 12901; █████████████████████████████████████); Ex. 14 at 102-03, 108-09.[15] In both of those cases, however, on administrative appeal, UBH changed its stated ground for denial to the member's failure to satisfy the Guidelines and abandoned any other grounds for denial. Ex. 9 at 13-14; Ex. 14 at 104-05, 110-11. All of the other Sample Class Members' denial letters state that the denial was "based on" UBH's Guidelines, and do not identify any independent ground for denial. *See generally* Ex. 9; Ex. 14; Reynolds Decl. ¶¶ 13, 18.

### 3. The Proposed Subclass Excludes Class Members Whose Denials Were Based, Even in Part, Upon An Unchallenged Guideline Criterion.

The other reason the Ninth Circuit thought the *Wit* Classes were overbroad was its understanding that the Classes included (or could include) members "who were denied coverage solely based on unchallenged provisions" of the Guidelines. *Wit III*, 79 F.4th at 1085. The proposed Subclass also avoids this type of potential overbreadth. It excludes any Class member whose request for coverage was denied based *even in part* on a criterion in the 2017 LOCGs that Plaintiff does not challenge in this case—that is, an "Unchallenged Criterion." *See* Ex. 4.

---

[15] During the Class Period, UBH used certain "denial type" codes in its electronic records to indicate the basis for its denials. The codes that indicated UBH based its coverage determination on its Guidelines were "Medical Necessity Criteria Not Met" and "Clinical Coverage Determination." Ex. 15-A (Bridge testimony) at 903-0004 to 0005; Ex. 15-B (*Wit* Trial Exhibit 290, UBH's "data dictionary" for its electronic claims database) at 290-0012. The code "Lack of Active and Progressive Treatment", *id.*, also indicates that UBH relied on particular LOCG criteria that are challenged in this case. *See Wit* FFCL, 2019 WL 1033730, at *35-39 (¶¶ 133-48).

Again, satisfaction of this criterion for Subclass membership can be objectively ascertained by reviewing UBH's denial letters.[16] The evidence shows, however, that such denials are few and far between. Again, there is just one example in the entire Claim Sample. Although UBH chose not to cite to or quote from any specific Guideline criteria in its denial letters (in violation of ERISA's notice requirements), it did explain its clinical reasoning by citing the facts the reviewer deemed relevant to the denial. In one Sample Member's denial letter, UBH's clinical reasoning clearly indicates ██████████████████████████████████ ████████████████████████████████████████████████ ████████████████████

██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
████████████████████████

Ex. 10 at 4 (entry for Sample Member 10399); Ex. 14 at 22; *compare* Ex. 4 (██████████). There is no indication in any of the other Sample Class Members' denial letters that UBH relied on any Unchallenged Criterion to deny coverage. *See* Ex. 10 (chart entitled, "UBH's Clinical Reasoning in Sample Class Members' Denial Letters"); Reynolds Decl. ¶ 14.

**B.    The Proposed Subclass Satisfies the Requirements of Rule 23(a).**

1.    <u>The Subclass Is So Numerous That Joinder Is Impracticable.</u>

A class should be certified where the "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "While there is no fixed number that satisfies the

---

[16] UBH may argue that its denial letters make it too difficult to ascertain which Guideline criteria triggered each denial, but any such ambiguity should be held against UBH, not the Class members. It is UBH that has a statutory duty to provide a comprehensible notification of *all* the reasons for its denial. If UBH chose not to specify that its denial was based solely on an Unchallenged Ground, the Court should not draw that inference in UBH's favor. This is especially true here, where *all* of the coverage criteria in the LOCGs are *mandatory*, such that it is impossible to apply the Guidelines without applying multiple challenged criteria. *See, e.g.*, Ex. 2 at 8-007 (multiple challenged criteria joined by "AND").

numerosity requirement, generally, a class greater than forty is sufficient while one less than twenty-one is not." *Gold v. Lumber Liquidators, Inc.*, 323 F.R.D. 280, 287 (N.D. Cal. 2017) (Seeborg, J.); *see also In re Optical Disk Drive Antitrust Litig.*, No. 3:10-MD-2143 RS, 2016 WL 467444, at *11 (N.D. Cal. Feb. 8, 2016) (Seeborg, J.) ("To satisfy this requirement, plaintiffs need not state the 'exact' number of potential class members . . . .").

As reflected in Exhibit 12, Plaintiffs' counsel has identified 38 people within the Claim Sample *alone* who more likely than not qualify for membership in the Reprocessing Subclass, along with Plaintiff Mary Jones. *See* Ex. 12 (Chart entitled, "Claim Sample Members Who Meet Class and Subclass Criteria"); *see also* Reynolds Decl. ¶ 16. There is no question that the proposed Subclass satisfies the numerosity requirement.

2.    Questions of Law and Fact are Common to Plaintiff and the Subclass.

Rule 23(a)(2)'s "commonality" requirement is met when "the class members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke.'" *Gold*, 323 F.R.D. at 287 (quoting *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012)). "[C]ommonality only requires a single significant question of law or fact." *Mazza*, 666 F.3d at 589; *see also Gold*, 323 F.R.D. at 287.

The Subclass members, of course, are also Class members, and therefore they are already united by the predominant common issues driving the whole case—namely, whether UBH's implementation of the plans' GASC Requirement through its Guidelines was unreasonable and whether UBH was driven by its own financial self-interest to develop excessively restrictive Guidelines. The common question driving the *Subclass* is whether people who meet the Subclass criteria are entitled to a reprocessing remedy if the Class proves UBH's use of its Guidelines was an abuse of discretion. The answer to that question will be common as well, since the Subclass definition is expressly tailored to include only people who meet the Ninth Circuit's reprocessing test. *See, e.g., Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012) (explaining that "commonality exists" where, even if "the circumstances of each particular class

member vary," they "retain a common core of factual or legal issues with the rest of the class"). The Subclass easily satisfies Rule 23(a)(2).

### 3. Plaintiff's Claims are Typical of the Claims of the Subclass.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Typicality "aims at ensuring that plaintiffs are proper parties to proceed with the suit." *Gold*, 323 F.R.D. at 288. "The test is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Id.* (quoting *Gen. Tel. Co. of Sw*, 457 U.S. at 157-58 n.13).

Plaintiff Jones's records reflect that she meets all of the criteria for membership in the Subclass. *See* Ex. 14 at 1-4 (denial letters to Plaintiff); Ex. 13 at 1-4 (UBH case notes regarding Plaintiff's denial). Plaintiff's denial letters state that UBH denied her request for coverage for her residential treatment based solely on UBH's Guidelines, and no independent ground. *See* Ex. 14 at 1-4 (denial letters to Plaintiff); *see also* Ex. 9 at 1. UBH's clinical reasoning is devoid of any reference to any "Unchallenged Criterion." Ex. 14 at 1-4; *see also* Ex. 10 at 1. And Plaintiff remained in residential treatment for nearly a year despite UBH's denial of coverage, incurring substantial unreimbursed expense. Ex. 13 at 3; *see also* Ex. 8 at 1.

A preponderance of the evidence demonstrates that Plaintiff's request for reprocessing is based on a course of conduct by UBH that is not at all unique to Plaintiff. Plaintiff, like the other members of the proposed Subclass, will be entitled to a reprocessing remedy if the Court finds UBH liable for unreasonably denying her request for benefits. Plaintiff's claims are identical to those of the other Subclass members and clearly satisfy Rule 23(a)(3) typicality requirement.

### 4. Plaintiff and Her Counsel Fairly and Adequately Represent the Interests of the Proposed Class.

Finally, Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Determining whether the representative parties adequately represent a class involves two inquiries: (1) whether the named plaintiff and his or her counsel have any conflicts of interest with other class members and (2)

whether the named plaintiff and his or her counsel will act vigorously on behalf of the class." *Wit v. United Behavioral Health*, 317 F.R.D. 106, 120 (N.D. Cal. 2016) ("*Wit* Class Certification Order"); *see also Gold*, 323 F.R.D. at 289. Plaintiff and Class Counsel also meet these requirements.

Plaintiff's interests are fully aligned with those of the proposed Class, and there are no conflicts. Plaintiff has an interest in establishing her right to a reprocessing remedy and ensuring that remedy provides adequate relief to the members of the Subclass. *See* Compl. ¶ 16; *see also* Decl. of Sandra Tomlinson in Support of Plaintiff's Mot. for Class Certification, ECF No. 64 (Nov. 13, 2020) ¶¶ 8-9.

The Court has already appointed the proposed Subclass Counsel as Co-Lead Class Counsel, with no objections from UBH. Class Cert. Order at 16. For the same reasons Plaintiff previously offered, her counsel from Zuckerman Spaeder LLP and Psych-Appeal, Inc. are uniquely qualified to try this case. *See* Pl.'s Mot. for Class Cert., ECF No. 64 at 18-19; Ex. J to Pl.'s Mot. for Class Cert., ECF No. 65-10. Given the significant collective experience of proposed Subclass Counsel in class action litigation and ERISA cases—including the *Wit* Litigation—they will more than adequately protect the interests of the proposed Class. Rule 23(a)(4) is satisfied.

### C.    The Reprocessing Subclass Satisfies Rule 23(b)(3).

The proposed Subclass easily satisfies the requirements for Rule 23(b)(3) certification.

#### 1.    Predominance.

Common questions of law and fact pertaining to the Subclass's request for a reprocessing remedy clearly "predominate over any questions affecting only individual members" of the Subclass. Fed. R. Civ. P. 23(b)(3). As explained above, under *Wit III*, a reprocessing remedy is appropriate relief when "a plaintiff has shown that his or her claim was denied based on the wrong standard *and* that he or she might be entitled to benefits under the proper standard." 79 F.4th at 1084. This Court has already found that the first half of this test—whether the 2017 LOCGs are the "wrong standard" to use to implement the Plans' GASC requirements—is a

1    common question, not an individualized one. Class Cert. Order at 9. That question, moreover, is

2    centrally important to the Class members' denial of benefits claim, clearly overshadowing any

3    individualized questions that might arise. *See, e.g, Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d

4    1125, 1134 (9th Cir. 2016) ("[M]ore important questions apt to drive the resolution of the

5    litigation are given more weight in the predominance analysis over individualized questions

6    which are of considerably less significance to the claims of the class.").

7         As for the second half of the test, the common question is whether a person who incurred

8    unreimbursed expense for residential treatment, for which UBH denied coverage based solely on

9    the Guideline criteria Plaintiff challenges in this case "*might be* entitled to benefits under the

10   proper standard." The common answer to this question—for all Class members who meet the

11   Subclass criteria—will be the same.

12        The fact that Subclass members will have to prove that they are, in fact, class members

13   by establishing that they incurred unreimbursed expenses for residential treatment does not

14   defeat predominance. "When one or more of the central issues in the action are common to the

15   class and can be said to predominate, the action may be considered proper under Rule 23(b)(3)

16   even though other important matters will have to be tried separately, such as damages or some

17   affirmative defenses peculiar to some individual class members." *In re Coll. Athlete NIL Litig.*,

18   No. 20-cv-03919 CW, 2023 WL 8372787, at *8 (N.D. Cal. Nov. 3, 2023); *see also, e.g.*, *Brown*

19   *v. DirecTV, LLC*, 562 F. Supp. 3d 590, 602 (C.D. Cal. 2021) ("[U]nder this Circuit's binding

20   precedent, no matter how laborious or imperfect the process of identifying Class Members is, it

21   does not present a predominance issue.").

22                        2.    Superiority

23        As this Court previously held, "[b]ecause it is in the interest of judicial economy to

24   adjudicate the class members' challenge to the 2017 Guidelines, which is the main issue as to all

25   of the putative class members, in a class action format, the superiority requirement is satisfied."

26   Class Cert. Order at 15 (cleaned up) (citing *Wit* Class Cert. Order, 317 F.R.D. at 140). This is

27   equally true for the Subclass members' request for a reprocessing remedy; because the main

28

1  question on which the Subclass members' right to reprocessing turns is whether the 2017

2  Guidelines unreasonably implemented the GASC Requirement, it will be most efficient to

3  litigate the appropriateness of the reprocessing remedy in the context of this existing class action.

4  　　　　In addition, the record reflects that some of the Subclass members received only a day or

5  a few days of unreimbursed expenses for residential treatment. *See* Exs. 9, 12. As a result, the

6  amount of unpaid benefits at stake for some, or even most, Subclass members may be

7  "sufficiently small as to economically deter separate actions to recover individual losses," further

8  demonstrating the superiority of the class-action format for these claims. *Abadilla v. Precigen,*

9  *Inc.*, No. 20-CV-06936-BLF, 2023 WL 7305053, at *5 (N.D. Cal. Nov. 6, 2023); *see also*

10  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) ("The policy at the very core of the

11  class action mechanism is to overcome the problem that small recoveries do not provide the

12  incentive for any individual to bring a solo action prosecuting his or her rights.").

13  **IV.    CONCLUSION**

14  　　　　For the reasons set forth above, Plaintiff respectfully requests that the Court modify the

15  Class definition; certify the proposed Reprocessing Subclass; appoint Plaintiff as the Class

16  Representative for the Reprocessing Subclass; and appoint Zuckerman Spaeder LLP and Psych-

17  Appeal, Inc. as co-lead counsel for the Subclass.

18

19  Dated: January 17, 2025　　　　　　　　　　　　**ZUCKERMAN SPAEDER LLP**

20  　　　　　　　　　　　　　　　　　　　　　　　*/s/ Caroline E. Reynolds*

21  　　　　　　　　　　　　　　　　　　　　　　　Caroline E. Reynolds (*pro hac vice*)
     　　　　　　　　　　　　　　　　　　　　　　　D. Brian Hufford (*pro hac vice*)

22  　　　　　　　　　　　　　　　　　　　　　　　Jason S. Cowart (*pro hac vice*)

23  　　　　　　　　　　　　　　　　　　　　　　　**PSYCH-APPEAL, INC.**

24  　　　　　　　　　　　　　　　　　　　　　　　Meiram Bendat (Cal. Bar No. 198884)

25  　　　　　　　　　　　　　　　　　　　　　　　*Counsel for Plaintiff and the Plaintiff Class*

26

27

28