CROWELL & MORING LLP
JENNIFER S. ROMANO (SBN 195953)
jromano@crowell.com
ANDREW HOLMER (SBN 268864)
aholmer@crowell.com
515 South Flower Street, 40th Floor
Los Angeles, California 90071
Telephone: (213) 622-4750
Facsimile: (213) 622-2690

CROWELL & MORING LLP
NICHOLAS DOWD (admitted *pro hac vice*)
ndowd@crowell.com
1601 Wewatta Street, Suite 815
Denver, CO 80202
Telephone: (303) 524-8663
Facsimile: (303) 524-8650

Attorneys for Defendant
UNITED BEHAVIORAL HEALTH

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| MARY JONES, through her agent, on her own behalf and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH,<br><br>                    Defendant. | Case No. 3:19-cv-6999 RS<br><br>**UNITED BEHAVIORAL HEALTH'S OPPOSITION TO PLAINTIFF'S MOTION TO MODIFY CLASS CERTIFICATION ORDER**<br><br>Hearing Date:  April 10, 2025<br>Hearing Time: 1:30 p.m.<br><br>Hon. Richard Seeborg |

**REDACTED VERSION OF DOCUMENT
SOUGHT TO BE FILED UNDER SEAL**

Crowell
& Moring LLP
Attorneys At Law

# TABLE OF CONTENTS

**Page(s)**

**Cases**

INTRODUCTION ........................................................................................................ 1

BACKGROUND ......................................................................................................... 2

    A.    Plaintiff Seeks Reprocessing Based On The Allegation That Class Members Were Improperly Denied Benefits Using The 2017 LOCGs. .................................................................................................. 2

    B.    The Applicable Health Benefit Plans Contain Additional Coverage Terms Beyond Adherence To Generally Accepted Standards Of Care. ........................................................................................................ 3

    C.    Plaintiff Obtained Class Certification For Her Facial Challenge To The LOCGs By Disclaiming Any Need To Offer Class-Wide Proof Regarding Individual Class Member Benefit Decisions. .................... 5

    D.    In *Wit*, The Ninth Circuit Rejected Plaintiff's Facial Challenge And Theory Of Liability. ...................................................................... 5

    E.    Plaintiff Makes Another Futile Attempt To Salvage Her Class Claims By Proposing A Reprocessing Subclass. .................................. 8

ARGUMENT .............................................................................................................. 9

    I.    Plaintiff's Proposed Modifications Do Not Remedy The Class's Fundamental Flaws. ................................................................................. 9

    II.    Plaintiff Does Not Satisfy Her Burden Under Rule 23(a) To Establish Commonality, Typicality or Adequacy. ................................................... 10

        A.    Plaintiff Cannot Prove The Subclass Members Are Entitled To Reprocessing Using Common Evidence. .......................................... 10

            1.    Plaintiff Cannot Prove With Class-Wide Evidence That Every Class Member's Claim Was Denied Based Solely On An Errant Provision. ............................................................. 11

            2.    Plaintiff Cannot Prove With Class-Wide Evidence That Every Class Member "Might Have Been Entitled To Benefits" Under Plaintiff's Preferred Guidelines. ...................... 17

        B.    Plaintiff's Claims Are Not Typical Of The Reprocessing Subclass's Claims. ................................................................................. 19

        C.    Plaintiff Fails To Demonstrate She Is An Adequate Representative. ....... 20

    III.    Plaintiff's Proposed Class Does Not Satisfy The Requirements Of Rule 23(b)(3). ............................................................................................... 21

        A.    Plaintiff's Proposed Class Raises Numerous Individualized Questions, Which Predominate Over Any Purportedly Common Ones. ...................................................................................... 21

        B.    Class Treatment Is Not Superior And Plaintiff Offers No Plan For Managing The Highly-Individualized Questions Affecting Each Class Member's Right To Reprocessing. ............................................ 24

CONCLUSION .......................................................................................................... 25

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-i-

UBH'S OPPOSITION TO MOTION TO MODIFY
CLASS CERTIFICATION ORDER;
CASE NO. 3:19-CV-6999-RS

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
 568 U.S. 455 (2013) ................................................................................ 21

5

6

*Bain v. Oxford Health Insurance Inc.*,
 2020 WL 808236 (N.D. Cal. Feb. 14, 2020) ................................................ *passim*

7

*Briseno v. ConAgra Foods, Inc.*,
 844 F.3d 1121 (9th Cir. 2017) ................................................................ 24

8

9

*Castillo v. Bank of Am., NA*,
 980 F.3d 723 (9th Cir. 2020) ............................................................... 21, 22

10

*Cinelli v. Sec. Pac. Corp.*,
 61 F.3d 1437 (9th Cir. 1995) ................................................................ 24

11

12

*Comcast Corp. v. Behrend*,
 569 U.S. 27 (2013) ........................................................................... 21

13

14

*Condry v. UnitedHealth Grp., Inc.*,
 2021 WL 4225536 (9th Cir. Sept. 16, 2021) ......................................... 15, 20

15

*Ellis v. J.P. Morgan Chase & Co.*,
 2015 WL 9178076 (N.D. Cal. Dec. 17, 2015) ......................................... 17

16

17

*Gardner v. Health Net, Inc.*,
 2010 WL 11579028 (C.D. Cal. Sept. 13, 2010) ...................................... 20

18

19

*Gen. Tel. Co. of Sw. v. Falcon*,
 457 U.S. 147 (1982) ....................................................................... 15, 20

20

*Greany v. W. Farm Bureau Life Ins. Co.*,
 973 F.2d 812 (9th Cir. 1992) ................................................................ 24

21

22

*Heimeshoff v. Hartford Life & Acc. Ins. Co.*,
 571 U.S. 99 (2013) ........................................................................... 24

23

24

*Judge v. Metro. Life Ins. Co.*,
 710 F.3d 651 (6th Cir. 2013) ................................................................ 18

25

*Koblentz v. UPS Flexible Emp. Ben. Plan*,
 No. 12-CV-0107-LAB, 2013 WL 4525432 (S.D. Cal. Aug. 23, 2013) ...... 22

26

27

*Lyon v. U.S. Immigration and Customs Enf't*,
 308 F.R.D. 203 (N.D. Cal. 2015) .......................................................... 9

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-ii-

UBH'S OPPOSITION TO MOTION TO MODIFY
CLASS CERTIFICATION ORDER;
CASE NO. 3:19-CV-6999-RS

*McCartha v. Nat'l City Corp.*,
   419 F.3d 437 (6th Cir. 2005) ................................................................. 18

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
   31 F.4th 651 (9th Cir. 2022) .............................................. 10, 17, 18, 23

*Pecere v. Empire Blue Cross and Blue Shield*,
   194 F.R.D. 66 (E.D.N.Y. 2000) ........................................................... 22

*Pierce v. Cnty. of Orange*,
   526 F.3d 1190 (9th Cir. 2008) .............................................................. 24

*Robbins v. Phillips 66 Co.*,
   343 F.R.D. 126 (N.D. Cal. 2022) (Seeborg, J.) .................................... 16

*Rowden v. Pac. Parking Sys., Inc.*,
   282 F.R.D. 581 (C.D. Cal. 2012), *aff'd in part sub nom. Martin v. Pac.
   Parking Sys. Inc.*, 583 F. App'x 803 (9th Cir. 2014) ........................... 25

*S. Coast Specialty Surgery Ctr., Inc. v. Blue Cross of California*,
   90 F.4th 953 (9th Cir. 2024) .......................................................... 22, 23

*Torres v. Mercer Canyons Inc.*,
   835 F.3d 1125 (9th Cir. 2016) .............................................................. 19

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) .............................................................................. 23

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ....................................................................*passim*

*Wit v. United Behav. Health*,
   2019 WL 1033730 (N.D. Cal. Mar. 5, 2019) .................................. 10, 13

*Wit v. United Behav. Health*,
   2023 WL 8717488 (N.D. Cal. Dec. 18, 2023) ......................................... 7

*Wit v. United Behav. Health*,
   79 F.4th 1068 (9th Cir. 2023) .....................................................*passim*

*Zinser v. Accufix Rsch. Inst., Inc.*,
   253 F.3d 1180 (9th Cir. 2001) .............................................................. 25

**Statutes**

Rules Enabling Act, 28 U.S.C. § 2702 ...................................... 7, 10, 17, 18

**Other Authorities**

Fed. R. Civ. P. 23 .......................................................................*passim*

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-iii-

UBH'S OPPOSITION TO MOTION TO MODIFY
CLASS CERTIFICATION ORDER;
CASE NO. 3:19-CV-6999-RS

**INTRODUCTION**

Plaintiff's Motion to Modify Class Certification Order, ECF No. 136 (the "Motion") is Plaintiff's third attempt at constructing a class to seek substantive, individual reprocessing relief under the Employee Retirement Income Security Act of 1974 ("ERISA") based on a challenge to certain provisions of a plan administrator's benefit guidelines. This attempt, like the previous two, does not satisfy Rule 23. Plaintiff still does not demonstrate a path to ERISA reprocessing relief against United Behavioral Health ("UBH") using common evidence.

Plaintiff first pursued class certification on the now-rejected theory that her facial challenge to UBH's 2017 Level of Care Guidelines ("LOCGs") required no examination of the putative class's individual claim denials, so long as each class member's denial decision referenced the LOCGs in some way. ECF No. 63 at 21, Motion for Class Certification ("Class Cert. Mot."). The Court granted Plaintiff's motion to certify, guided largely by the district court's decision in *Wit v. United Behavioral Health* ("*Wit*") where the plaintiffs sought and obtained class certification on a substantially identical theory. *See* ECF No. 76, Order Granting Motion for Class Certification ("Class Cert. Order"). However, after the Court certified the Class in this case, the Ninth Circuit unambiguously rejected the foundational theory on which the *Wit* classes, and the Class here, were constructed and certified.

In *Wit v. United Behav. Health*, 79 F.4th 1068 (9th Cir. 2023) ("*Wit III*"), the Ninth Circuit rejected the plaintiffs' ERISA denial of benefits claim seeking reprocessing based solely on the plaintiffs' mere showing that some provisions of UBH's LOCGs were overly restrictive and that the LOCGS were used (at least in part) for the benefit decision. Rather, to prevail on a class-wide claim for reprocessing under ERISA, the plaintiff must prove that each class member was denied benefits "based on the wrong standard *and* that he or she might be entitled to benefits under the proper standard." *Id.* at 1084. The Ninth Circuit emphasized that it "[has] *never* held that a plaintiff is entitled to reprocessing without a showing that application of the wrong standard could have prejudiced the claimant." *Id.* (emphasis added). The Ninth Circuit thus concluded that it was reversible error to certify an ERISA class of individuals seeking "to have their claims reprocessed regardless of the individual circumstances at issue in [the class's] claims." *Id.*

1   Recognizing that the Ninth Circuit's decision in *Wit* destroyed her class certification

2   theory, in December 2023 Plaintiff filed a motion to "modify" the class certification order. ECF

3   No. 100. Plaintiff's second motion misconstrued *Wit III* and revealed the individualized issues

4   inherent in pursuing class-wide reprocessing relief. Thus, Plaintiff abandoned that motion after

5   the Ninth Circuit issued a fourth opinion in *Wit*, 2024 WL 4036574 (9th Cir. Sept. 4, 2024) ("*Wit*

6   *IV*"). Now, Plaintiff seeks to modify the class certification order again, this time seeking to certify

7   a "reprocessing subclass" based solely on her counsel's subjective conclusion that only errant

8   portions of the LOCGs impacted the benefit decisions for each of the class members.

9   This Motion to modify fares no better. Plaintiff still fails to grapple with the

10   individualized bases for each of the benefit decisions for the class members. Plaintiff does not

11   explain how each benefit decision was based on an errant provision of the LOCGs (or how she

12   can prove this with common evidence), and she identifies no way for her to prove, using common

13   evidence, that each of the class members might be entitled to benefits if different, non-errant

14   provisions are used. Accordingly, Plaintiff's Motion should be denied for the following reasons:

15   First, Plaintiff is unable to satisfy Rule 23(a)'s requirements of commonality, typicality

16   and adequacy. She cannot prove her claim for reprocessing using common evidence because the

17   Court would need to undertake a highly-individualized and fact-intensive analysis of each class

18   member's benefit plan and benefit decision.

19   Second, Plaintiff's proposed reprocessing subclass does not satisfy Rule 23(b) because of

20   the same individualized analysis needed to prove liability. Plaintiff fails to show that common

21   issues of law and fact predominate, or that litigating each class member's claim for denial of

22   benefits and the right to reprocessing in one class action is superior to individual litigation.

**BACKGROUND**

**A.    Plaintiff Seeks Reprocessing Based On The Allegation That Class Members Were Improperly Denied Benefits Using The 2017 LOCGs.**

UBH administers thousands of behavioral health benefit plans. The health plans contain different provisions specifying which services are covered and which are not. ECF No. 70-22, ¶ 4. Plaintiff is a former beneficiary of a health benefit plan ("Plan") for which UBH administered

CROWELL & MORING LLP
ATTORNEYS AT LAW

1    behavioral health benefits.[1] *See* ECF No. 31, Amended Complaint ("Am. Compl.") ¶¶ 6–8.

2         Plaintiff bases her case on just one coverage term in her Plan – that services must be

3    consistent with generally accepted standards of care to be covered. *Id.* at ¶¶ 16–17. She contends

4    that UBH developed a set of internal guidelines called the 2017 LOCGs to determine whether a

5    plan member's request for benefits was consistent with generally accepted standards of care, but

6    that some provisions in those guidelines were overly restrictive. *Id.* at ¶¶ 26–36. Plaintiff asserts

7    that UBH also created separate guidelines called Coverage Determination Guidelines ("CDGs")

8    that were used instead of LOCGs for certain health plans, and that the CDGs referenced the

9    LOCGs somewhere in their text. Class Cert. Mot. at 1–2, 11–12.

10         Plaintiff alleges that she was denied coverage for residential mental health services and

11    claims that decision was flawed because it was based on overly restrictive provisions in the 2017

12    LOCGs that were applicable to mental health conditions. Am. Compl. at ¶¶ 37–48. Plaintiff

13    brings class claims under ERISA on behalf of individuals whose claims were allegedly denied

14    based on the 2017 mental health LOCGs, 2017 substance use LOCGs, and dozens of CDGs.

15         Plaintiff seeks a declaration that the 2017 LOCGs are inconsistent with generally accepted

16    standards of care, an injunction barring UBH from using the 2017 LOCGs, and an order directing

17    UBH to "reprocess" her and the class members' denied coverage requests under "new guidelines

18    that are consistent with generally accepted standards of medical practice." *Id.* at ¶¶ D, F.

19         Plaintiff admits that her claims arise from the same essential facts as the *Wit* litigation. *See*

20    *id.* at ¶ 2. *Wit* involves benefit claims using versions of the LOCGs between 2011 and May 2017,

21    whereas this case involves benefit claims using the 2017 LOCGs between June 2017 and

22    February 2018. UBH discontinued use of the 2017 LOCGs in February 2018. *See id.* at ¶¶ 2–5.

23    **B.**     **The Applicable Health Benefit Plans Contain Additional Coverage Terms**
             **Beyond Adherence To Generally Accepted Standards Of Care.**

24

25         Each class member's benefits are governed by a health plan sponsored by their employer.

26    The plan documents set forth the terms of coverage for each plan, including the benefits,

27    definitions of covered services and exclusions, and other terms. ECF No. 70-22, ¶ 7. These terms

28    _____

[1] Plaintiff is no longer a member or beneficiary of any employee benefit plan administered by
UBH. *See* February 20, 2025 Declaration of Han Nguyen, ¶¶ 3–10 ("02/20/25 Nguyen Decl.").

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-3-

UBH'S OPPOSITION TO MOTION TO MODIFY
CLASS CERTIFICATION ORDER;
CASE NO. 3:19-CV-6999-RS

1    vary considerably based on the decisions of the plan sponsor. *Id.*; *see also* ECF Nos. 59-9–62-13;

2    December 18, 2020 Nguyen Decl., Exhibits 5–7, ECF Nos. 69-8–13.

3          For benefits to be payable, the plans require more than just adherence to "generally

4    accepted standards of care." For example, Plaintiff's Plan covers only "Medically Necessary"

5    services, which must be *all* of the following: ████████████████████████████████

6    ████████████████████████████████████████████████████████████████████████

7    ████████████████████████████████████████████████████████████████

8    ████████████████████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████████████████

11   ████████████████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████████████

13   ████████████████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████ ECF No. 59-9 at

15   UBHJONES0000308.

16         Other class members' health plans include different terms. Some provide that medically

17   necessary services must be ████████████████████████████████████████████████

18   ████████████████████████." *See, e.g.*, ECF No. 59-12 at UBHJONES0001398 (Member

19   10111). Some plans *specifically exclude coverage* for treatment that is ████████████████

20   ████████████████████████" such as the 2017 LOGS. *See* ECF No. 60-12 at

21   UBHJONES0022611 (Member 11466); *see also* ECF No. 61-10 at UBHJONES0006601

22   (Member 12696). Most plans exclude coverage for "custodial care," but define the term

23   differently. *Compare* ECF No. 60-14 UBHJONES0024458 (Member 11574) *with* ECF No. 61-7

24   at UBHJONES0028536 (Member 12241). And, all plans include a host of other exclusions, such

25   as for experimental or unproven services and services where the provider is not licensed to

26   perform the service. Yet, Plaintiff, like the plaintiffs in *Wit*, focuses on only one isolated

27   provision of the plans: the requirement that services be consistent with generally accepted

28   standards of care.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-4-

UBH'S OPPOSITION TO MOTION TO MODIFY
CLASS CERTIFICATION ORDER;
CASE NO. 3:19-CV-6999-RS

1

**C.    Plaintiff Obtained Class Certification For Her Facial Challenge To The LOCGs By Disclaiming Any Need To Offer Class-Wide Proof Regarding Individual Class Member Benefit Decisions.**

2

3        Four years ago, Plaintiff sought and obtained class certification based on her assertion that

4  her chosen remedy – claim reprocessing – permitted her to bring a facial challenge to the 2017

5  LOCGs and relieved her of any obligation to show that flaws in the 2017 LOCGs had any impact

6  on the benefit decisions for absent class members. *See* Class Cert. Mot. at 4. Plaintiff relied on the

7  district court's class certification order in *Wit*, emphasizing that her claims in this case "concern

8  the same conduct at issue in *Wit*," and that her evidence in support of class certification was "the

9  same common evidence offered in *Wit*, as well as the *Wit* findings themselves." *Id*. at 7.

10        Over UBH's protests that resolving Plaintiff's class-wide claims would require highly-

11  individualized inquiries into whether the alleged flaws in the guidelines caused any harm to each

12  class member, the Court certified the Class. *See* Class Cert. Order. The Court reasoned that

13  because, like in *Wit*, Plaintiff sought only reprocessing and not payment of benefits, she need only

14  show that "but for the application of the 2017 [LOCGs], coverage requests would have been

15  processed in an ERISA-compliant manner." *See id*. at 8. The Court held that Plaintiff did not need

16  to show that each member of the class could have been prejudiced by a challenged guideline

17  provision. *Id.* The Court noted that Plaintiff's motion was based on arguments "already credited

18  in *Wit*," *id.* at 2, and relied extensively on *Wit* in its class certification order, *see, e.g.*, *id.* at 8.

19        Soon after the Class was certified, UBH moved for a stay pending resolution of UBH's

20  post-trial appeal in *Wit*. *See* ECF No. 87, Order Granting Motion to Stay. The Court granted

21  UBH's motion, noting that the Ninth Circuit's decision in *Wit* could "furnish UBH a fresh basis

22  upon which to seek decertification" or "simplify[]" the issues in this case. *Id.* at 2–3.

23

**D.    In *Wit*, The Ninth Circuit Rejected Plaintiff's Facial Challenge And Theory Of Liability.**

24        The Ninth Circuit did indeed furnish a fresh basis for decertification. In its final published

25  opinion (*Wit III*), the Ninth Circuit reversed the district court's decision in *Wit* granting class

26  certification on plaintiffs' denial of benefits claims *in full,* and ordered that judgment be entered

27  to UBH as to the named plaintiffs' denial of benefits claims. *Wit III*, 79 F.4th at 1083–86, 1089.

28

CROWELL & MORING LLP ATTORNEYS AT LAW

UBH'S OPPOSITION TO MOTION TO MODIFY
CLASS CERTIFICATION ORDER;
CASE NO. 3:19-CV-6999-RS

The Ninth Circuit rejected the central premise on which Plaintiff in this case sought and obtained class certification, and held it was error for the "district court [to] determine[] that remand [for reprocessing] was appropriate anytime UBH referenced any portion of the Guidelines in denying the claims." *Id.* at 1086. As Plaintiff concedes, under *Wit III*, a plaintiff seeking reprocessing must prove two elements. First, she must prove that her claim for benefits "was denied based on the wrong standard . . . ." *Id.* at 1084. Second, she must *also* show that "she might be entitled to benefits under the proper standard." *Id.* Reprocessing is not available without a showing that the use of the 2017 LOCGs "could have prejudiced" a class member's right to benefits *in comparison to the "proper standard"*—i.e., the alternative guidelines that Plaintiff urges here. *Id.*; *see also id.* at 1085 (reprocessing is not appropriate if the administrator "would undoubtedly reach the same conclusion" on remand using the proper standard) (quoting *Judge v. Metro. Life Ins. Co.*, 710 F.3d 651, 659–60 (6th Cir. 2013)); *id.* at 1084 (reprocessing unavailable if it would be a "useless formality") (citing *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1095–96 (9th Cir. 1985)).

The Ninth Circuit illustrated this point with two examples of the *Wit* plaintiffs' failure of common proof. First, the Court explained that (like in this case), "there are also many provisions of the [LOCGs] that Plaintiffs did not challenge and that the district court did not find to be overly restrictive." *Id.* A class member who was denied coverage based on an unchallenged provision has not been prejudiced. *Id.* The Court emphasized that this error was even more pronounced with respect to the CDGs, which merely incorporated the LOCGs. *Id.* ("There is no indication that a claimant whose claim was denied under one of the many unchallenged provisions in the [CDGs] failed to receive a full and fair review of his or her claim.").

Second, the Ninth Circuit held that the district court erred in certifying classes comprising plan members whose claims were denied "in part" due to the challenged provisions in the LOCGs. *Id.* at 1085–86. Prejudice requires a showing that a denial was "based *only* on the challenged portion of the Guidelines," *id.* at 1086 (emphasis added), so a class member whose claim was denied based on a challenged guideline provision *and* a "wholly independent" reason is not entitled to reprocessing. *Id.* at 1085. Thus, the Ninth Circuit held that the plaintiffs' reliance on "a UBH database that could identify denials that merely referenced the Guidelines" was

1    insufficient to meet the plaintiffs' burden under Rule 23 because the evidence showed that at least

2    "some class members' claims" were denied for multiple reasons. *Id*. at 1085.

3        Just as Plaintiff initially did in this case, the plaintiffs in *Wit* insisted on remand from the

4    Ninth Circuit that *Wit III* did not resolve their denial of benefits claims and that the district court

5    was free to reopen class certification proceedings. *See Wit v. United Behav. Health*, 2023 WL

6    8717488, at *11 (N.D. Cal. Dec. 18, 2023). While the district court in *Wit* agreed with plaintiffs,

7    *see id.* at *25–27, the Ninth Circuit once again rejected the *Wit* plaintiffs' theory of the case. In

8    the Ninth Circuit's fourth opinion, *Wit IV*, the Court granted UBH's mandamus petition and

9    confirmed that the *Wit* plaintiffs, and thus Plaintiff here,[2] had fundamentally misread its decision

10   in *Wit III*. *See Wit IV*, 2024 WL 4036574, at *2. The Ninth Circuit once again confirmed that the

11   *Wit* plaintiffs' facial challenge did not support class certification, and reiterated that *Wit III*

12   "established that the errors in the class certification order related to the denial of benefits claim

13   also infected the merits and remedy determinations related to that same claim." *Wit IV*, 2024 WL

14   4036574, at *2. In holding otherwise, "the district court [in *Wit*] lost the letter" of *Wit III*, *id*., and

15   erred in failing to enter judgment for UBH on the denial of benefits claim and in permitting

16   plaintiffs to seek recertification of an ostensibly "narrower" denial of benefits class. *Id.*

17       In short, *Wit III* holds (among other things) that, to obtain class-wide reprocessing, a

18   plaintiff must show with common evidence that *all* class members' claims were "denied based

19   *only on* the challenged provisions of the Guidelines." *Wit III*, 79 F.4th at 1086 (emphasis added);

20   *see also Wit IV*, 2024 WL 4036574, at *1 (same)*. To hold otherwise would apply "Rule 23 . . . in

21   a way that enlarged or modified Plaintiffs' substantive rights in violation of the Rules Enabling

22   Act." *Wit III*, 79 F.4th at 1086 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011)).

23   Based on the "same common evidence" before the Court in this case, Class Cert Mot. at 7, the *Wit*

24   plaintiffs not only failed to make that showing, they did not even prove that "such a common

---

[2] Plaintiff filed her first Motion to Modify before the Ninth Circuit issued its opinion in *Wit IV*, in which she proposed redefining the Class to include a "reprocessing subclass." ECF No. 100. Plaintiff misconstrued *Wit III* in multiple, fundamental ways. For instance, Plaintiff argued that *Wit III*: (1) did not direct the district court to enter judgment in favor of either party" on the denial of benefits claim; and (2) did not "express a view about whether a narrower denial of benefits subclass should be certified." *See* ECF No. 100 at 7. Plaintiff has since jettisoned these arguments since they were rejected by the Ninth Circuit in *Wit IV*. *See Wit IV*, 2024 WL 4036574, at *1–2.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

UBH'S OPPOSITION TO MOTION TO MODIFY
CLASS CERTIFICATION ORDER;
CASE NO. 3:19-CV-6999-RS

showing is possible." *Wit III*, 79 F.4th at 1086; *see also Wit IV*, 2024 WL 4036574, at *1 (same).

### E.    Plaintiff Makes Another Futile Attempt to Salvage Her Class Claims By Proposing A Reprocessing Subclass.

Plaintiff's current Motion represents her third attempt at crafting a viable ERISA class that can satisfy the "rigorous analysis" required by Rule 23. *See Dukes*, 564 U.S. at 351 (cleaned up). With *Wit III* making clear that reprocessing cannot be ordered based on a purely facial challenge to the LOCGs, "regardless of the individual circumstances at issue in [class members'] claims," *Wit III*, 79 F.4th at 1084, Plaintiff tries to construct yet another reprocessing subclass. Plaintiff maintains that she can satisfy all of the requirements to certify a reprocessing subclass by having her counsel declare (contrary to the evidence) that each class members' benefit decisions was based solely on challenged provisions of the LOCGs. *See* Mot. at 13. First, Plaintiff attempts to define a reprocessing subclass by carving out the two examples identified in *Wit* of members who cannot be part of the class: (1) those whose denials were based, at least in part, on a ground independent of the 2017 LOCGs; and (2) those whose denials were based "even in part" upon "unchallenged" criteria. *See* Mot. at 10.[3] Specifically, Plaintiff defines the proposed subclass as:

> Any member of the Class who incurred expenses for residential treatment for which benefits were not paid, except that the Reprocessing Subclass shall not include Class members whose written notification of denial, as reflected in UBH's records, (a) identifies a reason for denying the request for coverage other than the Class member's failure to satisfy UBH's 2017 LOCGs or a Coverage Determination Guideline that incorporates the 2017 LOCGs, and/or (b) specifies that the member's failure to satisfy the applicable Guideline was based, even in part, on a portion of the applicable Guideline that was unchallenged in this action.

Mot. at 14. Then, based solely on counsel's subjective pronouncements, Plaintiff purports to identify this putative subclass through a multi-step, line-by-line review of individual decision letters. *See id.* at 17–20. Plaintiff makes no attempt to show how she can prove – with class-wide evidence – that each of the absent class members could have been prejudiced by the errant guidelines or might be entitled to benefits if Plaintiff's preferred guidelines are used on remand.

---

[3] Plaintiff also excludes individuals who never received the residential services for which coverage was requested, and those who did not incur unreimbursed expenses, because Plaintiff finally concedes that such individuals are not entitled to reprocessing relief. *See* Mot. at 14–17.

**ARGUMENT**

Under *Wit*, Plaintiff can no longer use her facial challenge to the LOCGs to wave away the individual circumstances of the class members' claim denials. She must prove, for every single class member, that an "errant portion of the Guidelines" was the *sole basis* for each class member's benefit decision, and each member of the proposed subclass "might be entitled to benefits" if Plaintiffs' preferred guidelines are used. *Wit III*, 79 F.4th at 1084, 1086. Plaintiff cannot meet this class-wide burden.

Given the individualized issues she must now confront, Plaintiff does not (and cannot) establish: (1) that she satisfies the commonality, typicality and adequacy requirements under Rule 23(a)(2)-(4); or (2) that her new class satisfies the requirements of Rule 23(b)(3). For each of these reasons, Plaintiff's Motion should be denied. *Lyon v. U.S. Immigration and Customs Enf't*, 308 F.R.D. 203, 211 (N.D. Cal. 2015) (a "modified class" must independently satisfy Rule 23).

**I.    Plaintiff's Proposed Modifications Do Not Remedy The Class's Fundamental Flaws.**

As a threshold matter, *Wit* forecloses the quick fix to the Class that Plaintiff attempts here. Plaintiff still seeks reprocessing based on a mere showing that some portions of the guidelines are more restrictive than generally accepted standards of care, and that the LOCGs or CDGs are referenced in the benefit decision letters. Just like in *Wit*, Plaintiff ignores the additional, and varied language in the plans applicable to each class member, and she ignores that UBH made its decisions based on highly individualized clinical conclusions, often not tied to the guideline provisions challenged in this case. No narrower class can be certified because there is no common evidence to prove "in one stroke," *Dukes*, 564 U.S. at 350, that an "errant portion" of the LOCGs was the *sole reason* for *every class member's* benefit decision, let alone that each class member "might be entitled to benefits under" Plaintiff's preferred guidelines. *Wit III*, 79 F.4th at 1084, 1086. Such individualized determinations can only be made by examining each individual benefit decision. *See* Holmer Decl., Ex. 3; *see also* ECF Nos. 111-3 at 15–19, 111-4.

The Ninth Circuit's refusal to entertain a narrower reprocessing class in *Wit* proves this point. The *Wit* plaintiffs would fall squarely within Plaintiff's putative reprocessing subclass. The *Wit* plaintiffs' benefit decision letters included only the LOCGs as the basis for the denials, just

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-9-

UBH'S OPPOSITION TO MOTION TO MODIFY
CLASS CERTIFICATION ORDER;
CASE NO. 3:19-CV-6999-RS

1   like the reprocessing subclass plaintiff describes here. *See* Mot. at 17; *Wit v. United Behav.*

2   *Health*, 2019 WL 1033730, at *2 (N.D. Cal. Mar. 5, 2019) (*Wit* findings of fact finding that UBH

3   denied coverage for *Wit* plaintiff Pfeiffer based on the LOCGs). Yet, the Ninth Circuit held, even

4   for named plaintiffs whose letters cited *only* the LOCGs, that was insufficient to prove liability.

5   *See id.*, at *1–4 (*Wit* trial record included named plaintiffs' decision letters). The *Wit* plaintiffs did

6   not prove their claim for benefits or a right to reprocessing because they failed to prove that (1)

7   the errant provisions were the sole basis their benefit decisions, and (2) they might be entitled to

8   benefits if different, non-errant guidelines were used. *Wit III*, 79 F.4th at 1084–86. The court held

9   that "on this record, Plaintiffs have fallen short of demonstrating that all class members were

10  denied a full and fair review of their claims *or that such a common showing is possible*." *Wit III*,

11  79 F.4th at 1086 (emphasis added); *see also Wit IV*, 2024 WL 4036574, at *1 (same).

12       The same evidence the Ninth Circuit held insufficient in *Wit* to support even an *individual*

13  claim cannot support a common showing for an entire class, no matter how narrowly Plaintiff

14  seeks to redefine it. *See Wit III*, 79 F.4th at 1084 (the Rules Enabling Act "forbids using the class

15  action procedure to expand or modify substantive rights"). Not only does Plaintiff fail to

16  demonstrate that she can prove that all class members are entitled to reprocessing, there is no

17  basis to conclude that such a showing is possible.

18  **II.    Plaintiff Does Not Satisfy Her Burden Under Rule 23(a) To Establish Commonality,**
19  **Typicality or Adequacy.**

20       **A.    Plaintiff Cannot Prove The Subclass Members Are Entitled To Reprocessing**
        **Using Common Evidence.**

21       As the party seeking class certification, Plaintiff "must prove the facts necessary to carry

22  the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the

23  evidence." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665

24  (9th Cir. 2022). To satisfy Rule 23(a)'s commonality requirement, a plaintiff must present a

25  common contention that is "of such a nature that it is capable of classwide resolution" and "will

26  resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564

27  U.S. at 350. "What matters to class certification . . . is not the raising of common 'questions'—

28  even in droves—but rather, the capacity of a class-wide proceeding to generate common answers

1   apt to drive the resolution of the litigation." *Id*. (citation omitted).

2        Plaintiff concedes that the "common question" at the heart of her reprocessing subclass is

3   whether the members are entitled to reprocessing, assuming "UBH's use of its Guidelines was an

4   abuse of discretion." Mot. at 21. Thus, under *Dukes*, to prevail on this Motion, Plaintiff must

5   demonstrate that she can prove with class-wide evidence that each class member is entitled to

6   reprocessing. She has not met that burden.

7        **1.      Plaintiff Cannot Prove With Class-Wide Evidence That Every Class
                    Member's Claim Was Denied Based Solely On An Errant Provision.**
8

9        Plaintiff tries to gloss over her evidentiary burden by proclaiming that "the Subclass

10  definition is expressly tailored to include only people who meet the Ninth Circuit's reprocessing

11  test." Mot. at 21. Plaintiff's argument is, essentially, that as long as her class is *defined* to include

12  only those people who are entitled to reprocessing, she does not have to *prove* that any of them

13  are actually entitled to reprocessing. But that does not relieve her burden. She still must prove that

14  every class member's benefit decision was based solely on errant guidelines. She fails to do that.

15       Plaintiff spends numerous pages describing her counsel's convoluted methodology for

16  identifying putative subclass members, and presents charts and other exhibits in an effort to

17  demonstrate how counsel tried to apply that methodology to just a few dozen *out of the thousands*

18  of benefit decisions in question. *See* Mot. at 3–6, 17–20. Plaintiff's process suffers from two

19  primary flaws: (1) she announces that a majority of the guideline provisions are irrelevant, and

20  then ignores them and plan terms in concluding that there are few unchallenged guidelines or

21  independent bases to deny a benefit claim; and (2) her "evidence" that each benefit decision was

22  based solely on challenged guideline provisions is her own counsel's subjective judgment.

23  Contrary to Plaintiff's counsel's conclusions, each benefit decision was based on highly

24  individualized circumstances for each member, and not the mandate of allegedly errant provisions

25  of LOCGs. At a minimum, this would need to be assessed and determined for each class member.

26       **a.      Plaintiff's Proposed Method For Identifying "Unchallenged"
                   Provisions And "Independent" Grounds For Benefit Decisions
                   Ignores Large Portions Of The Guidelines And The Plans.**
27

28  Even Plaintiff concedes that members whose claims were denied (even in part) for reasons

UBH'S OPPOSITION TO MOTION TO MODIFY
CLASS CERTIFICATION ORDER;
CASE NO. 3:19-CV-6999-RS

1   not challenged in this case are not entitled to reprocessing. Thus, Plaintiff purports to follow a

2   multi-step process to identify which provisions of the 2017 LOCGs are "unchallenged" and

3   identify any "independent" grounds for the benefit decisions. *See* Mot. at 15–17. But Plaintiff

4   ignores entire pages of the guidelines based on her own conclusion that they need not be

5   considered, and she ignores all of the independent grounds that can support a benefit decision.

6          First, Plaintiff removed entire pages of the LOCGs based on her unilateral conclusion that

7   they were not "criteria" for benefit decisions. *See* ECF No. 136-18 ("Reynolds Decl.") ¶ 4 and Ex.

8   2. For example, Plaintiff proclaims that the LOCGs' Clinical Best Practices for All Levels of Care

9   are not criteria for benefit decisions. Mot. at 6 n.7. But she *explicitly does not challenge* the

10  "Common Admission Criteri[on]" that makes conformance "with Optum's best practice

11  guidelines" an explicit requirement for coverage. Reynolds Decl., Ex. 1 at UBHWIT0622890–92.

12  Plaintiff similarly ignores the CDGs' extensive guideline provisions which list the LOCG criteria

13  as only one source of guidance among several others. *See, e.g.*, 02/20/25 Nguyen Decl., Ex. 1 at

14  pp. 7–11 (Substance-Related and Addictive Disorders CDG). Plaintiff does not even submit

15  copies of the CDGs that served as the basis for some of the class members' coverage decisions,

16  and she fails to acknowledge that *none* of the independent, non-LOCG criteria in those CDGs

17  were challenged in any way in *Wit*. *Wit III*, 79 F.4th at 1085. (explaining that the CDGs "included

18  many unchallenged provisions" and "some [CDGs] incorporated the [LOCGs] only 'as support in

19  a specific paragraph or paragraphs'"). Just like in *Wit*, Plaintiff pretends such language in the

20  CDGs does not exist. And just like in *Wit*, this Court cannot do so. *Id*. ("The flaw in class

21  certification is even more apparent with regard to the [CDGs] . . . . [T]he incorporation of flawed

22  [LOCGs] does not demonstrate that class members whose claims were denied under the [CDGs]

23  were necessarily denied a full and fair review.").

24         Second, Plaintiff's identification of "challenged" and "unchallenged" provisions is flawed

25  because Plaintiff identifies provisions as "challenged" even if the Court in *Wit* never found them

26  to be errant. For example, Plaintiff now contends that a requirement in the LOCGs that services

27  must be "[c]linically appropriate for the members' behavioral health conditions based on

28  generally accepted standards of clinical practice and benchmarks," is somehow improper. *See*

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-12-

1    Reynolds Decl., Ex. 6 at p. 1. That proposition is patently absurd, and of course, the district court

2    in *Wit did not find* that the provision was errant. *See Wit v. United Behavioral Health*, 2019 WL

3    1033730, at ¶¶ 209–12 (N.D. Cal. Mar. 5, 2019); *Wit III*, 79 F.4th at 1086–87. Nor does Plaintiff

4    contend that she can present common evidence to prove that provision is improper on its face.

5    Rather, the real question is whether UBH properly applied that provision to each benefit decision,

6    which can only be determined on an individual member-by-member basis.

7        Third, Plaintiff's purported identification of few "independent" grounds for the benefit

8    decisions is equally flawed. *See* Reynolds Decl. ¶ 5 and Ex. 3 (purporting to identify "coverage

9    criteria appearing in the 2017 LOCGs that pertain to plan exclusions or prerequisites other than

10    medical necessity."). In *Wit*, the Ninth Circuit concluded that the plans do not require coverage

11    for all services that are consistent with generally accepted standards of care. Rather, consistency

12    with generally accepted standards of care is one of many conditions of coverage and "'a service

13    that is consistent with [generally accepted standards of care] may, nonetheless, be excluded from

14    coverage under a particular member's plan.'" *Wit III*, 79 F.4th at 1077. Yet, Plaintiff failed to take

15    into account the language in the ERISA benefit plans themselves or the benefit decisions that

16    were based on plan requirements other than generally accepted standards of care.

17        For example, and as noted above, most plans include separate coverage exclusions for

18    "custodial care" services. But "custodial care" services are *also* not covered *under the LOCGs*

19    *themselves*. Reynolds, Decl. Ex. 1 at 18–19. Although Plaintiff purports not to challenge this

20    "custodial care" portion of the LOCGs, she does so "**only if** the definition of 'custodial care' in

21    the member's plan **identical** to the definition in the Guideline." Reynolds Decl., Ex. 3. Indeed,

22    while Plaintiff ultimately excludes Sample Member 11574 from the reprocessing subclass ███

23    ███████████████████████████████████, she does so only after a detailed

24    comparison of the definition of custodial care in that member's *individual benefit plan* to the

25    definition of custodial care in the 2017 LOCGs. Reynolds Decl., Ex. 9 at 8. The individualized,

26    subjective nature of this analysis is only confirmed by Plaintiff's *inconsistent treatment* of

27    references to custodial care even among the small number of sample class members. For example,

28    the letter sent to Sample Member 10467 is explicit that benefits ████████████████

CROWELL
& MORING LLP
ATTORNEYS AT LAW

UBH'S OPPOSITION TO MOTION TO MODIFY
CLASS CERTIFICATION ORDER;
CASE NO. 3:19-CV-6999-RS

1    ███████████████████████████████████████████████████. Reynolds

2    Decl., Ex. 14 at 31. Yet, unlike Sample Member 11574, Plaintiff announces that Sample Member

3    10467 *is* a subclass member with "No" "Indep. Ground" or "Unchallenged Criterion," Reynolds

4    Decl., Ex. 12, but provides no analysis or explanation of her divergent conclusion.

5           Similarly, Plaintiff agrees that the initial letter sent to Sample Member 12782 was based

6    on an "independent ground," but she fails to explain what that "independent ground" is. Reynolds

7    Decl., Ex. 9 at 12. The initial letter to Sample Member 12782 ███████████████████████

8    ███████████████████████████████████ Reynolds Decl., Ex. 14 at 102–103. The

9    letter states ███████████████████████████", *id*. at 103, and the administrative record

10   confirms it was the LOCGs. Reynolds Decl., Ex. 13 at 262 (describing the "███████████

11   █████████████. Yet Plaintiff offers no method (other than her counsel's say-so) for determining

12   whether this letter reflects an "independent ground" for the decision. Any such determination

13   requires a detailed analysis of the letter and the administrative record for that decision.

14          Likewise, UBH's letter to Class Member 10209 █████████████████████████

15   ████████████████████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████████████

18   ████████████" ECF No. 110-7, 02/09/24 Nguyen Decl., Ex. 6. But again, Plaintiff offers no

19   common method for proving whether this decision, and others like it, were based on an

20   unchallenged portion of that CDG, without a line-by-line analysis of both the letter and the CDG.

21          As Plaintiff's own charts demonstrate, that is equally true of the entire proposed class. *See*

22   Reynolds Decl., Exs. 9, 10; *see also* Holmer Decl., Ex. 3. Whether a benefit decision is based on

23   an errant provision or an "independent ground" cannot be determined for the entire class "in one

24   stroke," *Dukes*, 564 U.S. at 350, based on Plaintiff's inherently individualized methodology.

                   **b.    Whether Each Absent Class Member's Benefit Decision Was
                           Based Solely On Errant Guideline Provisions Requires
                           Individualized Assessment Of Each Decision.**

27          Even if Plaintiff could somehow prove that a "challenged" guideline provision was

28   actually applied to class members' benefit decisions "in one stroke" with common evidence,

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-14-

UBH'S OPPOSITION TO MOTION TO MODIFY
CLASS CERTIFICATION ORDER;
CASE NO. 3:19-CV-6999-RS

*Dukes*, 564 U.S. at 350, that would not be sufficient to meet her burden of proving commonality. Determining whether class members' benefit decisions were based *solely* on a challenged guideline provision necessarily entails a detailed "individualized inquiry" into the language of ERISA benefit plans and thousands of individual benefit "denial letters," which renders "class certification . . . improper." *Condry v. UnitedHealth Grp., Inc.*, 2021 WL 4225536, at *4 (9th Cir. Sept. 16, 2021) (reversing class certification for lack of typicality where plaintiff challenged the sufficiency of ERISA decision letters); *see also Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982) ("The commonality and typicality requirements of Rule 23(a) tend to merge.").

Judge Chen's decision in *Bain v. Oxford Health Insurance Inc.*, 2020 WL 808236 (N.D. Cal. Feb. 14, 2020), which involved claims substantially similar to Plaintiff's here, illustrates the required inquiry. The plaintiff in *Bain*, also a member of a UBH-administered plan, opted out of the *Wit* class. She then filed a separate suit alleging that she was improperly denied coverage for mental health residential treatment based on UBH's use of the 2012 LOCGs. *See id.* at *1–4. Following the bench trial in *Wit*, the *Bain* plaintiff sought judgment based on the finding in *Wit* that the 2012 LOCGs suffered from various defects. *See id.* at *8–9. However, because UBH's decision letter to the plaintiff in *Bain* did not "quote specific parts of or otherwise refer to specific provisions" in the LOCGs, the court found it was "hard to point to any specific deficiency in the Guidelines that impacted the instant case" and thus it was "not clear *how* the decision to deny benefits actually relied on the LOC Guidelines." *Id.* at *9. Thus, the court concluded that the factual findings in *Wit* were not determinative of UBH's liability in *Bain* "because the record [was] not clear as to any specific causative connection to the decision to deny benefits." *Id.*

Plaintiff here encounters the same issue – she cannot demonstrate that every member of the class could have been prejudiced by application of the guidelines, or even attempt to do so, without undertaking a painstaking analysis of each and every putative class member's benefit decision. Recognizing the subjective judgment necessary to do that analysis, Plaintiff performs *no* analysis at all. She presents the Court with two rudimentary charts, each with two columns. The first column contains the language in the Sample Class's denial letters, and the second contains Plaintiff's counsel's one-word conclusion ("Yes" or "No") as to whether every portion of the

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-15-

UBH'S OPPOSITION TO MOTION TO MODIFY
CLASS CERTIFICATION ORDER;
CASE NO. 3:19-CV-6999-RS

1  benefit decision tracks to a challenged provision. Reynolds Decl., Ex. 9, 10. Plaintiff makes no

2  attempt to explain how her lawyer made each of those decisions because she cannot. Plaintiff tells

3  the Court to simply take her word for it and foists the burden of *disproving* her counsel's

4  conclusory assertions onto UBH.

5       But what Plaintiff attempts to reduce to a binary "Yes/No" proposition in her Exhibits 9

6  and 10, is in fact a complicated analysis that does not lead to common results. On their face, the

7  letters show that they are based on individualized analyses of each member's clinical condition,

8  and not specific challenged provisions in the LOCGs. As illustrated in UBH's Exhibit 3, the

9  clinical reasonings stated in the benefit letters from the Sample Class are rife with language that

10  cannot be tied to particular portions of the LOCGs using any common evidence or methodology.

11       For example, the letter for Class Member 11081 states as one basis for the benefit decision

12  that the member's ███████████████████████████████████████████

13  ████████████████████████████████████." *See* Reynolds Decl, Ex.

14  10 at 6–7). And the letter for Class Member 12782 states that █████████████

15  ████████████████████████████████████████████████████

16  ██████████████████████" *Id*. at 16. Plaintiff fails to attribute these statements to any

17  challenged LOCG provision, yet she still asserts that both of these decisions are based *solely* on

18  challenged provisions. *See* Reynolds Decl., Ex. 12 at 3. There is no basis to conclude that that

19  these members can be part of the subclass.

20       Just like in *Bain*, trying to prove, as Plaintiff must, that a member's denial was based

21  entirely on "challenged" criteria would necessarily devolve into thousands of mini-trials, in which

22  the Court would need to analyze each decision letter line-by-line to determine it was based *solely*

23  on a challenged criterion. That is antithetical to commonality under Rule 23(a)(2). *See Robbins v.*

24  *Phillips 66 Co.*, 343 F.R.D. 126, 131 (N.D. Cal. 2022) (Seeborg, J.) (denying class certification;

25  commonality is not satisfied if class members' right to relief "might depend on facts unique to

26  each claimant, necessitating mini-trials, beyond mere damages calculation").

27       Indeed, in her now-withdrawn prior motion to modify the class, Plaintiff attempted (albeit

28  unsuccessfully) to do that sort of individualized analysis for each sample class member. *See* ECF

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-16-

No. 99-7 (Plaintiff's prior analysis purporting to ascribe specific language in class members' decision letters to specific purposes "flaws" in the LOCGs). But Plaintiff now does not even attempt to make that showing in the instant motion because she knows it is an impossible task. *See* ECF No. 111 at 15–19; ECF No. 110-4 (UBH opposition to Plaintiff's prior motion identifying pervasive issues in Plaintiff's methodology). Plaintiff now proclaims that her class definition is all the evidence she needs, and effectively asks the Court to impermissibly shift the burden on to UBH to *disprove* that the decision letters do not contain unchallenged criteria. Mot. at 19–20, 22. That is not allowed under Rule 23 and cannot support class certification. *Olean*, 31 F.4th at 663 (Rule 23 cannot be used to alter "the substance of the claims or plaintiffs' burden of proof"); *see also Wit III*, 79 F.4th at 1086 (Rule 23 cannot be "applied in a way that enlarge[s] or modifie[s] Plaintiffs' substantive rights in violation of the Rules Enabling Act"); *Ellis v. J.P. Morgan Chase & Co.*, 2015 WL 9178076, at *4 (N.D. Cal. Dec. 17, 2015) ("Plaintiffs cannot shift their burden to Defendants simply because Plaintiffs present no evidence of their own.").

### 2.    Plaintiff Cannot Prove With Class-Wide Evidence That Every Class Member "Might Have Been Entitled To Benefits" Under Plaintiff's Preferred Guidelines.

UBH's Exhibit 3 also highlights Plaintiff's inability to demonstrate that each class member might be entitled to benefits if her preferred guidelines were used on reprocessing. The denial letters reflect an individualized assessment of each member's condition and treatment status. *Id.* The letters assess things like the stability of a member's symptoms, their progress in treatment, and their support systems. *See, e.g.*, Holmer Decl., Exhibit 3 (Denial Letters for Members 10111, 11459, 11546). Not only does Plaintiff fail to establish that such considerations reflect a denial based on a challenged provision, the factors discussed often align directly with factors that even Plaintiff's preferred guidelines (such as ASAM and LOCUS) recommend considering. *See id.* Such language raises individualized questions as to whether a member's benefit decision would be different, even if evaluated under the "proper" standard. The answer to those questions lies in evidence specific to the class member at issue – not in common evidence.

Plaintiff also disregards all evidence outside of the denial letters. Plaintiff's view is far too narrow. *Bain* illustrates the necessary analysis that Plaintiff declines to undertake. To determine

1   whether the plaintiff in that case was entitled to reprocessing – the exact remedy Plaintiff seeks

2   here – the *Bain* court probed well beyond UBH's decision letter, reviewing the entire

3   administrative record underlying the decision. *See Bain*, 2020 WL 808236, at *10. While much of

4   the court's analysis is redacted, it is clear that the court examined evidence regarding plaintiff's

5   condition and how UBH evaluated her condition. *See, e.g.*, *id.* (observing that a peer-to-peer was

6   performed and plaintiff's treating physician indicated that her situation was not severe). While the

7   court ultimately concluded the plaintiff was entitled to reprocessing, it did so only after an

8   extensive examination of the evidentiary record – not just UBH's decision letter. Critically, the

9   fact that the court ordered remand for reprocessing, and *not* the direct payment of benefits, did not

10  alter the need for a fulsome analysis of the plaintiff's administrative record. Other ERISA

11  decisions are in accord with *Bain*, performing a full review of the administrative record, and not

12  only the denial letter. *See, e.g.*, *Judge*, 710 F.3d at 659–60 (declining remand based on review of

13  the full administrative record, including the "objective medical evidence"); *McCartha v. Nat'l*

14  *City Corp.*, 419 F.3d 437, 447 (6th Cir. 2005) (after review of plaintiff's administrative record,

15  concluding remand would be useless given legitimate basis existed for denial).

16      Here, Plaintiff asks this Court to certify a class of thousands of individuals just like the

17  *Wit* opt-out plaintiff in *Bain*, and asks the Court to order the exact same relief (claim

18  reprocessing) ordered in *Bain*. But she asks this Court to do so without any of the necessary

19  individual analysis that was performed in *Bain* and similar cases, simply because she styled this

20  case as a class action. That is precisely the sort of shortcut to liability that the Ninth Circuit

21  rejected in *Wit* as a violation of the Rules Enabling Act, *Wit III*, 79 F.4th at 1086; *see also Olean*,

22  31 F.4th at 663 ("As a claims-aggregating device, Rule 23 leaves the parties' legal rights and

23  duties intact and the rules of decision unchanged, and it does not affect the substance of the

24  claims or plaintiffs' burden of proof") (cleaned up). This cannot support class certification.

25      It is not a theoretical possibility that class members' claims would still be denied under

26  Plaintiff's preferred guidelines. For some class members, there is strong evidence that application

27  of a different guideline would have the same outcome, and remanding their benefits claim for

28  reprocessing would be a "useless formality." *See Wit III*, 79 F.4th at 1084 (reprocessing

CROWELL
& MORING LLP
ATTORNEYS AT LAW

1   unavailable if it would be a "useless formality"). For example, the administrative record for Class

2   Member 11773 shows that ████████████████████████████████████████████

3   (ECF No. 59-6 at 135 (UBHJONES0005328)), ███████████████████████████████

4   ████████████████████████████████████████. ECF No. 110-8,

5   02/09/24 Nguyen Decl., Ex. 7 at 9 (UBHJONES0005359). Similarly, with respect to Plaintiff

6   herself, ██████████████████████████████████████████. *See* Am. Compl.

7   ¶ 37. ██████████████████████████████████████████████

8   █████████████████████████████████████████████████████

9   ████████████████████████████████████████████

10  ███████. *See* ECF No. 59-5 at 3 (UBHJONES0000928); ECF No. 62-14 at UBHJONES0001074;

11  ECF No. 69-5 at UBHJONES0001209. ██████████████████████████████████

12  █████████████████████████████████████████████████████

13  ████████████████████████████████████████. ECF No. 69-6

14  at UBHJONES0000087. At a bare minimum, the Court cannot presume, without examining the

15  administrative record for each class member, that reprocessing may yield a different result.

16          There is no way for Plaintiff to prove, using common evidence, that each class member's

17  benefit decision was based solely on a challenged guideline provision, and there is no way for her

18  to prove, using common evidence, that each class member might be entitled to benefits upon

19  reprocessing. Even in the small sample of class members, many were not denied benefits solely

20  based on a challenged provision, and many would not be entitled to benefits on reprocessing. And

21  most importantly for the present motion to certify a reprocessing subclass, adjudicating Plaintiff's

22  claim requires an inherently individualized and fact-intensive inquiry into the administrative

23  records of each class member. It is not subject to common, class-wide proof.

24      **B.      Plaintiff's Claims Are Not Typical Of The Reprocessing Subclass's Claims.**

25          Plaintiff does not meet her burden of establishing Rule 23(a)(3)'s "typicality" requirement

26  for the same reasons. Typicality requires the court to determine whether the named plaintiff has

27  suffered the same or a similar injury to other members of the class. *Torres v. Mercer Canyons*

28  *Inc.*, 835 F.3d 1125, 1141 (9th Cir. 2016). Certification is not appropriate where individualized

CROWELL
& MORING LLP
ATTORNEYS AT LAW

1    inquiries are needed on causation and injury. *See Condry*, 2021 WL 4225536, at \*4; *see also*

2    *Gardner v. Health Net, Inc.*, 2010 WL 11579028, at \*3 (C.D. Cal. Sept. 13, 2010) (typicality "is

3    not met in an action that would require individualized inquiries regarding causation and injury.").

4    The Ninth Circuit's decision in *Condry* is on point. In *Condry*, the plaintiff brought an ERISA

5    class action alleging that class members were denied a "full and fair review" of their claims.

6    *Condry*, 2021 WL 4225536, at \*2. The court affirmed denial of a "Claims Reprocessing Class",

7    and reversed certification of another class that was based on the content of the administrator's

8    decision letters. *Id*. at \*4. The court held that the named plaintiffs were not typical of the class

9    because "the individualized inquiry required to evaluate the sufficiency of the denial letters,"

10   rendered "the class representatives' claims . . . not typical of the class members' claims." *Id*.

11         Plaintiff's case presents the same need for an individualized review of the decision letters,

12   as well as the full administrative records for each class member. It is not enough, as Plaintiff

13   claims, that her denial letter is "devoid of any reference to an 'Unchallenged Criterion.'" Mot. at

14   22. To prove her claim for denial of benefits, and to prove a right to reprocessing, this Court must

15   engage in an intensive analysis of Plaintiff's full record, similar to Judge Chen's fact-intensive

16   analysis in *Bain*, to determine whether her request for coverage might have been approved under

17   a different set of guidelines. This analysis is specific to Plaintiff and would be needed for each of

18   the class members based on their own individual administrative record.[4]

19         **C.    Plaintiff Fails To Demonstrate She Is An Adequate Representative.**

20         "The commonality and typicality requirements of Rule 23(a) . . . tend to merge with the

21   adequacy-of-representation requirement, although the latter requirement also raises concerns

22   about the competency of class counsel and conflicts of interest." *Gen. Tel. Co. of Sw.*, 457 U.S. at

23   157 n.13. Thus, Plaintiff fails to satisfy Rule 23(a)(4)'s adequacy requirement for all the same

24   reasons that she cannot satisfy the requirements of commonality or typicality. Given the

25   individualized inquiries required to assess whether any class member is entitled to reprocessing,

26

27   _____
     [4] Plaintiff's benefit determinations were based on the 2017 LOCGs relevant to mental health
     conditions. On their face, her claims are not typical of class members whose requests were denied
28   based on provisions specific to substance use and CDGs that were never applied to her. *See* ECF
     No. 70-14 (Romano Declaration in Support of Opposition to Class Certification, Exhibit 8).

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-20-

UBH'S OPPOSITION TO MOTION TO MODIFY
CLASS CERTIFICATION ORDER;
CASE NO. 3:19-CV-6999-RS

the claims of Plaintiff and the class are not sufficiently "interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id*.

### III.    Plaintiff's Proposed Class Does Not Satisfy The Requirements Of Rule 23(b)(3).

Plaintiff's proposed reprocessing subclass also does not satisfy Rule 23(b)(3).[5] Under Rule 23(b)(3), Plaintiff must demonstrate that (1) questions common to the class predominate over individual questions, and (2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). The focus is whether "a proposed class is sufficiently cohesive to warrant adjudication by representation." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) (internal quotations omitted).

### A.    Plaintiff's Proposed Class Raises Numerous Individualized Questions, Which Predominate Over Any Purportedly Common Ones.

"Rule 23(b)(3)'s predominance criterion is even more demanding than [commonality under] Rule 23(a)," *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). A class that meets Rule 23's commonality and typicality requirements may still fail to satisfy the rigorous demands of Rule 23(b)(3). *See, e.g.*, *Castillo v. Bank of Am., NA*, 980 F.3d 723, 726–27 (9th Cir. 2020).

The questions for reprocessing – (1) whether each benefit decision was based solely on a challenged provision and (2) whether each class member might be entitled to benefits if different guidelines are used – are precisely the kind of individualized issues that defeat predominance. Courts must "ensure that the class is not defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct." *Castillo*, 980 F.3d at 730 (quoting *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1138 (9th Cir. 2016)). In *Castillo*, the Ninth Circuit held that even though the defendant had a common policy in place regarding calculating overtime wages, common issues did not predominate given evidence that some class members were not exposed to the improper policy, or were exposed but were nevertheless properly paid, and therefore did not suffer an injury. *See id.* at 731–33. Absent a "common method of proof" establishing class-wide liability, the plaintiff in *Castillo* failed to

---

[5] Plaintiff moves to certify the subclass exclusively under Rule 23(b)(3). *See* Mot. at 1, Statement of Issues to Be Decided; *see also* Mot. at 23–24 (same). Plaintiff does not move for certification under Rule 23(b)(1) or 23(b)(2).

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-21-

UBH'S OPPOSITION TO MOTION TO MODIFY
CLASS CERTIFICATION ORDER;
CASE NO. 3:19-CV-6999-RS

1    "show that questions of law or fact common to class members predominate." *Id.* at 732.

2    This case is no different – Plaintiff cannot establish that all class members are entitled to

3    reprocessing using common evidence. To the contrary, any common questions would be

4    overwhelmed by the thousands of individual determinations needed to determine which class

5    members' claims decisions were solely attributable to UBH's application of the challenged

6    provisions of the 2017 LOCGs, and which class members might be entitled to benefits if

7    Plaintiff's preferred guidelines are used. Analysis of class members' administrative records,

8    including medical records, represents a "highly individualistic determination" that "militat[es]

9    against class certification." *Pecere v. Empire Blue Cross and Blue Shield*, 194 F.R.D. 66, 71

10   (E.D.N.Y. 2000) (cleaned up) (holding case was "ill-suited for class status because plaintiffs'

11   claims hinge on whether or not the treatment for each of their individual conditions was

12   'medically necessary'").

13   Plaintiff faces a similar burden in proving that all members of the subclass have standing

14   to maintain their claims, given that many of the proposed subclass members assigned their rights

15   to bring an ERISA claim to their healthcare provider. The Ninth Circuit has recognized that

16   benefit plan members can assign certain rights under ERISA to a healthcare provider, including

17   the right to sue for non-payment of benefits. *See S. Coast Specialty Surgery Ctr., Inc. v. Blue*

18   *Cross of California*, 90 F.4th 953, 959 (9th Cir. 2024). In assigning such rights, however, the

19   member's rights to sue are extinguished. *See Koblentz v. UPS Flexible Emp. Ben. Plan*, No. 12-

20   CV-0107-LAB, 2013 WL 4525432, at *2 (S.D. Cal. Aug. 23, 2013) ("an assignment" by an

21   ERISA beneficiary to a healthcare provider "in some cases, may deprive the participant of her

22   right to sue"); Restatement (Second) of Contracts § 317 ("An assignment of a right is a

23   manifestation of the assignor's intention to transfer it by virtue of which *the assignor's right to*

24   *performance by the obligor is extinguished in whole or in part* and the assignee acquires a right to

25   such performance." (emphasis added)). Whether an assignment encompasses (and thus forfeits)

26   the right to bring an ERISA claim depends on an individualized analysis of the language of each

27   assignment. *See South Coast Specialty Surgery Ctr.*, 90 F.4th at 959.

28   To award relief in this case, the Court will need to determine which members of the class

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-22-

UBH'S OPPOSITION TO MOTION TO MODIFY
CLASS CERTIFICATION ORDER;
CASE NO. 3:19-CV-6999-RS

1  transferred their right to seek ERISA relief here, and therefore lack standing to sue. *See*

2  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430–31 (2021) ("Every class member must

3  have Article III standing in order to recover individual damages.") Here, at least some class

4  members expressly assigned away their right to sue for non-payment of benefits to their provider.

5  *See, e.g.*, Nguyen Decl., Ex. 2 at p.6 (Sample Member 12696: ██████████████████

6  ████████████████████████████████████████████████████████████

7  ██████████████████████████. And for every class member, that is, by definition, an

8  individualized question that requires a careful examination of: (1) whether the class members

9  assigned any aspect of their benefits; and (2) if so, whether their right to sue under ERISA is

10  fairly encompassed within the scope of that assignment. *See South Coast Specialty Surgery Ctr*,

11  90 F.4th at 959 (analyzing the written terms of an assignment and concluding that the assignment

12  encompassed "the right to sue for non-payment of benefits" even though the "form does not

13  expressly state that [the provider] may sue insurers on its patients' behalf".) At trial, Plaintiff will

14  bear the burden of proving that element of standing by showing each class member did not assign

15  their benefits. *TransUnion*, 594 U.S. at 430–31 ("plaintiffs bear the burden of demonstrating that

16  they have standing"). Yet Plaintiff offers no common method to prove those requirements for

17  standing, and individualized issues will necessarily overwhelm any common questions.[6]  *See*

18  *Olean*, 31 F.4th at 668 n. 12 ("Rule 23 also requires a district court to determine whether

19  individualized inquiries into this standing issue would predominate over common questions").

20      Plaintiff also does not carry her burden of showing that she can overcome UBH's defense

21  of administrative exhaustion based on class-wide evidence. Many of the putative class members'

22  plans contain explicit exhaustion requirements. *See* ECF No. 62-10 at UBHJONES0010353–56, -

23  359 ██████████████████████████████████ ECF No. 60-7 at

24  UBHJONES0019766–67, -773 ████████████████ Under settled Ninth Circuit law,

25  those express plan terms *must be enforced as written*, and federal common law principles such as

---

[6] Plaintiff cannot use Rule 23 to shift the burden to UBH to *disprove* absent class members'
standing based on an assignment of benefits. *Olean*, 31 F.4th at 663 (Rule 23 cannot be used to
alter the burden of proof). But even if the issue of assignments by individual class members
constitutes an affirmative defense—it does not—Rule 23 cannot be used to deny UBH its right to
litigate those unique defenses as to each absent class member. *Dukes*, 564 U.S. at 367.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

UBH'S OPPOSITION TO MOTION TO MODIFY
CLASS CERTIFICATION ORDER;
CASE NO. 3:19-CV-6999-RS

1   futility cannot be "used to alter the unambiguous written terms of a formal plan document."

2   *Cinelli v. Sec. Pac. Corp.*, 61 F.3d 1437, 1445 (9th Cir. 1995); *see also Greany v. W. Farm*

3   *Bureau Life Ins. Co.*, 973 F.2d 812, 822 (9th Cir. 1992) (similar). As the Ninth Circuit observed

4   in *Wit*, exhaustion is required regardless of whether Plaintiff styles her reprocessing claim as one

5   for denial of benefits or breach of fiduciary duty. *Wit III*, 79 F.4th at 1089 ("exhaustion *is*

6   required if a plaintiff's statutory claim is a disguised claim for benefits"). And some plans include

7   enforceable limitations periods requiring members to bring suit within two years of a denial of

8   benefits, raising additional individualized issues. *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571

9   U.S. 99, 105–06, 108 (2013) (reasonable limitations periods in ERISA plans are enforceable); *see*

10  ECF No. 59-18 at UBHJONES0015604.[7]

11      "[A] class cannot be certified on the premise that [the defendant] will not be entitled to

12  litigate its . . . defenses to individual claims." *Dukes*, 564 U.S. at 367. Both of these defenses

13  require examination of each plan *and* each member's claim, and thus overwhelm any common

14  questions. Plaintiff fails to meet her burden under Rule 23(b)(3).

15      **B.    Class Treatment Is Not Superior And Plaintiff Offers No Plan For Managing
            The Highly-Individualized Questions Affecting Each Class Member's Right
16          To Reprocessing.**

17      The varied and individualized questions that this Court would need to answer for each of

18  the thousands of reprocessing subclass members also demonstrates that class treatment is not a

19  superior method of adjudicating class members' claims for reprocessing.

20      A class is not a "superior method for fair and efficient adjudication" under Rule 23(b)(3)

21  if there would be significant "difficulties identifying class members . . . ."[8] *Pierce v. Cnty. of*

22  *Orange*, 526 F.3d 1190, 1200 (9th Cir. 2008) (affirming decertification order because issues of

23  proof "would be highly individualized" and subject to "too many . . . variables"). Superiority

24  ───────────────

25  [7] For example, Sample Member 10467 is subject to both of these individualized defenses. (*See*
    No. ECF 59-19 at UBHJONES0016192–96, –205 ██████████████████████████
                                                                    ECF No. 59-5 at
26  114 (UBHJONES0016338) ████████████████████
                        ECF No. 70-14 at 6–7 ██████████████████

27  [8] While there is no "freestanding administrative feasibility requirement" in the Ninth Circuit,
    courts may consider such issues of "manageability as one component of the superiority inquiry"
28  under Rule 23(b)(3). *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017).

CROWELL
& MORING LLP
ATTORNEYS AT LAW

1    requires the Court to "consider the likely difficulties in managing the proposed class action,"

2    including whether the proposed class is "objective and presently ascertainable." *Rowden v. Pac.*

3    *Parking Sys., Inc.*, 282 F.R.D. 581, 585 (C.D. Cal. 2012) (class action was not "superior" when

4    liability turned on "an individual, fact-specific inquiry" that "impair[ed] the Court's ability to

5    effectively and efficiently manage the litigation), *aff'd in part sub nom. Martin v. Pac. Parking*

6    *Sys. Inc.*, 583 F. App'x 803 (9th Cir. 2014) (affirming denial of certification where it would not

7    be "administratively feasible to determine which individuals" were included in the class).

8          Here, issues of ascertainability and manageability of Plaintiff's proposed reprocessing

9    subclass take on extra significance because, as discussed above, Plaintiff seeks to use her class

10   definition as a substitute for class-wide proof of both elements of her substantive claim for

11   reprocessing. Yet Plaintiff "proposed no plan to the district court for manageably determining

12   which individuals are members" of the subclass. *Martin*, 583 F. App'x at 804 (affirming denial of

13   class certification; plaintiff "proposed no plan" for an "administratively feasible" way to identify

14   class members). Nor could she. As discussed above, simply determining which of the thousands

15   of class members fall within the proposed subclass would require thousands of fact-specific and

16   subjective interpretations of each class member's administrative record to identify whether e class

17   member's benefit decision: (1) "identifies a reason for denying the request for coverage other

18   than" the 2017 LOCGs or a related CDG; or (2) "specifies that the member's failure to satisfy the

19   applicable Guideline was based, even in part," on an unchallenged criterion. Mot. at 14.

20         Performing the individualized analysis performed in *Bain* thousands of times over, just to

21   decide who falls within Plaintiff's subjective class definition, is not a superior method of

22   adjudicating class members' claims for reprocessing. *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d

23   1180, 1192 (9th Cir. 2001) ("If each class member has to litigate numerous and substantial

24   separate issues to establish his or her right to recover individually, a class action is not

25   'superior.'"). Class certification should be denied for this reason as well.

26                               **CONCLUSION**

27         For the foregoing reasons, UBH respectfully requests that the Court deny Plaintiff's

28   motion to certify a reprocessing subclass and instead decertify the class in its entirety.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

UBH'S OPPOSITION TO MOTION TO MODIFY
CLASS CERTIFICATION ORDER;
CASE NO. 3:19-CV-6999-RS

1

2    Dated: February 21, 2025              CROWELL & MORING LLP

3

4                                         By: */s/ Jennifer S. Romano*
                                              Jennifer S. Romano
5                                             Andrew Holmer
                                              Nicholas Dowd
6
                                              Attorneys for Defendant
7                                             UNITED BEHAVIORAL HEALTH

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

UBH'S OPPOSITION TO MOTION TO MODIFY
                                                CLASS CERTIFICATION ORDER;
                                                CASE NO. 3:19-CV-6999-RS