PSYCH-APPEAL, INC.
Meiram Bendat (Cal. Bar No. 198884)
7 West Figueroa Street, Suite 300
PMB #300059
Santa Barbara, CA 93101
Tel: (310) 598-3690, x 101
Fax: (888) 975-1957
mbendat@psych-appeal.com

ZUCKERMAN SPAEDER LLP
Caroline E. Reynolds (admitted *pro hac vice*)
1800 M St., NW, Suite 1000
Washington, DC 20036
Tel: (202) 778-1800
Fax: (202) 822-8106
creynolds@zuckerman.com

ZUCKERMAN SPAEDER LLP
D. Brian Hufford (admitted *pro hac vice*)
Jason S. Cowart (admitted *pro hac vice*)
485 Madison Avenue, 10th Floor
New York, NY 10022
Tel: (212) 704-9600
Fax: (212) 704-4256
dbhufford@zuckerman.com
jcowart@zuckerman.com

*Attorneys for Plaintiff and the Class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| MARY JONES, through her agent, on her own behalf and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> UNITED BEHAVIORAL HEALTH, <br><br> Defendant. | Case No. 3:19-cv-06999-RS <br><br> **PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO MODIFY CLASS CERTIFICATION ORDER** <br><br> Hearing Date:  April 10, 2025 <br> Hearing Time:  1:30 p.m. <br> Judge:  Richard Seeborg <br><br><br> **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.............................................................................................................. iii

I.  **UBH GROSSLY DISTORTS THE STANDARD FOR REPROCESSING RELIEF ARTICULATED IN *WIT III*.** ...............................................................1

    A.    To Be Eligible for Reprocessing Relief, a Plaintiff Needs to Make "at Least Some Showing" that her Claim Was Denied Pursuant to an Errant Standard.......................................................................................1

    B.    To Be Eligible for Reprocessing, a Plaintiff Needs to Show She "Could Have Been Prejudiced" by Use of the Wrong Standard, Not Demonstrate Actual Entitlement to Benefits. ...................................3

II.  **WHETHER THE CHALLENGED GUIDELINE CRITERIA WERE AN "ERRANT STANDARD" IS A COMMON QUESTION.** ...............................5

    A.    UBH Cannot Manufacture Individualized Issues by Bickering with Plaintiff About Which Guideline Provisions She is Challenging..................5

        1.    Plaintiff is not Challenging the "Clinical Best Practices" Section...........................................................................................5

        2.    Plaintiff is not Challenging the CDGs Except insofar as they Incorporate the LOCGs.............................................................6

        3.    Plaintiff Challenges All the Guideline Provisions Held to Be Unreasonable in *Wit*, whether Directly or by Necessary Implication.................................................................7

        4.    Plaintiff Challenges Denials Based on "Custodial Care" Exclusions When the Plan Defined Them Consistent with GASC, but not When the Plan Defined the Exclusion Using a More Restrictive Standard.................................................8

    B.    UBH Cannot Manufacture Individualized Issues by Pretending Plaintiff Failed to Account for "Wholly Independent" Plan Terms. ......................9

III.  **WHETHER THE SUBCLASS MEMBERS "COULD HAVE BEEN PREJUDICED" BY BEING DENIED COVERAGE BASED SOLELY ON THE CHALLENGED GUIDELINE CRITERIA IS A COMMON QUESTION.** ...............................................................................10

IV.  **THE MEMBERS OF THE PROPOSED SUBCLASS CAN BE ASCERTAINED THROUGH A MANAGEABLE PROCESS.** ...............................11

    A.    As a Matter of Law, UBH's Denial Letters are Conclusive Proof of All of UBH's Reasons for Denial. ..........................................................12

    B.    UBH's Denial Letters Are More Than Clear Enough to Identify Which Class Members Are Excluded from the Subclass. ......................................13

1.   When UBH Denied Coverage Based on an Independent Ground, its Denial Letter Says So..............................................................14

2.   When UBH Denied Coverage Based on an Unchallenged Guideline Criterion, its Denial Letter Says So............................................17

C.   If a Denial Letter Does Not Clearly State that UBH Relied on an Independent Ground or Unchallenged Criterion, the Court Should Not Assume it Did So. .............................................................................17

D.   The Eventual Need for Proof of Subclass Membership Does Not Preclude Certification of the Subclass. .................................................18

**V.    UBH'S DEFENSES DO NOT PRECLUDE CERTIFICATION OF THE SUBCLASS...........................................................................................19**

**VI.   CONCLUSION ......................................................................................20**

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abatie v. Alta Health & Life Ins. Co.*,
  458 F.3d 955 (9th Cir. 2006) ........................................................................................... 4

*Amato v. Bernard*,
  618 F.2d 559 (9th Cir. 1980) ......................................................................................... 20

*Bain v. Oxford Health Ins. Inc.*,
  No. 15-cv-03305-EMC, 2020 WL 808236 (N.D. Cal. Feb. 14, 2020) ................................. 4, 5

*Barboza v. California Ass'n of Pro. Firefighters*,
  651 F.3d 1073 (9th Cir. 2011) ....................................................................................... 19

*Bilyeu v. Morgan Stanley Long Term Disability Plan*,
  683 F.3d 1083 (9th Cir. 2012) ....................................................................................... 19

*Booton v. Lockheed Med. Benefit Plan*,
  110 F.3d 1461 (9th Cir. 1997) ....................................................................................... 13

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017) ....................................................................................... 18

*Collier v. Lincoln Life Assurance Co. of Boston*,
  53 F.4th 1180 (9th Cir. 2022) ....................................................................................... 13

*Condry v. UnitedHealth Grp., Inc.*,
  No. 20-16823, No. 20-16857, 2021 WL 4225536 (9th Cir. Sept. 16, 2021) ........................... 4

*D. K. v. United Behav. Health*,
  67 F.4th 1224 (10th Cir. 2023), *cert. denied*, 144 S. Ct. 808 (2024) ................................. 13

*Dresel v. Pension Plan of Pac. Nw. Lab'ys , Battelle Mem'l Inst.*,
  708 F. App'x 326 (9th Cir. 2017) ................................................................................... 13

*Encompass Off. Sols., Inc. v. Louisiana Health Serv. & Indem. Co.*,
  919 F.3d 266 (5th Cir. 2019) ......................................................................................... 20

*Firestone Tire & Rubber Co. v. Bruch*,
  489 U.S. 101 (1989) ........................................................................................................ 4

*Harlick v. Blue Shield of California*,
  686 F.3d 699 (9th Cir. 2012) ..................................................................................... 13, 17

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  No. M 07-1827 SI, 2012 WL 253298 (N.D. Cal. Jan. 26, 2012) ........................................ 18

*Jackson v. Guardian Life Ins. Co. of Am.*,
No. 22-CV-03142-JSC, 2023 WL 2960290 (N.D. Cal. Apr. 13, 2023) ............................ 19-20

*Levya v. Medline Indus. Inc.*,
716 F.3d 510 (9th Cir. 2013) ........................................................................ 18

*Mirza v. Ins. Adm'r of Am., Inc.*,
800 F.3d 129 (3d Cir. 2015) ........................................................................ 20

*Mitchell v. CB Richard Ellis Long Term Disability Plan*,
611 F.3d 1192 (9th Cir. 2010) ............................................................... 17, 18

*Moyer v. Metro. Life Ins. Co.*,
762 F.3d 503 (6th Cir. 2014) ........................................................................ 20

*Mullins v. Direct Digital, LLC*,
795 F.3d 654 (7th Cir. 2015) ........................................................................ 18

*Ryan S. v. UnitedHealth Grp., Inc.*,
98 F.4th 965 (9th Cir. 2024) ........................................................................... 3

*S. Coast Specialty Surgery Ctr.*,
90 F.4th 953 (9th Cir. 2024) ........................................................................ 19

*Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term
Disability Income Plan*, 85 F.3d 455 (9th Cir. 1996) ......................................... 4

*Santana-Diaz v. Metro. Life Ins. Co.*,
816 F.3d 172 (1st Cir. 2016) ........................................................................ 20

*Syverson v. Int'l Bus. Machines Corp.*,
472 F.3d 1072 (9th Cir. 2007) ...................................................................... 14

*Wit v. United Behav. Health*,
79 F.4th 1068 (9th Cir 2023) ................................................................ passim

*Wit v. United Behav. Health*,
No. 14-cv-02346-JCS, 2019 WL 1033730 (N.D. Cal. Mar. 5, 2019) .................... 2, 11, 12, 14

**STATUTES**

29 U.S.C. § 1133 ........................................................................................... 4

29 U.S.C. § 1133(1) ............................................................................... 12, 13

**REGULATION**

29 C.F.R. § 2560.503-1(g)(1) ................................................................. 12, 13

29 C.F.R. § 2560.503-1(g)(1)(i) .................................................................... 12

29 C.F.R. § 2560.503-1(g)(1)(ii) ............................................................ 12, 14

29 C.F.R. § 2560.503-1(g)(1)(iv) ................................................................................................. 20

29 C.F.R. § 2560.503-1(g)(1)(v)(A) ................................................................................. 12, 16, 17

29 C.F.R. § 2560.503-1(g)(1)(v)(B) ....................................................................................... 12, 17

29 CFR § 2560.503-1(l) ................................................................................................................ 19

**OTHER AUTHORITIES**

*Civil Statutes of Limitations: 50-State Survey*, Justia, (June 2023), https://www.justia.com/trials-litigation/lawsuits-and-the-court-process/civil-statutes-of-limitations-50-state-survey/ (last visited Mar. 14, 2025) .......................................................................................................... 20

UBH's Opposition to Plaintiff's Motion to Modify the Class Certification Order misstates the law, misrepresents the facts, and mischaracterizes Plaintiff's arguments.

## I.   UBH GROSSLY DISTORTS THE STANDARD FOR REPROCESSING RELIEF ARTICULATED IN *WIT III*.

The parties agree that the key common question driving the Subclass is whether, at the end of the case, if the Court finds that UBH abused its discretion by implementing the plans' GASC Requirement through its Guidelines, the members of the Subclass will be entitled to a reprocessing remedy. *See* Mot. 21, Opp. 11. The parties also agree that as articulated in *Wit III*, reprocessing is an appropriate remedy "where a plaintiff has shown that his or her claim was denied based on the wrong standard *and* that he or she might be entitled to benefits under the proper standard," or, to put the second element differently, that "application of the wrong standard could have prejudiced the claimant." *Wit v. United Behav. Health*, 79 F.4th 1068, 1084 (9th Cir 2023) ("*Wit III*"); Mot. 1, 11; Opp. 1. But when it comes to the evidentiary showing a plaintiff has to make to establish those elements, UBH quickly goes off the rails, perverting *Wit III's* straightforward standard into an incoherent requirement that a plaintiff must prove actual entitlement to benefits to be eligible for *reprocessing* relief.

### A.   To Be Eligible for Reprocessing Relief, a Plaintiff Needs to Make "at Least Some Showing" that her Claim Was Denied Pursuant to an Errant Standard.

By definition, UBH denied coverage to all members of the certified Class based on the Guidelines.[1] Also by definition, the Subclass will exclude (1) Class members whose denial letters state that the denial was *also* based on any independent ground; *and* (2) Class members whose denial letters state that the Guideline denial was based, *even in part*, on one of the handful of Guideline criteria that are unchallenged in this case. Mot. 14. Thus, as established by the reasons stated in UBH's own denial letters, the Subclass will only include people whose claims were denied pursuant to *challenged* Guideline criteria, thereby falling squarely within the rubric

---

[1] Contrary to UBH's repeated mischaracterizations, its denial letters do not merely "reference the LOCGs in some way." Opp. 1, 6, 9. The denial letters affirmatively state that the denial is "based on" the Guidelines, *see generally* Pl.'s Ex. 9, and are thus evidence of that fact. *See* § IV, *infra*.

established in *Wit III*. *See* 79 F.4th at 1086.

Yet UBH claims that is not enough proof,[2] and that Plaintiff should have to affirmatively demonstrate that "every portion of the benefit decision tracks to a challenged provision" of the Guidelines. Opp. 15-16. That is not what *Wit III* held. Rather, the Ninth Circuit held that, to be eligible for reprocessing, "[a]n individual plaintiff who demonstrated an error in the Guidelines" would have to make "***at least some showing*** that UBH employed an errant portion of the Guidelines that related to his or her claim." 79 F.4th at 1086 (emphasis added).[3] It did not

---

[2] In fact, UBH repeatedly accuses Plaintiff of disclaiming the need for any proof at all, *see* Opp. 5, 17, 23, 25, which, of course, is not the case. The Court should not be distracted by that strawman argument.

[3] The two denial letters UBH cites, Opp. 16, show just how off-base its excessively stringent standard is. UBH contends that Sample Class Members 11081 and 12782 should not be included in the Subclass because the clinical reasoning in their denial letters includes a few statements that it says "cannot be tied" to "any challenged LOCG provision." Opp. 17. But UBH does not assert that the statements *do* "tie" to any independent plan terms or any unchallenged LOCG provisions. *Id*. And the rest of UBH's clinical reasoning gives the Court no reason to believe that coverage would *necessarily* still be denied to either member under a corrected set of criteria. For example, neither denial takes into account ██████████████████████ ███████████████████████████. *See* Pl.'s Ex. 14 at 42-43 (Member 11081); *id*. at 102-105 (Member 12782); *Wit v. United Behav. Health*, No. 14-cv-02346-JCS, 2019 WL 1033730, at *34 (N.D. Cal. Mar. 5, 2019) ("*Wit FFCL*") (¶¶ 130-32). Both members' letters ████████████████████████ UBH explains that Member 11081 is "████ ████████████████████████████████ Pl.'s Ex. 14 at 42-43 (emphasis added), and that Member 12782 ████████████████████████████████████████" *id*. at 104 (emphasis added). *Compare*, *e.g.*, Pl.'s Ex. 6 at 2 (requiring "acute changes in the member's signs and symptoms" that preclude treatment in a less-intensive setting). Both letters reflect ████████████ ████████████████████████████ Pl.'s Ex. 14 at 42-43 (█ ████████████████████); *id*. at 104 (████████████ ██████████████████). *Compare*, *e.g.*, Pl.'s Ex. 6 at 5 (treatment to maintain a level of function considered "custodial" under UBH's Guidelines). And in both cases, UBH concluded that ████████████████████████████████████. Pl.'s Ex. 14 at 43 (█ ██████████████████████); *id*. at 104 (██████ ████████████████). *Compare*, *e.g.*, Pl.'s Ex. 6 at 6 (calling for discharge as soon as "member can be safely transitioned to a less intensive level of care," without regard to what level is most effective to treat member's underlying condition); *id*. (coverage provided only if member "*cannot* be safely, efficiently, and effectively" treated in a lower level of care) (emphasis added).

endorse the holding UBH wants, and certainly did not purport to change the burden of proof in this or any other ERISA case. The showing Plaintiff proposes to make—through evidence that UBH denied coverage to all the Subclass members based on the Guidelines, without stating that it relied on any independent ground (i.e., any plan term other than the GASC Requirement) or any unchallenged Guideline criterion—not only clears the "some showing" hurdle with ease, but it is clearly sufficient to establish, by a preponderance of the evidence, that UBH applied an "errant standard" to each Subclass member.

> **B.    To Be Eligible for Reprocessing, a Plaintiff Needs to Show She "Could Have Been Prejudiced" by Use of the Wrong Standard, Not Demonstrate Actual Entitlement to Benefits.**

UBH's misreading of *Wit III* is even more extreme when it comes to the prejudice element, which UBH insists can only be satisfied by affirmative, individualized proof that the claims would have been approved under the proper standard. *See, e.g.*, Opp. 15, 17-18.[4] In other words, UBH argues that plaintiffs have to prove actual entitlement to benefits to obtain a reprocessing remedy for an administrator's abuse of discretion. But that purported requirement is illogical—it would make no sense to require a plaintiff to prove actual entitlement to benefits just to obtain a remand for the administrator to re-make the very same decision. It is also not at all what *Wit III* held.

To the contrary, consistent with its own longstanding precedent and black letter law

---

There is simply no way to know the result of applying the plan-compliant standard to these members' clinical presentations until UBH makes new determinations upon reprocessing.

[4] UBH tries to shore up its distorted view by mischaracterizing Plaintiff's claim as a "facial challenge" to the Guidelines, as though *Wit III* held that ERISA plaintiffs can never assert common challenges to unreasonable coverage criteria, or that the fact that the challenge is to the criteria themselves somehow precludes a finding that the Class members were prejudiced by Guidelines' pervasive defects. *See, e.g.*, Opp. 1, 5, 7, 8, 9. But that is a disingenuous mischaracterization of Plaintiff's claim and the Ninth Circuit's holding in *Wit III*. And, as Plaintiff pointed out in her opening brief, Mot. 13-14, the Ninth Circuit has reiterated that exactly this type of challenge—*i.e.*, to a faulty standard/process, rather than its specific application in an individual case—is perfectly permissible and amenable to class certification as long as the class members were affected by the challenged standard. *Ryan S. v. UnitedHealth Grp., Inc.*, 98 F.4th 965, 970 n.2 (9th Cir. 2024). UBH ignores *Ryan S.* entirely.

across the country, the Ninth Circuit carefully hedged its language to require that ERISA plaintiffs show they "***might*** have been" entitled to benefits or "***could*** have been" prejudiced by application of the wrong standard. 79 F.4th at 1084. As Plaintiff explained, Mot. 10-12, this was not accidental. *Wit III* left undisturbed the long line of controlling authority in this Circuit holding that if a plan has delegated discretion to the administrator, then even after finding that the administrator abused that discretion by using the wrong standard, "it is not the court's function *ab initio* to apply the correct standard to the participant's claim." *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 460 (9th Cir. 1996) (citation omitted); *see also*, *e.g.*, *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 965 (9th Cir. 2006); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). UBH completely ignores this decades-long line of authority and makes no effort to reconcile it with its misreading of *Wit III*—because the two cannot be reconciled.

UBH also mischaracterizes *Bain*, the case on which it principally relies. Opp. 17-18 (discussing *Bain v. Oxford Health Ins. Inc.*, No. 15-cv-03305-EMC, 2020 WL 808236 (N.D. Cal. Feb. 14, 2020)). The court in *Bain* did not engage in its "extensive examination of the evidentiary record" "[t]o determine whether the plaintiff in that case was entitled to reprocessing," as UBH argues. Opp. at 17-18. Instead, it did so because the Bains sought an ***award of benefits*** from the court. 2020 WL 808236, at *1; *see also id.* *8 n.5 (noting that while the "typical remedy" for "procedural irregularities. . . would be a remand (**rather than a review on the merits**)," but that remand "is not what the Bains want here") (emphasis added).[5] Tellingly, however, the court ordered remand for reprocessing, anyway, because—despite its exhaustive review of all the evidence in the administrative record—the court could not

---

[5] *Condry v. UnitedHealth Grp., Inc.*, No. 20-16823, No. 20-16857, 2021 WL 4225536, at *4 (9th Cir. Sept. 16, 2021) is inapposite for similar reasons. *See* Opp. 15. In *Condry*, the plaintiffs sought to certify a class asserting a claim for violations of 29 U.S.C. § 1133 itself, which required consideration of "the *entire* course of communication between the plan administrator and the plan participant to determine whether the denial letter provided a sufficiently clear reason for the denial." *Condry*, 2021 WL 4225536, at *4 (emphasis in original). Since Plaintiff does not assert a Section 1133 claim, the parties' "entire course of communication" is not at issue.

determine, "whether, based on valid Guidelines or other criteria," the Bains were "necessarily entitled to benefits." *Id*. \*12. The fact that there was insufficient evidence for the court to award benefits under proper criteria did not mean the Bains were ineligible for reprocessing—it is what made reprocessing the appropriate remedy. The same is true for the Class here.

## II.    WHETHER THE CHALLENGED GUIDELINE CRITERIA WERE AN "ERRANT STANDARD" IS A COMMON QUESTION.

As UBH concedes, the Subclass is defined to include only members whose denials were based *solely* on the Guideline criteria Plaintiff challenges in this case. Opp. 11. For that reason, whether the Subclass Members' benefits were denied based on the wrong standard will turn on Plaintiff's common proof that the challenged criteria were much more restrictive than the plan term UBH used its Guidelines to interpret and apply: the plans' GASC Requirement. UBH does not really disagree with that obvious point; instead, it tries to mislead the Court by suggesting that Plaintiff is incorrectly identifying her own Guideline challenges and misinterpreting the Plans.

### A.    UBH Cannot Manufacture Individualized Issues by Bickering with Plaintiff About Which Guideline Provisions She is Challenging.

#### 1.    Plaintiff is not Challenging the "Clinical Best Practices" Section.

UBH erroneously asserts that Plaintiff "ignores" the Guidelines' requirement that services comport with "Optum's best practice guidelines," even though in the next breath, UBH concedes that Plaintiff explicitly stated that she does not challenge that criterion (or the "Clinical Best Practices" section itself), as inconsistent with GASC. Opp. 12 (citing Mot. 6). UBH's real beef is with the reason this section is irrelevant to this case: UBH's corporate designee admitted at trial in *Wit* that UBH does not base denials on that section. Mot. 6 n.7. That testimony means that this entire argument by UBH is a red herring. The Clinical Best Practice section did not serve as a basis for the Class members' denials, and therefore need not be of concern to the Court. The fact that UBH no longer wants to admit this fact does not alter this conclusion, particularly given that UBH fails to cite any evidence to the contrary—including any denial letter based on the Best Practices Section. Opp. 12.

### 2. Plaintiff is not Challenging the CDGs Except insofar as they Incorporate the LOCGs

UBH next accuses Plaintiff of "ignor[ing]" provisions in the CDGs other than the provisions incorporating the LOCGs. Opp. 12. But again, UBH is disingenuous. Plaintiff has consistently made clear that she is **only** challenging the CDGs to the extent they incorporate the LOCGs. *See*, *e.g.*, Mot. 17. That is not the same as "pretend[ing]" the other CDG criteria "does not exist," Opp. 12, it just means that those other CDG criteria are necessarily "unchallenged" and irrelevant to the Subclass or its claims. Thus, if a CDG-based denial is based on a CDG provision **other** than the provisions incorporating the LOCG's level of care criteria, that denial would not qualify for Subclass membership.

There is one CDG denial in the Claim Sample, Pl.'s Ex. 9 at 12 (Member 12696), but tellingly UBH does not argue that that it was based on any unchallenged CDG criteria. Nor could it. The denial letter states , and the CDG does not discuss how to determine whether residential treatment is the appropriate level of care for a patient. *See generally* Def.'s Ex. 1 (ECF No. 139-2). The explanation of UBH's clinical reasoning in Member 12696's denial letter, moreover, is

Pl's. Ex. 14 at 99-100. What is dispositive here is that the cited CDG does not contain **any** level-of-care criteria at all, such that UBH could not possibly have relied on the CDG to determine that Instead, in a section titled, "Level of

Care Guidelines," the CDG directs reviewers to the LOCGs, complete with an operative hyperlink. Def.'s Ex. 1 (ECF No. 139-2) at TX 214-0006.[6] And since the denial letter makes no reference to the few Guideline criteria that are unchallenged, *see* Pl.'s Ex. 6, the letter proves that this denial, like all the others that are part of the Sample, was based **solely** on challenged LOCG criteria.

It is worth noting that the full "ABD List" UBH produced in discovery reflects that **just 71** of the 3,751 Class members (*i.e.,* less than 2%) received a denial based on a CDG. Reynolds Decl. ¶¶ 21, 25(c). Even if the Court were to determine (which it should not) that the mere mention of a CDG in those members' letters means that they "could not have been" prejudiced by the defects in the incorporated LOCG, the solution would not be to refuse to certify the Subclass at all; it would simply be to carve this very small percentage of CDG-based denials out of the Subclass.

### 3. Plaintiff Challenges All the Guideline Provisions Held to Be Unreasonable in *Wit*, whether Directly or by Necessary Implication.

UBH's most incoherent argument is that—even though Plaintiff here alleges (and the *Wit*

---

[6] UBH also cherry-picks a CDG-based denial from outside the parties' Stipulated Claim Sample, *see* Pl.'s Ex. 8, which it apparently submitted with its Opposition to Plaintiff's 2023 Motion to Modify, and yet faults Plaintiff for not discussing it in her new motion. Opp. 14 (discussing Class Member 10209's letter). The Court should not reward UBH's "gotcha" tactic by considering that denial, especially since UBH has never produced that member's plan, as it did for the Sample claims the parties agreed to use for class certification briefing.

UBH's argument is meritless in any event. No "line-by-line analysis" of the CDG is required to see that, just like the ▊▊▊ CDG discussed above, the ▊▊▊▊▊▊ CDG on which Member 10209's denial was based contains no level of care criteria whatsoever. *See generally,* 2d Reynolds Decl. ¶ 4 & Pl.'s Ex. 17. Rather than addressing how a reviewer should assess whether residential treatment is appropriate for the member, the CDG merely directs the reviewer to the LOCGs (again, with a hyperlink). Pl.'s Ex. 17 at 218-0005. UBH could not possibly have relied on that CDG's independent criteria to decide that ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊. 2d Reynolds Decl. ¶ 5 & Ex. 18 (Member 10209's denial letter). The snippets of reasoning UBH quotes in its brief, Opp. 14, relate to ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊ Again, the cited CDG contains no criteria for assessing ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊ Pl.'s Ex. 17. The plain language of the letter and the CDG, therefore, disprove UBH's suggestion that the denial was based on some unidentified "unchallenged portion of that CDG." Opp. 14.

plaintiff proved) that UBH adopted and applied an overly narrow interpretation of generally accepted standards of care—Plaintiff should not be allowed to challenge the Guideline criterion that services must be "[c]linically appropriate for the members' behavioral health conditions based on generally accepted standards of clinical practice and benchmarks." Opp. 12-13 (citing Pl.'s Ex. 6 at 1). UBH does not (and could not) dispute that Plaintiff wants to challenge this criterion, or that *Wit* held that the substantively identical Guideline requirement, that services must be "[c]onsistent with generally accepted standards of clinical practice," was improper. Pl.'s Ex. 6 at 1. Put simply, both provisions are invalid for the same reason: they incorporate UBH's inaccurate, unreasonable interpretation of GASC itself. The district court in *Wit* held, ***and the Ninth Circuit affirmed***, that the Guidelines "represented UBH's interpretation of GASC," *Wit III*, 79 F.4th at 1085, and that "UBH abused its discretion because the challenged provisions of the Guidelines did not ***accurately*** reflect GASC." *Id.* 1088 n.6 (emphasis in original). It is far too late for UBH to raise this incoherent argument.

In any case, regardless of whether the district court in *Wit* has already held that this or any other challenged Guideline provision was improper (such that Plaintiff may assert collateral estoppel against UBH), nothing prevents Plaintiff from offering the evidence offered in *Wit*, or ***additional*** common evidence, to prove her claims here.

### 4. Plaintiff Challenges Denials Based on "Custodial Care" Exclusions When the Plan Defined Them Consistent with GASC, but not When the Plan Defined the Exclusion Using a More Restrictive Standard.

In yet another attempt to create confusion, UBH erroneously attacks as "inconsistent" Plaintiff's approach to the Guidelines' definition of "custodial care." Opp. 13. Its argument fails miserably. UBH administers plans with two types of "custodial care" exclusions—one type defines "custodial care" consistent with GASC. The other type uses a much broader definition of "custodial care" than GASC, expanding the exclusion and thereby narrowing coverage. Plaintiff challenges denials under the Guidelines' "custodial care" provision under the former type of plan, but not under the latter type.

Comparing the claims of Sample Member 10467, who is a Subclass Member, to Sample

1   Member 11574, who is not, even though both members' letters ████████████████████

2   ████, clearly shows the logic of this distinction, notwithstanding UBH's professed

3   confusion. Opp. 13-14. As Plaintiff previously explained, because Member 11574's plan

4   ████████████████████████████████████████████████████████████████████████

5   █████████████████████ that plan's exclusion is an Independent Ground based on plan

6   language that is distinct from the GASC Requirement implemented through the Guidelines. Mot.

7   18-19.[7] On the other hand, Member 10467's plan ███████████████████████████████████

8   ███████████ which means that the exclusion is not "independent" of the GASC

9   Requirement that was distorted by the Guidelines. *See* Exhibit F-10 to Abelson Declaration in

10  Support of Pl.'s Mot. for Class Certification (filed Nov. 13, 2020) (ECF No. 59-19) at 11.

11  Member 10467, therefore, qualifies for the Subclass, while Member 11574 does not. There is

12  nothing inconsistent, individualized, or subjective about these conclusions.

### B.  UBH Cannot Manufacture Individualized Issues by Pretending Plaintiff Failed to Account for "Wholly Independent" Plan Terms.

UBH's nonsensical attack on Plaintiff's Exhibit 3 as being underinclusive fails to support

UBH's accusation that Plaintiff is ignoring "plan terms" and "concluding that there are few. . .

independent bases to deny a benefit claim." Opp. 11; *see also id.* at 13 (accusing Plaintiff of

"fail[ing] to take into account" that decisions may be based on "plan requirements other than

generally accepted standards of care.").[8] This argument is entirely off-base. The ***whole point*** of

---

[7] Contrary to UBH's hyperbolic protest, comparing the plan definition to the Guideline definition does not require any "detailed" review or "individualized, subjective" analysis. Opp. 13. Rather, it is just a matter of comparing the plain language of a single paragraph in two documents. Nor would this cursory comparison even need to be done in every potential Subclass member's case. As reflected by the fact that only two Sample Members' denials were ████████████████████ ████████████████, UBH does not rely on that particular ground for denial very often.

[8] UBH appears to be attempting to set up an argument that Plaintiff is misinterpreting the plans as covering all services that are consistent with GASC. *See, e.g.* Opp. 13 (citing *Wit III*, 79 F.4th at 1077). There should be **no ambiguity** about this point: Plaintiff does not argue, and has never argued, that the Plans cover all services that are consistent with GASC or that compliance with GASC is the only precondition for coverage under the Plans. Plaintiff fully understands that the GASC Requirement is a necessary, but not sufficient, condition of coverage. All that said, the GASC Requirement is still ***a condition*** of coverage, which UBH had to interpret reasonably.

proposing a Subclass narrowed in the specific ways Plaintiff proposes is to avoid the overbreadth problems identified in *Wit III*. Mot. 13-14. One such issue was the Ninth Circuit's conclusion that the class definition swept in claims that UBH denied not only based on the Guidelines' interpretation of the plans' GASC Requirement, but *also* based on some other plan term that was "wholly independent" of that requirement. *Wit III,* 79 F.4th at 1085. The Subclass definition's first exception, therefore, is designed to weed out exactly those denials. *See* Mot. 17-19.

Plaintiff's Exhibit 3 does not purport to be an exhaustive list of all the "wholly independent" grounds that could ever be the basis of a denial under any plan. The exhibit merely takes account of the fact that the Guidelines *themselves* restate a handful of administrative criteria and other commonplace plan provisions that are independent of the GASC Requirement, to make clear that denials based on those provisions would not qualify for Subclass membership. *See* Mot. 5 (describing Pl.'s Ex. 3). Plaintiff has clearly and consistently stated that any Class member whose denial was based on *any* "wholly independent" ground—whether restated in the Guidelines or not—would be excluded from the Subclass, Mot. 17, which is precisely what is required for seeking a reprocessing remedy under *Wit III*. UBH does not dispute that the provisions identified in Exhibit 3 restate plan terms that are independent of the plans' GASC Requirement. Opp. 13. Nor does UBH assert that the Guidelines restate any other plan terms that are independent of the GASC Requirement. *Id*.

**III.    WHETHER THE SUBCLASS MEMBERS "COULD HAVE BEEN PREJUDICED" BY BEING DENIED COVERAGE BASED SOLELY ON THE CHALLENGED GUIDELINE CRITERIA IS A COMMON QUESTION.**

Contrary to UBH's self-servingly distorted interpretation of *Wit III*, Opp. 15-16, Plaintiff does not have to rely on individualized proof to establish that the Subclass members could have been prejudiced by UBH's use of the challenged Guideline criteria to deny their claims. Instead, evidence common to the Class as a whole will prove that the challenged Guideline criteria— which comprise virtually all of the clinical decision criteria in the Guidelines, *see* Pl.'s Ex. 6—

made UBH's Guidelines excessively narrow and restrictive,[9] which in turn made denials far

more likely than if UBH had faithfully applied GASC.[10] This common evidence will prove

exactly what UBH says Plaintiff has to prove: that "the use of the 2017 LOCGs 'could have

prejudiced' a [Subclass] member's right to benefits *in comparison to the 'proper standard.'*"

Opp. 6 (quoting *Wit III*, 79 F.4th at 1084). Since, by definition, the challenged Guideline criteria

were UBH's only reason for denying coverage to the Subclass Members, no individualized

inquiry is needed to know that each Subclass member "could have been prejudiced" by UBH's

use of those Guideline criteria.

## IV.    THE MEMBERS OF THE PROPOSED SUBCLASS CAN BE ASCERTAINED THROUGH A MANAGEABLE PROCESS.

Much of UBH's argument, though framed as an attack on commonality, actually goes to

the question of ascertainability: whether the Court can, through a manageable process, identify

the Class members who must be excluded from the Subclass to ensure that those who remain

---

[9] The unchallenged, affirmed factual findings in *Wit* establish that "in every version of the Guidelines in the class period, and at every level of care that is at issue in this case"—thus, including the 2017 LOCGs at issue here—the Guidelines placed "excessive emphasis on addressing acute symptoms and stabilizing crises while ignoring the effective treatment of members' underlying conditions," *Wit* FFCL, 2019 WL 1033730, at *22 (¶ 82); *see also id.* at *22-28 (¶¶ 83-106); failed to "address the effective treatment of co-occurring conditions," *id.* at *28-29 (¶¶ 107-109); failed to "err on the side of caution in favor of higher levels of care when there is ambiguity" and "push[ed] patients to lower levels of care where such a transition is safe even if the lower level of care is likely to be less effective," *id.* at *29-31 (¶¶ 110-116); precluded "coverage for treatment to maintain level of function," *id.* at *31-33 (¶¶ 117-124); precluded coverage "based on lack of motivation," *id.* at *33-34 (¶¶ 125-129); failed "to address the unique needs of children and adolescents," *id.* at *34 (¶¶ 130-132); used "an overly broad definition of 'custodial care,'" "coupled with an overly narrow definition of 'active' treatment and 'improvement,'" to curtail coverage, *id.* at *34-39 (¶¶ 133-148); and "simply [did] not provide criteria for coverage of services" at lower-intensity levels of residential treatment for substance use disorders, thereby requiring all patients to meet criteria for the most intensive level for coverage to be approved, *id.* at *40-42 (¶¶ 150-156).

[10] The district court further found in *Wit* that the net effect of all these deviations from generally accepted standards of care was to dramatically narrow the scope of coverage otherwise available under the Plans. *See, e.g., Wit* FFCL, 2019 WL 1033730, at *22, 24, 28, 31, 33, 41, 48 (¶¶ 82, 89, 106, 117, 124, 154, 183). *See also Wit III*, 79 F.4th at 1085 (noting UBH did not challenge on appeal this Court's "detailed findings illustrating that many provisions of the Level of Care Guidelines were **more restrictive** than GASC") (emphasis added).

satisfy the *Wit III* standard. *See* Opp. 2, 9, 11, 14-17.[11] Oddly enough, UBH argues that its own

denial letters are so incomprehensible that it is impossible to glean UBH's reasons for denial

from them, crowing that "the clinical reasonings stated in the benefit letters from the Sample

Class are rife with language that cannot be tied to particular portions of the LOCGs." Opp. 16.

While UBH is right to concede that its denial letters failed to satisfy ERISA's notification

requirements, it is wrong to pitch its deficient letters as a get-out-of-jail-free card.

### A.    As a Matter of Law, UBH's Denial Letters are Conclusive Proof of All of UBH's Reasons for Denial.

As Plaintiff explained in her opening brief, Mot. 15 n.12, *id.* at 17, when UBH denied a

benefit claim, it was required by law to send the participant a written notification setting forth,

"in a manner calculated to be understood by the participant," ***all*** the reasons for the denial. 29

U.S.C. § 1133(1); 29 C.F.R. § 2560.503-1(g)(1).[12] UBH's denial letters were required to state the

"specific reason or reasons" for denial and include a "[r]eference to the specific plan provisions

on which the determination is based." 29 C.F.R. § 2560.503-1(g)(1)(i)-(ii). If UBH relied on an

"internal rule, guideline, protocol, or other similar criterion," the denial letter had to (at least)

identify the guideline and offer to provide it. *Id.* at § 2560.503-1(g)(1)(v)(A). And if UBH denied

coverage for clinical reasons, the letter had to explain the "clinical judgment for the

determination, applying the terms of the plan to the claimant's medical circumstances." *Id.*

§ 2560.503-1(g)(1)(v)(B). As Plaintiff argued, the upshot of these requirements is that UBH's

denial letters are all the evidence needed to identify UBH's reasons for denying coverage to each

Class member. Mot. 17-18.

UBH does not dispute this point—it just ignores it. Instead, UBH argues that the only

---

[11] UBH does not offer any distinct arguments about Rule 23's typicality or adequacy requirements, instead merely repeating or incorporating its arguments about commonality and ascertainability. *See* Opp. 10-11, 15-16 (as to typicality); *id.* 10-11, 20 (as to adequacy). UBH does not mention numerosity at all.

[12] Common proof—i.e., unchallenged findings of fact from *Wit*, and the documents and testimony from UBH witnesses on which those findings were based—establishes that during the Class Period, it was, in fact, UBH's standard operating procedure to include **all** of its reasons for denial in its denial letters. *See, e.g.*, Mot. 18 (citing *Wit* FFCL, 2019 WL 1033730, at *13 (¶ 50)).

way to determine UBH's grounds for denying coverage in any given case is to look **behind** the denial letter and scrutinize the complete administrative record, including UBH's internal notes that it never shared with the claimant. *See*, *e.g.*, Opp. 14, 25. That is just wrong as a matter of law. Indeed, courts in this Circuit have made clear that ERISA administrators are not allowed, in litigation, to raise new reasons for denial that they failed to communicate to the claimant during the administrative process. *See*, *e.g.*, *Harlick v. Blue Shield of California*, 686 F.3d 699, 719–20 (9th Cir. 2012); *Dresel v. Pension Plan of Pac. Nw. Lab'ys , Battelle Mem'l Inst.*, 708 F. App'x 326, 327 (9th Cir. 2017). Even if the Court were deciding liability on a *de novo* review (which is not the standard here), it would still be reversible error for this Court to affirm UBH's denials based on "new rationales" that UBH "did not assert during the administrative process." *Collier v. Lincoln Life Assurance Co. of Boston*, 53 F.4th 1180, 1182 (9th Cir. 2022). UBH offers no authority to support its self-serving argument to the contrary.

### B.    UBH's Denial Letters Are More Than Clear Enough to Identify which Class Members Are Excluded from the Subclass.

UBH's lead argument is that its own denial letters are so incomprehensible that understanding them is entirely "subjective." Opp. 2, 8, 11, 13, 15, 25. But, as noted above, ERISA not only requires administrators to set forth in writing **all** their grounds for denial, but also to do so "in manner calculated to be **understood by the participant**." 29 U.S.C. § 1133(1) (emphasis added); *see also* 29 C.F.R. § 2560.503-1(g)(1); Mot. 17. As the Ninth Circuit has explained, ERISA requires that "the reason for the denial must be stated in reasonably clear language" because only such clarity will enable "a meaningful dialogue between ERISA plan administrators and their beneficiaries." *Booton v. Lockheed Med. Benefit Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997); *see also*, *e.g.*, *D. K. v. United Behav. Health*, 67 F.4th 1224, 1239 (10th Cir. 2023), *cert. denied*, 144 S. Ct. 808 (2024) (ERISA administrator must "couch its rulings in terms that are responsive and intelligible to the ordinary reader"). In short, the denial letters mean what they objectively say in plain English, construed as an ordinary lay person would understand them.

Grasping at straws, UBH offers an evidence-free assessment of the Sample Members' denial letters in which UBH's counsel baldly asserts that the letters' clinical reasoning paragraphs show UBH wasn't *really* applying its Guidelines at all, but rather was relying on GASC-compliant criteria like the ASAM Criteria, LOCUS, and CALOCUS. *See generally* Holmer Decl., Ex. 3. This is exactly the sort of incredible assertion UBH's witnesses made at trial in *Wit*, and which the *Wit* court rejected, finding instead "that UBH employees apply the Guidelines as written," *Wit* FFCL, 2019 WL 1033730, at *10 (¶ 37), and that "there is no evidence in the record that the words in the Guidelines can be ignored by the Peer Reviewers when they are in conflict with generally accepted standards of care – or that they are, in fact, used that way." *Id.* at *8 (¶ 28) (rejecting as "not credible" the contrary testimony of UBH's retained expert). *See also id.* (¶ 33) (rejecting testimony of UBH's corporate designee that "clinicians were trained to apply the Guidelines in a manner that was inconsistent with their plain meaning" as "not credible" and "not supported by other evidence introduced at trial"); *id.*at 8-9 (¶32, ¶33). UBH is bound by those unchallenged, affirmed factual findings. *Syverson v. Int'l Bus. Machines Corp.*, 472 F.3d 1072, 1078 (9th Cir. 2007) (stating elements of "offensive nonmutual issue preclusion"). The Court should disregard Exhibit 3 to the Holmer Declaration in its entirety.

### 1.    When UBH Denied Coverage Based on an Independent Ground, its Denial Letter Says So.

It is undisputed that the Class members' Plans contain coverage requirements, exclusions, and limitations other than the GASC Requirement. *See generally*, *e.g.,* Opp. 4; Mot. 5. What UBH fails to acknowledge, however, is that if UBH relied on any of those other plan terms to deny coverage, then ***as a matter of law***, it was required to say so—in clear, comprehensible language that referenced "the ***specific plan provisions***" UBH was applying. 29 C.F.R. § 2560.503-1(g)(1)(ii) (emphasis added). If a denial letter does not specifically and comprehensibly refer to any independent plan term, therefore, the Court must conclude that the denial was not based on any independent plan term.

Contrary to UBH's objections, verifying whether a denial letter invoked a plan term that

is "independent" of the GASC Requirement is neither "subjective" nor especially difficult—

again, it just requires reading the words in the denial letters according to their ordinary meaning.

For example, UBH cites some terms appearing in a handful of Sample Members' plans, Opp. 4,

but a mere glance at those members' denial letters confirms that UBH did not deny coverage

based on those plan terms. *Compare* Opp. 4 (█████████████████████████████████

████████████) *with* Pl.'s Ex. 14 at 1-4 ███████████████████████████████████

████████████████████████████████████████████████████████████);

*compare also* Opp. 4 (███████████████████████████████████████████████

███████████) *with* Pl.'s Ex. 14 at 11-12 (no reference in Member 10111's denial letter to that

requirement).[13]

     By contrast, the parties agree that Sample Member 11574's denial letter ████████████

████████████████████████████████████████████████. *Compare* Opp. 4 (citing to exclusion in

Sample Member 11574's plan) *with* Pl.'s Ex. 14 at 58 (Member 11574's denial letter) ████████

███████████████████████████████████████████████████████) (emphasis added); *id.* Pl.'s Ex. 9 at 8 (███████████████████████

███████████████████████████████). It is for that reason that Sample

Member 11574 is not a member of the Subclass (and UBH does not dispute that conclusion).

Other denials like this could be identified with equal ease.

     UBH vainly tries to make this plain-reading exercise seem subjective by pretending not

to know what independent ground was cited in Sample Member 12782's denial. Opp. 14. But as

Plaintiff explained, Mot. 19, UBH initially denied coverage to that member based on ██████████

██████████████████████████████████████████. The letter states:

████████████████████████████████████████████████████████████.

────────────────────────────

[13] UBH also cites to the exclusion for custodial care in Member 12241's plan. *See* Opp. 4.
Member 12241 is not a class member because their denial was overturned in full on appeal. *See*
Pl.'s Ex. 12 at 2. In any case, that member's denial letter does not refer to "custodial" care. 2d
Reynolds Decl., ¶ 6 & Ex. 19.

████████████████████████████████████████

Pl.'s Ex. 14 at 102 (emphasis added). UBH does not dispute that ████████████ is an independent, administrative ground for denial that is separate from the GASC Requirement and not implemented through UBH's Guidelines. *See*, *e.g.*, Pl.'s Ex. 15-A at 903-0004. Instead, UBH argues—based in part on a stray reference in its internal case notes—that the denial was *actually* based on the LOCGs. Opp. 14. But the denial letter does not say that, as UBH is forced to concede. *Id*. (████████████████████████. Nor does the letter even state ████████████ as UBH falsely asserts. *Id*. The only

████████████████████████████████████████

████████████████████████████████████████

████████████████████ Pl's Ex. 14 at 103. But that paragraph cannot reasonably be understood as identifying any "specific rule, guideline, protocol, or other similar criterion" on which UBH relied, as UBH was required to do when it issued a clinical denial. 29 C.F.R. § 2560.503-1(g)(1)(v)(A).

By contrast, Member 12782's ***appeal*** denial letter explicitly states ████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████ Pl.'s Ex. 14 at 104 (emphasis added). Tellingly, UBH does not disagree with Plaintiff about the denial reasons stated in the *appeal* letter, *see* Opp. 14, or the simple manner in which it can be ascertained.

### 2. When UBH Denied Coverage Based on an Unchallenged Guideline Criterion, its Denial Letter Says So.

The plain language of UBH's denial letters is also more than sufficient to determine whether UBH denied coverage based on one of the few Guideline criteria Plaintiff does not challenge in this case. Again, when UBH denied coverage under the Guidelines, its denial letter was required not only to identify the "specific. . . guideline" UBH used, but also to explain the "clinical judgment for the determination, applying the terms of the plan to the claimant's medical circumstances." 29 C.F.R. § 2560.503-1(g)(1)(v)(A) & (B).

Plaintiff identified one Sample Class Member whose denial cited Guideline criteria that Plaintiff does not challenge. Mot. 20 (discussing Member 10399's denial). UBH does not dispute that Plaintiff correctly identified the reason for Member 10399's denial or that the member should be excluded from the Subclass. Nor does UBH contend that this denial would otherwise be impacted by Plaintiff's Guideline challenges in this case. *See* Holmer Decl., Ex. 3 at 11.

### C. If a Denial Letter Does Not Clearly State that UBH Relied on an Independent Ground or Unchallenged Criterion, the Court Should Not Assume it Did So.

Effectively admitting that it systematically violated ERISA's notice requirement by failing to specify in its denial letters exactly which Guideline provisions it relied upon, UBH seeks to avoid the natural consequence of its failures by shifting the burden to Plaintiff to prove a negative: that UBH did not (secretly) rely on independent plan terms or unchallenged Guideline provisions. But that argument runs headlong into *Harlick*. If an administrator is not allowed to avoid liability by *asserting* in litigation a new, post-hoc rationale for its denials, 686 F.3d at 719–20, a plaintiff cannot possibly be required to negate *unasserted* new, post-hoc rationales. Such a backwards rule makes even less sense for the proposed remedies Subclass, where the Court will be determining appropriate relief only *after* finding that UBH abused its discretion with respect to its *stated* rationale. Not only is UBH's impossible standard of proof contrary to controlling law, adopting it would encourage administrators to draft denial letters as vaguely as possible in the hope that courts would be unable to *rule out* the possibility of some valid ground for denial, directly undermining ERISA's protective purposes. *See*, *e.g.*, *Mitchell v. CB Richard Ellis Long*

*Term Disability Plan*, 611 F.3d 1192, 1199 n.2 (9th Cir. 2010) ("The purpose of ERISA's requirement that plan administrators provide claimants with the specific reasons for denial is undermined where plan administrators have available sufficient information to assert a basis for denial of benefits, but choose to hold that basis in reserve rather than communicate it to the beneficiary.") (quotation marks omitted).

### D. The Eventual Need for Proof of Subclass Membership Does Not Preclude Certification of the Subclass.

Even if some limited factfinding may be needed to confirm Subclass membership in certain instances, that does not preclude certification. To the contrary, "Rule 23 specifically contemplates the need for such individualized claim determinations after a finding of liability." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1131 (9th Cir. 2017) (reasoning that "[a]t the claims administration stage, parties have long relied on 'claim administrators, various auditing processes, sampling for fraud detection, follow-up notices to explain the claims process, and other techniques tailored by the parties and the court' to validate claims") (quoting *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 667 (7th Cir. 2015)). *See also Levya v. Medline Indus. Inc.*, 716 F.3d 510, 513-14 (9th Cir. 2013) (holding that the need for individualized damages determinations after lability has been adjudicated does not preclude class certification).

The mere fact that each Subclass member's denial letter may eventually have to be reviewed to confirm that they qualify for membership does not make the Subclass unmanageable. *See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2012 WL 253298, at *3 (N.D. Cal. Jan. 26, 2012) (the need for "proof of class membership" does not "undermine the ascertainability of the class" if the class is "defined by objective criteria").

Nor would the parties, or the Court, need to assess potential Subclass membership as to every member of the Class, as noted above. The process of confirming Subclass membership would likely begin by offering Class members an opportunity to submit proof that they paid for residential treatment for which benefits were denied; only Class members who established such out-of-pocket payments would be eligible for Subclass membership in any event. *See* Mot. 14

(proposed Subclass definition).[14] The parties would then review the denial letters only of the subset of members who submitted such proof of payment to determine whether there is any dispute as to Subclass membership. The Court, or a Special Master, would then resolve any such disputes—again, relying solely on the letters and (if needed) plans. This process is straightforward, minimally burdensome, and eminently manageable.

## V.    UBH'S DEFENSES DO NOT PRECLUDE CERTIFICATION OF THE SUBCLASS

The undeveloped and unsupported arguments UBH tacks onto the end of its brief, Opp. 22-24, fail to demonstrate that any of its affirmative defenses present individualized issues. They do not.

_Assignments_: UBH's argument that an assignment of an ERISA claim somehow makes the claim itself cease to exist has no support in the law. Rather, the right to relief would simply belong to the assignee, as UBH's own cases reflect. _See S. Coast Specialty Surgery Ctr._, 90 F.4th 953, 958-59 (9th Cir. 2024). And as UBH's own brief makes clear, it has records reflecting which Class members executed assignments. Opp. 23; Def.'s Ex. 2 (Sample Member 12696's assignment of benefits to her provider).

_Exhaustion_: Because UBH failed to comply with the ERISA Claims Procedure regulation—e.g., by failing across-the-board to include required information in its denial letters—_all_ the Class members "shall be deemed to have exhausted the administrative remedies available under the plan." 29 CFR § 2560.503-1(l). _See also_, _e.g._, _Bilyeu v. Morgan Stanley Long Term Disability Plan_, 683 F.3d 1083, 1088–89 (9th Cir. 2012) (when a plan "fails to establish or follow 'reasonable claims procedures' consistent with the requirements of ERISA, a claimant need not exhaust because his claims will be deemed exhausted") (citing _Barboza v. California Ass'n of Pro. Firefighters_, 651 F.3d 1073, 1076 (9th Cir. 2011)). Other grounds for excusing exhaustion, like futility and inadequacy of the administrative remedy, likewise present common _legal_ questions, not individualized _factual_ ones. _See_, _e.g._, _Jackson v. Guardian Life Ins. Co. of_

---

[14] UBH does not argue that this portion of the Subclass definition is unmanageable.

1  *Am.*, No. 22-CV-03142-JSC, 2023 WL 2960290, at *3 (N.D. Cal. Apr. 13, 2023) ("Futility,

2  inadequate remedies, and unreasonable claims procedures each excuse exhaustion.") (citing

3  *Amato v. Bernard*, 618 F.2d 559, 568 (9th Cir. 1980)).

4       *Limitations*: UBH's disregard for its legal obligations under ERISA precludes it from

5  enforcing any contractual limitations periods included in the plans, as well, because UBH

6  systematically failed to notify the Class members of any such periods in its denial letters. *See*,

7  *e.g.*, 29 C.F.R. § 2560.503-1(g)(1)(iv) (denial letter must set forth a "description of the plan's

8  review procedures and the time limits applicable to such procedures"); Pl.'s Ex. 14 (no

9  limitations period stated in denial letters); *Santana-Diaz v. Metro. Life Ins. Co.*, 816 F.3d 172,

10  184–85 (1st Cir. 2016) ("[A]s a consequence of MetLife's failure to include the time limit for

11  filing suit in its final denial letter, the limitations period in this case was rendered inapplicable.");

12  *Mirza v. Ins. Adm'r of Am., Inc.*, 800 F.3d 129, 137 (3d Cir. 2015); *Encompass Off. Sols., Inc. v.*

13  *Louisiana Health Serv. & Indem. Co.*, 919 F.3d 266, 281 (5th Cir. 2019); *Moyer v. Metro. Life*

14  *Ins. Co.*, 762 F.3d 503, 505 (6th Cir. 2014).[15]

15  **VI.    CONCLUSION**

16  For the reasons set forth above and in Plaintiff's Motion, Plaintiff respectfully requests that the

17  Court modify the Class definition; certify the proposed Reprocessing Subclass; appoint Plaintiff

18  as the Class Representative for the Reprocessing Subclass; and appoint Zuckerman Spaeder LLP

19  and Psych-Appeal, Inc. as co-lead counsel for the Subclass.

20  \\

21  \\

22  \\

23

24  ───────────────────
[15] If a plan has no limitations period or the period does not apply because UBH failed to disclose

25  it, courts borrow the forum state's limitations period on actions arising from written contracts.

26  Since every single state's limitations period for such claims is three years or longer, none would

bar this case, which was filed about two years and five months after the ***start*** of the class period.

27  *See generally*, *e.g.*, *Civil Statutes of Limitations: 50-State Survey*, Justia, (June 2023),

https://www.justia.com/trials-litigation/lawsuits-and-the-court-process/civil-statutes-of-

28  limitations-50-state-survey/ (last visited Mar. 14, 2025) (collecting citations).

1  Dated: March 14, 2025

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

**ZUCKERMAN SPAEDER LLP**

/s/ Caroline E. Reynolds
Caroline E. Reynolds (pro hac vice)
D. Brian Hufford (pro hac vice)
Jason S. Cowart (pro hac vice)

**PSYCH-APPEAL, INC**.
Meiram Bendat (Cal. Bar No. 198884)

Counsel for Plaintiff and the Class