UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARY JONES, et al.,
Plaintiffs,
v.
UNITED BEHAVIORAL HEALTH,
Defendant.

Case No. 19-cv-06999-RS

**ORDER GRANTING PLAINTIFFS' MOTION AND DENYING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT**

Mary Jones, proceeding pseudonymously and through her mother, brings this certified class action against United Behavioral Health (UBH) to redress alleged ERISA violations related to UBH's development and implementation of its 2017 Level of Care Guidelines ("the 2017 Guidelines"). Jones and the class assert a claim for denial of benefits and a claim for breach of fiduciary duty. Each party moves for summary judgment on both claims. For the reasons that follow, Plaintiffs' motion is granted as to both claims, and Defendant's motion is denied—except as to the subcategory of class members who failed to comply with explicit contractual requirements to exhaust their administrative remedies.

Plaintiffs can rely in part on the district court's findings in *Wit v. United Behavioral Health*, No. 14-cv-02346, 2019 WL 1033730 (N.D. Cal. Mar. 5, 2019), which the Ninth Circuit affirmed in part and reversed in part in *Wit v. United Behavioral Health*, 79 F.4th 1068 (9th Cir. 2023) ("Wit III"). The *Wit* plaintiffs ultimately failed on their denial of benefits claim but prevailed on the breach of fiduciary duty claim. Contrary to UBH's arguments, Plaintiffs here can distinguish their case based on the narrowed class definition, thus avoiding the fate of the *Wit*

United States District Court
Northern District of California

plaintiffs. Defendant's arguments based on *Wit III* and its successor mandamus order, *Wit IV*, miss the mark and ultimately put more weight on those opinions than they can bear. Plaintiffs are thus entitled to summary judgment on the denial of benefits claim. They are also entitled to summary judgment on the breach of fiduciary duty claim, based on the *Wit* district court's findings on remand. There, the *Wit* class successfully established that UBH breached its fiduciary duty of loyalty and care by developing guidelines, including the 2017 Guidelines, to serve its own financial interests rather than the interests of its members. UBH is precluded from relitigating that factual finding and the resultant legal liability in this case under the doctrine of offensive nonmutual collateral estoppel.[1]

## I. BACKGROUND

UBH is a managed healthcare organization which administers insurance benefits for mental health conditions and substance use disorders for commercial health benefit plans across the country. In this role, UBH reviews coverage requests submitted by members and determines whether and to what extent the treatment is covered under those members' plans. UBH has discretion to interpret the plan terms, limitations, and relevant exclusions in making these coverage determinations.

During the relevant time period, UBH employed a two-step process for determining whether treatment was covered. First, a UBH "care advocate" assessed whether there was an administrative (*i.e.*, non-clinical) basis to deny coverage. If there was no administrative basis to do so, a UBH peer reviewer conducted a clinical review to determine the necessity of the requested treatment. UBH peer reviewers used the 2017 Guidelines to undertake the clinical review for any request for treatment submitted under a plan that limited coverage to medically necessary services. The 2017 Guidelines applied uniformly across all these plans.

Jones herself was a member of an ERISA-governed health plan administered by UBH. In

[1] The parties' administrative motions to file their motions and briefs partially under seal are granted, except to the extent information sought to be sealed is discussed in this order.

2017, she was admitted to a residential treatment center because she was suffering from major depressive disorder, post-traumatic stress disorder, and other mental health ailments. Jones's treatment was initiated and guided by her mother, Sandra Tomlinson. When Jones was admitted to the in-patient facility, it was Tomlinson who signed the key documents. Among those documents was an "Assignment of all Rights and Benefits," which stated that it was "Accepted and Agreed" by Jones. It provided:

> In exchange for and in connection with any and all of the service(s) provided to me ("Services") by [the in-patient facility], I, the undersigned, hereby irrevocably assign the Provider all of my rights, benefits, privileges, protections, claims and any other interest of any kind whatsoever, without limitation, including, and without limitation, direct payments to the Provider for the Services, appeal rights, rights of fiduciary duties, rights to sue, rights to payment[,] rights to penalties or interests, rights to plan documents, and rights to information, notices, and disclosures from any source, (collectively "Rights") that I had, have or may have in the future pursuant to or in connection with any insurance plan, health benefit plan, trust, fund, or any other source of payment, insurance, indemnity or health or medical coverage of any kind (collectively "Health Coverage"), such that I am hereby transferring all and retaining none of these Rights under any Health Coverage to which I am now, previously, or may be entitled to in the future.

UBH initially approved Jones's request for coverage of her treatment. However, roughly five weeks into her stay, UBH determined—citing the 2017 Guidelines—that residential treatment was no longer medically necessary and that Jones could receive treatment in a partial hospitalization setting. Jones unsuccessfully appealed that decision. Nevertheless, she remained in the residential facility for roughly one year. Her parents covered all the out-of-pocket expenses for her treatment.

Jones brought this lawsuit in 2019, broadly alleging that UBH's development and implementation of the 2017 Guidelines were inconsistent with the requirements of ERISA. "ERISA is a federal statute designed to regulate 'employee benefit plan[s].'" *Wit III*, 79 F.4th at 1081 (quoting 29 U.S.C. §1003(a) (alternation in original)). In ERISA, Congress did not require employers to offer benefit plans to their employees, nor did it prescribe which benefits an employer must provide should it choose to offer a benefit plan. *See id.* Rather, ERISA's aim is "that employees will not be left empty-handed once employers have guaranteed them certain

United States District Court
Northern District of California

benefits." *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996). That is, ERISA is designed to ensure that "if a worker has been promised a defined [benefit]—and if he has fulfilled whatever conditions are required to obtain a vested benefit—he actually will receive it." *Nachman Corp. v. Pension Benefit Guaranty Corporation,* 446 U.S. 359, 375 (1980).

To that end, ERISA contains a robust civil enforcement scheme. *See* 29 U.S.C. § 1132. That scheme permits a plan "participant or beneficiary" to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *Id.* § 1132(a)(1)(B). Among those rights is that to have a fiduciary, such as UBH, "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries" and "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Id.* § 1104(a)(1)(A), (B). Included in this obligation is the duty to comply with the terms of an ERISA-governed plan. *See Wit III*, 79 F.4th at 1088.

Jones asserted two claims. First, she contended that UBH crafted the 2017 Guidelines to minimize UBH's ultimate financial burden by over-indexing clinical coverage decisions on the requested treatment's ability to manage acute symptoms of the underlying condition rather than to treat chronic illnesses. She averred that this decision violated ERISA's fiduciary-duty provisions by putting UBH's financial interests above the "interest of the participants and beneficiaries." 29 U.S.C. 1104(a)(1)(A). Second, she brought a claim for arbitrary and capricious denial of benefits under 29 U.S.C. § 1132(a)(1)(B) or, in the alternative, 29 U.S.C. § 1132(a)(3). She averred that UBH's use of the 2017 Guidelines to make clinical coverage decisions violated the terms of her plan, which she said required UBH to make coverage decisions consistent with generally accepted standards of care (GASC). She sought reprocessing of their claims under ERISA-compliant guidelines, declaratory relief, and injunctive relief.

Jones succeeded in certifying a class to pursue both claims. The class included:

Any participant or beneficiary in a health benefit plan governed by ERISA whose

> request for coverage of residential treatment services for a mental illness or substance use disorder was denied by UBH, in whole or in part, on or after June 2, 2017, based upon UBH's 2017 Level of Care Guidelines ("LOCGs") or upon a Coverage Determination Guideline that incorporates the 2017 LOCGs, and whose request was not subsequently approved, in full, following an administrative appeal.

Shortly after the class was certified, this case was stayed pending resolution of *Wit III* in the Ninth Circuit. *Wit III* arose out of another class action—referred to here as the "*Wit* Litigation"—challenging UBH's guidelines. Aside from the class period—the *Wit* Litigation covered UBH's conduct from May 22, 2011, through June 1, 2017—the *Wit* Litigation and this case were effectively identical. The *Wit* Plaintiffs brought facial challenges to every version of UBH's guidelines from 2011 up to and including the 2017 Guidelines. They succeeded in certifying three classes which each brought claims for breach of fiduciary duty and for arbitrary and capricious denial of benefits under the same statutory provisions as here. To redress their former claim, the *Wit* Plaintiffs sought injunctive and declaratory relief. To redress the latter claim, they sought reprocessing of their denied claims, declaratory relief, and injunctive relief.

The *Wit* Plaintiffs earned a resounding victory in the district court. The certified class, as relevant here, encompassed any member of an ERISA-governed health plan whose request for mental health or substance use disorder treatment was denied by UBH, in whole or in part, based on UBH's Level of Care Guidelines. To avoid individualized issues that would have undercut certification, the *Wit* Plaintiffs framed their denial of benefits claim as sounding in denial of process—that is, so long as UBH relied even in part on the allegedly erroneous guidelines, the plaintiffs averred they were denied their right to have their coverage requests adjudicated in an ERISA-compliant fashion.

After a 10-day bench trial, the district court issued extensive findings of fact and conclusions of law. *See Wit v. United Behav. Health*, No. 14-CV-02346-JCS, 2019 WL 1033730 (N.D. Cal. Mar. 5, 2019). In every relevant respect, the class prevailed. The district court found "that in every version of the Guidelines in the class period, and at every level of care that is at issue in this case, there is an excessive emphasis on addressing acute symptoms and stabilizing crises while ignoring the effective treatment of members' underlying conditions" which resulted in

"a significantly narrower scope of coverage than is consistent with generally accepted standards of care." *Id.*, at *22. Consequently, the district court determined that UBH "breached its fiduciary duty by violating its duty of loyalty, its duty of due care, and its duty to comply with plan terms by adopting Guidelines that are unreasonable and do not reflect generally accepted standards of care." *Id.*, at *53.

As to the denial of benefits claim, the district court concluded the plan terms "requir[ed] UBH to use generally accepted standards of care" in making coverage decisions but that the guidelines "were more restrictive than generally accepted standards of care." 2019 WL 1033730, at *55. The district court thus determined that the guidelines were "unreasonable and an abuse of discretion." *Id.* In a separate remedies order, the district court ordered declaratory and injunctive relief as well as reprocessing of the wrongly denied claims.

UBH appealed the district court's order to the Ninth Circuit, which advanced four holdings relevant here. *See Wit III*, 79 at 1076. First, it held that the district court erred in certifying the classes as to the denial of benefits claim because the classes were overbroad, including some claimants whose denials were grounded solely on unchallenged provisions of the guidelines and others denied based on a mix of challenged and unchallenged reasons. *See id.* at 1084-86. Such claimants had not established that they "were denied a full and fair review," *id.* at 1085, so remand for reprocessing of their claims would be a "useless formality." *Id.* (quoting *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1095–96 (9th Cir. 1985)).

Second, the Ninth Circuit reversed—without remand—the district court's merits ruling on the plaintiffs' denial of benefits claim. *Wit III*, 79 F.4th at 1086-89. To start, the panel explained that the district court's "error in [its] denial of benefits class certification order"—declining to restrict the class to those whose claims were denied based solely on challenged guidelines—"infected its merits and remedy determinations." *Id.* at 1086. As a result of that foundational misstep, the district court had erred by ordering remand "anytime UBH referenced *any* portion of the Guidelines in denying the claims." *Id.* (emphasis added). Even on the terms of plaintiffs' arguments, such relief would only have been appropriate for those claimants whose denial was

based solely on the *challenged* portions of the guidelines, because only those class members might have been prejudiced by the flawed guidelines. *See id.* at 1084-86.

The panel also pointed to a second flawed premise that, combined with the unduly broad class, made the district court's remedy order inappropriate. The district court directed UBH during reprocessing to determine only whether a claimants' care was consistent with GASC, and ordered UBH to pay *all* claims meeting that condition, without regard to other factors that may have required denial. In other words, this order effectively presumed that the plans required UBH to cover all care consistent with GASC, even if some parts of its order duly acknowledged that "consistency with the GASC was just one requirement of coverage." *Id.* at 1088. In effect, the order transformed a necessary condition into a sufficient one. The Ninth Circuit held that interpretation of the plans to be clearly erroneous, because the plan terms "did not compel UBH to cover *all* treatment that was consistent with GASC." *Id.* Regardless of whether such a read of the plans was plausible, the court had erred by failing to give UBH's interpretation the deference it was due on an abuse-of-discretion standard. From that deferential stance, the panel held that UBH's read of the plans was valid, despite the insurer's structural and financial conflicts of interest, because the plans' plain language did not require UBH to cover all care consistent with GASC. *Id.* at 1087-88.

However, the court of appeals did not disturb the district court's conclusions that (1) the guidelines were developed to implement the provision in each plan requiring covered care to be consistent with GASC or (2) the guidelines were narrower than the true GASC. *See Wit III*, 79 F.4th at 1088, 1088 n.6. Rather, those findings were simply insufficient to support the district court's overbroad order. Since UBH was entitled under the plan terms to deny claims even for some care that was consistent with the true GASC, mere departures from GASC were insufficient to show prejudice—at least for those plaintiffs whose claims were denied for multiple, independent reasons. The panel did not address whether redefining the class would fix the issues that required reversal, and instead simply reversed the denial of benefits verdict without remand.

The district court initially interpreted the reversal as including a remand to adjust its class

certification, merits, and remedies orders, specifically by advancing under a narrower class definition that excluded claimants whose denial letters relied on an unchallenged basis in rejecting coverage. *See Wit v. United Behav. Health*, No. 14-CV-02346-JCS, 2023 WL 8717488, at *26–29 (N.D. Cal. Dec. 18, 2023). The district court reasoned that it had power under Rule 23(c)(1)(C) to amend the class because the original final judgment had been reversed, requiring the district court to re-enter final judgment. *Id.* The court also pointed to the underlying policy behind that rule, holding that because the class was shrinking not growing, there was no unfairness to defendants as contemplated by the "rule against one-way intervention." *Wit v. United Behavioral Health*, 2023 WL 8717488, at *30 (N.D. Cal. Dec. 18, 2023). However, that redirection ended in mandamus. *See United Behav. Health v. United States Dist. Ct. for N. Dist. of California* (*Wit IV*), No. 24-242, 2024 WL 4036574 (9th Cir. Sept. 4, 2024). The Ninth Circuit explained that it had reversed the class certification and merits determinations on the denial of benefits without remand, adding that its decision in *Wit III* had "definitely resolved" that claim. *Id.* at *2. As such, the district court lacked jurisdiction to allow plaintiffs to relitigate either the class definition or the merits of the denial of benefits claim. *Id.*

Third, the panel addressed the merits of the plaintiffs' fiduciary duty claim. The panel held that, to the extent the judgment on that claim relied on the district court's view that "the Guidelines impermissibly deviated from GASC," *Wit III*, 79 F.4th at 1088 n.7, it could not stand, *see id.* at 1089. That was because, again, the plans did not require coverage for all treatment that comports with GASC, so UBH had not necessarily breached its fiduciary duty to comply with plan terms merely by denying coverage through its application of the guidelines. However, the panel acknowledged that "this was not the only finding relevant to the district court's judgment on the breach of fiduciary duties claims." *Id.* at 1088 n.7. The panel left undisturbed the earlier findings that "financial incentives infected UBH's Guideline development process and that UBH developed the Guidelines with a view towards its own interest." *Id.* On remand, the panel left it for the district court to determine the extent to which the breach of fiduciary duty claim remained alive. On remand, the district court concluded that the claim survived in part because those undisturbed

United States District Court
Northern District of California

findings were sufficient to support judgment for the plaintiffs. In short, UBH breached its fiduciary duties by *adopting* the Guidelines, even if its application of those Guidelines in specific denials did not constitute a breach. *Wit v. United Behavioral Health*, No. 14-cv-02346, Dkt. 669, at 30-31

Finally, the panel addressed UBH's argument that the district court erred by excusing unnamed class members from exhausting administrative remedies. *See Wit III*, 79 F.4th at 1089. The panel explained that exhaustion is typically not required for a breach of fiduciary duty claim, but it is required if that claim is a disguised claim for benefits. *See id.*; *Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.*, 770 F.3d 1282, 1294 (9th Cir. 2014). The panel "remand[ed] for the district court to determine the threshold question of whether Plaintiffs' breach of fiduciary duty claim is a disguised claim for benefits subject to the exhaustion requirement." *Wit*, 79 F.4th at 1089 (internal quotation marks omitted). On remand, the district court held that exhaustion was not required. *Wit*, No. 14-cv-02346, Dkt. 669, at 51.

Turning back to this case, the developments in *Wit* necessitated revision of the original class certification order. UBH contended that the *Wit III* and *Wit IV* completely or at least mostly shut the door on pursuing a denial of benefits claim on a class-wide basis. By this view, the *Wit* Plaintiffs erred not just by crafting an overinclusive class but also by suggesting that highly individualized coverage decisions could be scrutinized *en masse*, based solely on references to the 2017 Guidelines in the denial letters. Plaintiffs saw things differently. They understood *Wit III* to establish only that a proper class must be circumscribed to exclude members whose coverage denials were based on something other than the ERISA-noncompliant 2017 Guidelines. To that end, it proposed a modified class definition for the "Reprocessing Subclass":

> Any member of the Class who incurred expenses for residential treatment for which benefits were not paid, except that the Reprocessing Subclass shall not include Class members whose written notification of denial, as reflected in UBH's records, (a) identifies a reason for denying the request for coverage other than the Class member's failure to satisfy UBH's 2017 LOCGs or a Coverage Determination Guideline that incorporates the 2017 LOCGs, and/or (b) specifies that the member's failure to satisfy the applicable Guideline was based, even in part, on a portion of the applicable Guideline that was unchallenged in this action. Members of the Reprocessing Subclass seek a reprocessing injunction to remedy

> UBH's abuse of discretion in denying their requests for coverage based upon an incorrect standard.

That modified class definition was accepted, and UBH's motion to decertify was denied, as was its petition to the Ninth Circuit for permission to file an interlocutory appeal of that ruling. ECF 154. Both parties now move for summary judgment on the denial of benefits and the fiduciary duty claims.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility of informing the district court of the basis for its motion[] and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The non-moving party must then offer evidence of such a caliber that 'a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented. The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient.'" *United States v. Wilson*, 881 F.2d 596, 601 (9th Cir. 1989) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). "The deciding court must view the evidence, including all reasonable inferences, in favor of the non-moving party." *Reed v. Lieurance*, 863 F.3d 1196, 1204 (9th Cir. 2017).

## III. DISCUSSION

### A. Jurisdiction over Named Plaintiff Jones

Defendant UBH urges on several grounds that the named Plaintiff Jones lacks standing, but these arguments are unavailing.

#### *1. Assignment of the Right to Sue*

UBH's first argument in favor of summary judgment is jurisdictional. It contends that Jones lacks standing to assert either of these claims as the named plaintiff because she irrevocably assigned her right to sue to her healthcare provider. ERISA "permits the assignment of health and welfare benefits to a healthcare provider." *S. Coast Specialty Surgery Ctr., Inc. v. Blue Cross of*

*California*, 90 F.4th 953, 958 (9th Cir. 2024). The assignment here was comprehensive, encompassing all "rights, benefits, privileges, protections, claims and any other interest of any kind whatsoever, without limitation, including, and without limitation . . . rights of fiduciary duties [and] rights to sue."

However, this assignment was not executed by Jones, as UBH concedes. It was executed by her mother, Sandra Tomlinson, despite the fact that Jones was eighteen years old at the time and not subject to any guardianship arrangement. UBH contends that these inconvenient facts are irrelevant because Tomlinson had both implied actual and apparent authority to execute the agreements on her daughter's behalf.

Under Utah law, which the parties agree govern the validity of the assignment, "implied authority . . . embraces authority to do those acts which are incidental to, or are necessary, usual, and proper to accomplish or perform, the main authority expressly delegated to the agent." *Zions First Nat. Bank v. Clark Clinic Corp.*, 762 P.2d 1090, 1095 (Utah 1988). "This authority may be implied from the words and conduct of the parties and the facts and circumstances attending the transaction in question." *Id.*

UBH cites portions of Tomlinson's deposition in which she testified to handling all "insurance items or payment items" on her daughter's behalf, but under Utah law, that is not enough to establish implied authority. That is because implied authority depends on the existence of some express authority. It is "based upon the premise that whenever the performance of certain business is confided to an agent, such authority carries with it by implication authority to do collateral acts which are the natural and ordinary incidents of the main act or business authorized." *Zions First Nat. Bank*, 762 P.2d at 1095. UBH has not pointed to any evidence that Jones ever expressly authorized Tomlinson to do anything regarding the financial management of her treatment, so there is nothing from which the authority to execute the assignment agreement could be implied.

"[A]pparent authority relates to a principal's manifestations to a third party [and] exists when a third party reasonably believes the actor has authority to act on behalf of the principal and

that belief is traceable to the principal's manifestations." *Drew v. Pac. Life Ins. Co.*, 496 P.3d 201, 214 (Utah 2021) (internal citation and quotation marks omitted). UBH contends that Tomlinson had apparent authority to execute the assignment because the uncontroverted evidence shows that she handled all the paperwork regarding her daughter's treatment and because she never told the healthcare facility that she did not have authority to sign the assignment on her daughter's behalf.

This evidence is insufficient to establish apparent authority. The existence of apparent authority is assessed from the third party's perspective (here, the healthcare facility), and the record is devoid of any direct evidence as to what the facility or its agents believed when Jones was being admitted. Second, the circumstances of Jones's admission to the facility make it unlikely that the facility's agents would have understood Tomlinson's assertion of authority to be authorized by Jones. Jones was suffering from severe mental health issues—so severe that she required institutionalization. A reasonable third party would not have understood a person in Jones's position even to be *capable* of authorizing a family member to manage assignment of her rights.

Finally, UBH argues that even if Tomlinson did not have authority to bind Jones at the time she executed the assignment, Jones subsequently ratified it. Under Utah law, "[s]ubsequent affirmance by a principal of a contract made on his behalf by one who had at the time neither actual nor apparent authority constitutes a ratification, which in general is as effectual as an original authorization." *Franklin Credit Mgmt. Corp. v. Hanney*, 262 P.3d 406, 414–15 (Utah Ct. App. 2011) (alteration in original). To be sure, ratification can be implied by "[a]ny conduct which indicates assent by the purported principal to become a party to the transaction or which is justifiable only if there is ratification." *Moses v. Archie McFarland & Son*, 230 P.2d 571, 574 (Utah 1951). However, UBH's evidence of ratification is that Jones "arrived with Tomlinson at [the healthcare facility], checked herself in, and remained there for over a year." UBH Mot., at 12. Missing, of course, from that evidence is any showing that Jones knew about the assignment of rights. She could not have ratified that of which she had no knowledge. Jones has standing to sue.

*2. Ability to Seek Prospective Relief*

Next, UBH argues that Jones cannot seek prospective relief because she is no longer a member of a UBH plan, and therefore, there is no realistic prospect that she will again experience any injury on account of the 2017 Guidelines. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). However, Jones was a member of a UBH plan at the time of certification, and at that point "the class 'acquire[s] a legal status separate from the interest asserted by [the class representative],' so that an Article III controversy now exists 'between a named defendant and a member of the [certified] class.'" *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1090 (9th Cir. 2011) (alteration in original) (quoting *Sosna v. Iowa*, 419 U.S. 393, 399, 402 (1975)). Consequently, the dissolution of the Article III controversy between the named plaintiff and the defendant does not doom the entire class action. *See id.*

UBH insists that *Pitts* and its progeny do not answer the key question, which in its view is whether Jones can pursue these claims on the class's behalf, not whether the class's claims are moot. The implication seems to be that the post-certification mootness of the named plaintiff's claim need not end the class action, but it does end the named plaintiff's ability to continue serving as the class representative. UBH cites no authority for that proposition, and as a practical matter it would undercut the ability of the class to proceed as such. To the contrary, in *Haro v. Sebelius*, the Ninth Circuit held that a class action could proceed despite the expiration of the named plaintiff's interest in the litigation, and at no point did it condition proceeding on the appointment of a new class representative. *See* 747 F.3d 1099, 1110 (9th Cir. 2014). Accordingly, no basis has been identified to disallow Jones from serving as the class representative.

*3. Standing as to the Denial of Benefits Claim*

UBH's next jurisdictional theory is that Jones lacks standing to seek reprocessing under her denial of benefits claim because her parents covered all of the out-of-pocket expenses associated with her treatment. Therefore, according to UBH, she suffered no Article III injury and stands to gain nothing from a favorable decision.

This argument reflects a misunderstanding of the controversy. Jones had a contract with UBH and alleges that UBH failed to satisfy its obligations under the contract—namely, to cover

United States District Court
Northern District of California

treatment consistent with the contract's terms. If Jones is correct, then UBH owes her money. UBH summarily asserts that "[a]ny payments that flow from reprocessing would go to Tomlinson, not Jones," but its support for that proposition comes from Tomlinson's deposition, in which she is patently guessing as to the final destination of any funds that UBH might have to pay. *See* Tomlinson Depo. Tr. at 357:13–19 ("Q: And that refund would go to you; right? A: I assume so, yes Q: You don't think it would go to your daughter; right? A: I don't think so. *I don't know*.") (emphasis added). If there is some provision *of the contract* that would obligate UBH to pay Tomlinson instead of Jones, it is conspicuously absent from UBH's submission. Whatever follow-on obligation Jones may have to reimburse Tomlinson for covering her treatment—be it legal or moral—is completely beside the point. Jones alleges she suffered an Article III injury when she was denied coverage she was contractually entitled to, and she stands to benefit monetarily through a judgment in her favor. That is enough for Article III.

*4. Mootness*

UBH's final jurisdictional argument can be easily dismissed. It argues that the class cannot obtain prospective injunctive relief because UBH ceased using the 2017 Guidelines more than eight years ago and has no plans to use them again. A defendant's voluntary cessation of the challenged conduct does not ordinarily deprive a federal court of jurisdiction to hear a case, and a defendant claiming otherwise bears "the heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000). All UBH has done to satisfy that burden is represent that it stopped using the 2017 Guidelines. That is simply not enough.

B. Jurisdiction over the Class

Defendant further argues that even if Jones's assignment was invalid, the rest of the class cannot prove standing on a common basis because many members likely assigned their claims to providers. However, even if this assertion proves true, UBH has not carried the burden necessary to warrant summary judgment on this point. Turning to Plaintiffs' motion, Defendant correctly urges that *Healy v. Milliman, Inc.*, 164 F.4th 701 (9th Cir. 2026) abrogated pre-*TransUnion* cases

that deferred questions of class standing until after judgment so long as at least one named plaintiff established his or her standing. *See Healy*, 164 F.4th at 706. For Plaintiffs to win summary judgment on this point, "*TransUnion* requires unnamed class members to demonstrate evidence of standing after class certification at summary judgment." *Id.* at 708. However, Plaintiffs here can meet that bar.

UBH asserts that, because 49 of 51 sample plaintiffs assigned their benefits, those Plaintiffs and others like them lack standing. The evidence for this point is provider-submitted claim forms, in which care providers requested payment from UBH for services rendered. Despite full discovery, UBH did not produce any assignment agreements (outside of the named Plaintiff's) to indicate the scope of those assignments. Nonetheless, UBH seeks decertification or summary judgment in its favor, based on the theory that individualized discovery and briefing on these assignment forms is necessary to establish whether "the proper plaintiffs" are represented in the class. However, drawing reasonable inferences and reading the evidence in the light most favorable to the non-moving party, there is at minimum a genuine dispute of material fact. It is at best unclear whether the assignment agreements at issue would cover the actions here: suing for reprocessing (rather than for "benefits" in the form of damages) and suing for declaratory and injunctive relief for breach of fiduciary duty. *See Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.*, 770 F.3d 1282, 1292 (9th Cir. 2014) (holding that an "assignment of my rights and benefits under this policy" did not reach fiduciary duty claims, based on the broader context of the agreement).

More to the point, whether hypothetical plaintiffs under ERISA could bring a reprocessing suit after assigning their rights to benefits is not dispositive here. This class is defined to include *only* those plaintiffs who have paid out-of-pocket expenses, which would be reimbursed in the event of a favorable result on reprocessing. *See Am. Ord. Denying Mot. For Class Decert.*, ECF 150, at 24-25. As discussed *infra*, plaintiffs here have shown a reasonable likelihood of such an outcome. Put simply, these plaintiffs have a stake in the outcome of the case, because it will redress the injury—allegedly unwarranted out-of-pocket expenses for care—that UBH caused

them by employing the wrong standard. That is enough for Article III. Whether UBH ultimately pays benefits directly to them or instead to their care providers is immaterial for these Plaintiffs, so the assignments do not defeat their standing.

Plaintiffs here have established, with evidence, that they were UBH plan beneficiaries who were denied coverage based on the challenged guidelines and might be entitled to a different result on reprocessing. Although they have not submitted the thousands of invoices required to establish that every unnamed class member incurred out-of-pocket expenses, such a showing is unnecessary. The class definition requires that claimants have paid out-of-pocket expenses to receive the care for which UBH denied coverage. *See Am. Ord. Denying Mot. For Class Decert.*, ECF 150, at 24-25. Although the class definition standing alone is not sufficient to establish liability, it is enough to establish standing on these facts. Any claimant who comes forward during claims administration will need to present evidence showing they incurred such expenses to confirm their eligibility to join the class and seek reprocessing.

UBH points to a one-way intervention problem if assignee providers are not represented in this action, but no such problem exists here. Assignee care providers' claims are co-extensive with, and can go no further than, the assignors' underlying rights. Contrary to UBH's arguments, a loss on the merits for plaintiffs *would* preclude follow-on actions by their assignees, because their rights are wholly derivative of their assignors' rights. If beneficiary plaintiffs are not entitled to reprocessing *on the merits*, neither are their assignee care providers. This case is thus distinguishable from one where there is a separate group of potential plaintiffs with freestanding rights who could exploit their one-way intervention privilege to get the benefits of a class action without the risks. *See Schwarzchild v. Tse*, 69 F.3d 293, 295-96 (9th Cir. 1995). Unlike that sort of classic one-way intervention case, here the estoppel is functionally mutual against the potential intervenors, because assignor plaintiffs are necessarily in privity with their assignees for purposes of the issues at play, and they share the same incentives to pursue their claims for reprocessing vigorously.

For these reasons, Plaintiffs are entitled to summary judgment on standing, and it is

appropriate to proceed to the merits of their claims.

C. Summary Judgement on the Merits

*1. Denial of Benefits*

Plaintiffs' first claim is for denial of benefits under 29 U.S.C. § 1132(a)(1)(B) or (a)(3).[2] The Ninth Circuit has ordered reprocessing where plaintiffs show (1) their claims were "denied based on the wrong standard," and (2) they "might be entitled to benefits under the proper standard." *Wit III*, 79 F.4th at 1084. For a class action, Plaintiffs must make this showing with common evidence. *See id.* at 1086. Viewing the evidence and drawing reasonable inferences in the non-movant's favor, Plaintiffs have shown enough to survive UBH's motion. Moreover, Plaintiffs have satisfied both prongs of the test laid out in *Wit III*, so they are entitled to summary judgment on their denial of benefits claim.

a. Whether Plaintiffs' denials were based on the wrong standard

To meet the first prong, Plaintiffs must show that the 2017 Guidelines were the "wrong standard" and that their denials were based on that standard. *Wit III* clarified that, for a denial to be "based on" the challenged factors, claimants must show the improper standard was not just one of multiple bases for denial, since such claims would likely be denied on independent grounds even under the proper standard. *Wit III*, 79 F.4th at 1085-86.

Plaintiffs argue they can satisfy these requirements by relying in large part on the district court's fact-finding in *Wit*, so it is necessary to decipher the Ninth Circuit's opinion in *Wit III* to determine the continued viability and reach of the district court's rulings in that case. To start, it bears repeating that the Ninth Circuit affirmed the district court's conclusions that (1) the 2017 Guidelines implemented the plans' GASC requirement, *Wit III*, 79 F.4th at 1088, and (2) UBH abused its discretion in writing those Guidelines, because "the challenged portion of the

---

[2] The Ninth Circuit held in *Wit III* that § 1132(a)(3) is not a proper basis for suing for reprocessing, because (a)(3) is a "catchall" provision and may be invoked only when other provisions do not provide relief. *Wit III*, 79 F.4th at 1086. Since reprocessing is available as a remedy under § 1132(a)(1)(B), it cannot arise under (a)(3). *Id.* As such, plaintiffs may proceed only under § 1132(a)(1)(B).

Guidelines did not accurately reflect GASC," *id.* at 1088 n.6. In other words, the Ninth Circuit has already determined that the 2017 Guidelines were inconsistent with the plan terms and thus constituted "the wrong standard," ushering Plaintiffs past the first hurdle. True, the Ninth Circuit explained at length that the district court had extrapolated too much from this conclusion by effectively requiring UBH to cover *all* care consistent with the GASC. Nonetheless, the flawed guidelines could have caused improper denials in cases where patients met other conditions and their requested care was consistent with the true GASC, but where UBH refused to cover that care on grounds that it was inconsistent with its overly restrictive interpretation of the GASC.

As for the second requirement—whether denials were "based on" that standard—Plaintiffs argue that narrowing the class not only distinguishes this case from *Wit* but also allows the remaining class members, by definition, to satisfy this condition. Since the class now excludes those who were denied for other reasons, such as administrative factors or unchallenged portions of the guidelines, it is necessarily true that those who remain were denied coverage because UBH deemed their claims inconsistent with the GASC. As Plaintiffs explain, UBH exhausted the list of administrative requirements for care first, before turning to the Guidelines to determine whether to approve care. Moreover, UBH was required to list *all* reasons for refusing coverage in the denial letters, ruling out the possibility that plaintiffs might inadvertently sneak into the enduring class with denials that were, unbeknownst to them, implicitly based on unchallenged guidelines. This is not to say that each class member would, in fact, be entitled to a different result upon reprocessing; some claims will likely have fallen outside both UBH's Guidelines and the true GASC and would therefore be denied, even under the proper standard. Nevertheless, the point of the reprocessing remedy is not to ensure that Plaintiffs' claims are approved, but rather to require the plan administrator to adjudicate claims based on the proper standards as indicated by the plan terms. Drawing all inferences in favor of Plaintiffs as the non-movants, it would be inappropriate to grant summary judgment for UBH on this point because a factfinder could fairly infer from the letters in evidence that Plaintiffs' denials were based on the wrong standard—the challenged 2017 Guidelines that failed accurately to reflect the GASC, per *Wit*.

Defendant claims that there are still factual disputes that prevent summary judgment, citing Plaintiffs' reliance on attorney argument to match the denial letters to the challenged guidelines. However, as discussed in the Order Denying Defendant's Motion to Decertify, that attorney argument simply reflects the minor textual analysis that will be the duty of a claims administrator in determining whether a given claimant is actually a member of the class. Denials based on administrative criteria would not cite the guidelines, because the insurance claims process required issuing denials on those grounds before reaching the guidelines. Likewise, denials citing unchallenged guidelines are filtered out via the class definition. As such, Plaintiffs are entitled to summary judgment on the broader legal point: Denials based solely on challenged guidelines, already determined to be an improper standard by virtue of their divergence from GASC, are "denials based on the wrong standard" as contemplated by *Wit III*. To the extent individualized fact-specific inquiries remain, they determine only whether one is a member of the class, not whether the class is entitled to prevail on this prong of liability.

b. Whether Plaintiffs might be entitled to benefits under the proper standard

Plaintiffs must next show that, as a class, they *might* be entitled to benefits under the proper standard. Defendants, in effect, seek to emphasize the word *show* here, and by that token call for individualized showings of entitlement to benefits. On the contrary, Plaintiffs correctly explain that such individualized determinations are not just uncalled for at this stage, but making such judgments would also inappropriately arrogate authority to the court that ought instead to be exercised by the plan administrator in the first instance. *See Saffle v. Sierra Pacific Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 456, 461 (9th Cir. 1996).

Instead, the proper emphasis is on the word *might*. As the Ninth Circuit reaffirmed in *Wit*, remand for reprocessing is inappropriate where it would be a "useless formality." However, Defendants overread this condition and seek to transform it into a requirement that plaintiffs prove their entitlement to benefits to the district court before they can win reprocessing. Not only would such a scheme be improper under Ninth Circuit law, *see Saffle*, 85 F.3d at 456, but it would also decide the issues backwards and render reprocessing itself a useless formality. Such individualized

determinations are only appropriate on *de novo* review, *Muniz v. Amec Const. Management, Inc.*, 623 F.3d 1290, 1294 (9th Cir. 2010), which is the proper standard when the plan administrator either lacks discretion to interpret plan terms or has failed to exercise that discretion altogether, *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 962-63, 972 (9th Cir. 2006). Neither condition is met here. Instead, abuse of discretion review requires the district court to defer to the plan administrator in the first instance, so long as the proper standards are applied during that review. *Saffle*, 85 F.3d at 456. When a plan administrator abuses its discretion by imposing conditions that conflict with the plain language of the plan—as *Wit III* confirmed happened here— the district court "should not itself decide whether benefits should be awarded but rather should remand to the administrator for it to make that decision under the plan, properly construed." *Id.* at 456.

To be sure, there are cases where the district court can determine in advance that reprocessing could not yield a different result, and in those cases remand would be inappropriate. The Ninth Circuit in *Wit III* pointed to a few examples, all of which share a common thread: There was a clear, independent reason why the plaintiff could not possibly qualify for benefits, so the defendants' errors were merely procedural and had no substantive effect. In *Ellenburg v. Brockway*, 763 F.2d 1091 (9th Cir. 1985), remand would have been a "useless formality" because the district court had already found that plaintiff was ineligible for early retirement benefits because he was too young to qualify and had lied about his age, applying for the benefits in bad faith. The defendant's failure to provide timely notice of the denial of benefits was thus immaterial and did not merit reprocessing. In *Hancock v. Montgomery Ward Long Term Disability Trust*, 787 F.2d 1302 (9th Cir. 1986), trustees' written responses were too slow and not detailed enough to meet the statutory requirements for denying Hancock's applications for benefits. Nonetheless, the panel held that remand for reprocessing was inappropriate because the trustees nonetheless responded "promptly" and there was "substantial evidence to support the Trust's decision," so a remand was unwarranted because it would simply require the Trust to write a more detailed letter reaching the same result. *Id.* at 1307-08. In *Judge v. Metropolitan Life Ins. Co.*, 710 F.3d 651 (6th Cir. 2013), the court held that MetLife's denial of benefits did not prejudice defendant because,

United States District Court
Northern District of California

although it used the wrong definition of "total disability" in an initial denial, the final denial letter used the proper definition. The panel found that earlier misstatements of the standard were just "shorthand jargon" that did not reflect the underlying evaluation of Judge's claims. Finally, in *Giordano v. Thomson*, 564 F.3d 163 (2nd Cir. 2009), the court rejected a fired employee's claim for remand to afford "full and fair review," finding that such remand would be "futile" because the plaintiff was fired for cause and thus could not be eligible for severance pay, regardless of which standard applied. None of these four cases stands for the proposition that an ERISA plaintiff must show that he or she would prevail on remand. Instead, they reflect the commonsense notion that if defendant shows that such remand would be inherently futile because of an underlying flaw that makes relief impossible, the court should not order reconsideration just for the sake of procedural formalities.

Defendant UBH nonetheless attempts to rely on *Wit III* and *Wit IV* for the proposition that plaintiffs bear the burden of making individualized showings of entitlement to relief under the counterfactual proper standard. UBH argues that *Wit III* reversed the district court on the merits because of a failure of proof, with the result that future plaintiffs must show individualized entitlement to benefits under the counterfactual proper standard, making class relief virtually impossible. UBH then reads *Wit IV* as reaffirming this holding, because the panel clarified that it had reversed the denial of benefits decision on the merits without remand.

However, UBH's stance requires over-reading those opinions in two ways. First, the disposition does not mean as much for Plaintiffs here as Defendant would have it. By Defendant's logic, the disposition in *Wit III*—reversal without remand—must have meant that even the named plaintiffs could not have succeeded on the merits. However, it bears repeating that the panel's reasoning in the mandamus order in *Wit IV* was jurisdictional, not substantive. *Wit IV*, 2024 WL 4036574, at *2. Indeed, the panel credited the district court for "its thorough analysis of the spirit of our mandate," but faulted it for having "lost the letter" of the order, which left the court jurisdiction only "to enter judgment for UBH on the denial of benefits claim." *Wit IV,* 2024 WL 4036574, at *2. Moreover, the Ninth Circuit's earlier reversal was based not just on the overbroad

United States District Court
Northern District of California

class, but also on the merits and remedies order that erroneously presumed UBH was *required* to cover all care consistent with the GASC. *Id.* Neither factor is present here. Regardless, the substantive question of whether redefining the class would cure the problems in *Wit III* was not addressed in that opinion, nor was it squarely at issue in *Wit IV*, because the panel there rejected the district court's approach on jurisdictional grounds alone. *Id.*

Second, UBH's interpretation of *Wit III* assumes the panel silently reversed longstanding Ninth Circuit law on ERISA reprocessing claims. Not only did the panel decline to say it was doing so, but it even cited as support the cases that it would have had to overturn for UBH's interpretation to be correct. For example, to support its rule statement that plaintiff must show "that he or she might be entitled to benefits under the proper standard," the panel cited *Saffle*, a case which specifically held that the district court should not take it upon itself to apply the proper standard to plaintiff's claim but should instead remand it to the plan administrator for review under the proper standard. *Saffle v. Sierra Pacific Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 461 (9th Cir. 1996). It would be inconsistent with that holding if a district court were to require plaintiff first to prove to that court's satisfaction that he or she would be entitled to benefits on remand, as this would infringe on the plan administrator's discretion during reprocessing. The panel also cited *Patterson v. Hughes Aircraft Co.*, 11 F.3d 948 (9th Cir. 1993), which reached a similar holding and ordered the district court to remand the case to the plan administrator for review under the proper standard in the first instance. *Id.* at 951.

In sum, Defendant is wrong to contend that Plaintiffs must show more than a reasonable possibility of a different result upon remand. As discussed *supra*, Plaintiffs have drawn the class such that their denials, by definition, must have been "based on" the wrong standard—the challenged guidelines—in the sense required by *Wit III*. There is no evidence that plaintiffs as a class would be denied relief based on independent reasons that would have disqualified them. *Cf. Condry v. United Health Group, Inc.*, No. 20-16823, 2021 WL 4225536, at *3 (9th Cir. 2021) (finding no standing for reprocessing claims by plaintiffs who went out of network for care and thus could not be entitled to reimbursement). Indeed, Plaintiffs' denial letters—which were

required, under UBH policy, to cite *all* reasons for denial—will already filter out those who could not possibly be eligible for a different result on reprocessing, in line with past Ninth Circuit precedent. Contrary to UBH's arguments, *Wit III* does not require more proof of prejudice than this. Since UBH has not presented any other evidence to suggest that, as a class, this group could not receive a different determination upon reprocessing, the case is distinguishable from those cited in *Wit III* as examples where remand would be a "useless formality." Since Plaintiffs at least *might* be entitled to benefits if reprocessed under a proper standard that accurately reflects the GASC, they have met the requirements of this prong.

Plaintiffs meet both prongs of the *Wit III* test and are entitled to summary judgment and reprocessing.

*2. Breach of Fiduciary Duty*

Plaintiffs also bring a claim for breach of fiduciary duty, and they seek declaratory and injunctive relief preventing UBH from using the 2017 Guidelines to adjudicate their request for coverage in the future. As explained, the Ninth Circuit held in *Wit III* that judgment on the identical claim in the *Wit* Litigation survived to the extent it was premised on factual findings—such as the finding that financial incentives infected UBH's guideline development process—that "were not intertwined with [the district court's] incorrect interpretation of the Plans" under which it had required UBH to cover *all* care consistent with GASC. 79 F.4th at 1088 n.7. On remand, the district court held that the claim survived in part, based on the theory that UBH breached its fiduciary duty by adopting the flawed guidelines, regardless of how or whether it applied those guidelines in denying specific claims. *Wit v. United Behavioral Health*, No. 14-cv-02346, Dkt. 669, at 30-31. That conclusion has not been disturbed in any subsequent appeal.

Plaintiffs now argue that UBH is collaterally estopped from relitigating its liability for breach of fiduciary duty under that surviving theory. The particular variety of estoppel invoked by Plaintiffs is known as offensive nonmutual collateral estoppel, so called because the prior judgment is being wielded as a sword by a plaintiff (hence, the "offensive" component) who was not a party, or in privity with a party, to the previous litigation (hence, the "nonmutual"

component). In the pathbreaking case of *Parklane Hosiery Co, Inc. v. Shore*, the Supreme Court approved the use of offensive nonmutual collateral estoppel in the federal courts, and it "grant[ed] trial courts broad discretion to determine when it should be applied." 439 U.S. 322, 331 (1979). In the Ninth Circuit, "application of offensive nonmutual collateral estoppel is appropriate only if (1) there was a full and fair opportunity to litigate the identical issue in the prior action; (2) the issue was actually litigated in the prior action; (3) the issue was decided in a final judgment; and (4) the party against whom issue preclusion is being asserted was a party or in privity with a party to the prior action." *Syverson v. International Business Machines Corp.*, 472 F.3d 1072, 1078 (9th Cir. 2007). Even if those factors are met, "[t]he Supreme Court's grant of 'broad discretion' to trial courts provides those trial courts the authority to take potential shortcomings or indices of unfairness into account when considering whether to apply offensive nonmutual issue preclusion." *Id.* (quoting *Parklane Hosiery*, 439 U.S. at 331).

UBH is precluded from relitigating the factual question of whether its own financial interests infected the development of the 2017 Guidelines, and therefore, from challenging the legal conclusion that it breached its fiduciary duty of loyalty and care to its members by adopting the 2017 Guidelines. First, UBH had a full and fair opportunity to litigate these issues in the *Wit* Litigation, and it did so vigorously. That litigation proceeded through class certification, dispositive motions, trial, appeal, remand, mandamus, and remand again. At every stage, UBH fought the breach of fiduciary duty claim. It attempted to dispute the factual findings at trial, it appealed the judgment to the Ninth Circuit, and it then tried to convince the district court that its factual conclusions were "intertwined with" its erroneous plan construction finding and thus reversed by the court of appeals. It is hard to imagine a more fulsome opportunity to litigate an issue, and it is equally hard to imagine how a party could have more intensely seized on such an opportunity.

The other elements are met, too. Though the *Wit* Litigation has not technically proceeded to a final judgment, the case is, for the purposes of the issues at hand here, finished. The parties have submitted a stipulated form of final judgment and are awaiting only an adjudication of the

request for attorney's fees before it is entered. UBH argues that, in light the whiplash between the district court and the Ninth Circuit in that case, it is plausible that the surviving breach of fiduciary duty claim may not survive a subsequent appeal. Even if that is true, the prospect of an appeal does not affect the preclusive effect of a district court decision. *See Robi v. Five Platters, Inc.*, 838 F.2d 318, 327 (9th Cir. 1998) (citing 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure: Jurisdiction* § 4433, at 305 (1981) ("[I]n federal courts . . . the preclusive effect of a lower court judgment cannot be suspended simply by taking an appeal that remains undecided.")). The final element is also satisfied, as UBH is the defendant in this case and in the *Wit* Litigation.

UBH's principal objections to the application of offensive nonmutual collateral estoppel sound in unfairness, but those objections are unpersuasive. First, UBH claims it had little reason to defend the development of the 2017 Guidelines in the *Wit* Litigation because the development of the 2017 Guidelines was "bound up with a much broader dispute as to UBH's financial incentives over the entire class period of 2011 to 2017." UBH Opp., at 21. However, the 2017 Guidelines *were themselves at issue* in the *Wit* Litigation, so UBH can hardly claim that it lacked incentive to litigate the validity of those guidelines. That the financial incentives that gave rise to the ERISA-noncompliant guidelines arose prior to 2017 is irrelevant.

UBH also claims that it had limited incentive to litigate issues related to the 2017 Guidelines in particular because "the *Wit* plaintiffs were seeking class-wide prospective injunctive relief in connection with their breach of fiduciary duty claim." UBH Opp., at 21–22. That is exactly what the class is seeking here, so it is unclear why UBH would be interested in litigating vigorously the validity of the 2017 Guidelines if it was not previously. At bottom, UBH *seems* to be saying that because this litigation concerns only the 2017 Guidelines, it will focus its efforts more effectively, but that is not how preclusion works. UBH had every incentive to defend the 2017 Guidelines in the *Wit* Litigation against the same attack that is being mounted here. It was unsuccessful and it is now bound by that judgment.

UBH raises two more arguments relevant to the fiduciary duty analysis. First, it urges that claimants with plans that included a term requiring consistency with the 2017 Level of Care

Guidelines should not be entitled to relief. This argument fails, however, because as the district court found in *Wit* on remand, UBH breached its fiduciary duty by adopting the guidelines in the first place. Because the Guidelines were designed to prioritize UBH's financial benefit rather than patient care, UBH breached its fiduciary duty to Plaintiffs in adopting them.

Second, UBH's effort to resurface the question of exhaustion as to the fiduciary duty claim is a nonstarter. In *Wit III*, the Ninth Circuit remanded to the district court "to determine in the first instance the threshold issue of whether the exhaustion requirement applies to the fiduciary duty claim and, if so, whether that requirement was satisfied by the unnamed class members or otherwise should be excused in light of [the panel's] decision." 79 F.4th at 1089. The district court did so in an extremely thorough order, concluding that the *Wit* plaintiffs were not "required to exhaust their administrative remedies on the surviving portion of their breach of fiduciary duty claim." *See* No. 3:14-cv-02346-JCS, Dkt. 661, at 55–56. UBH surely disagrees with that decision, but it offers no reason why it should be permitted to relitigate it. Therefore, Plaintiffs' motion for summary judgment as to the breach of fiduciary duty claim is granted, and UBH's cross motion as to the same claim is denied.

*3. Exhaustion*

Despite the foregoing analysis, UBH is entitled to summary judgment on the denial of benefits claim, but *only* with regard to the subset of class members whose plans contractually required exhaustion and who failed to meet that requirement. For other class members who are subject only to the judicially-constructed rule requiring exhaustion under ERISA, it is within the district court's discretion to excuse that requirement. Such excusal is appropriate here because further appeals would have been futile under UBH's 2017 Guidelines.

To start, UBH's exhaustion argument is estopped as to the fiduciary duty claim, as discussed *supra*. The Ninth Circuit acknowledged in *Wit III* that exhaustion was not required for statutory fiduciary duty claims, so long as they were not "disguised claims for benefits." *Wit III*, 79 F.4th at 1089. The district court found on remand that the claims there—the same as those here—were not claims for benefits and therefore were not subject to exhaustion requirements.

UBH is correct that courts have imposed a prudential exhaustion requirement in the context of ERISA. *See Diaz v. United Agr. Employee Welfare Ben. Plan and Trust*, 50 F.3d 1478, 1483. However, that requirement is subject to exceptions, within the discretion of the district court. Indeed, “there are occasions where a court is obliged to exercise its jurisdiction and is guilty of an abuse of discretion if it does not” do so by excusing exhaustion in some cases. *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 626 (9th Cir. 2008). A court may excuse parties from exhausting their administrative remedies in various situations, “the most familiar examples perhaps being when resort to the administrative route is futile or the remedy inadequate.” *Id.* at 626-27 (quoting *Amato v. Bernard*, 618 F.2d 559 (9th Cir. 1980)).

Here, exhaustion would have been futile because—as demonstrated repeatedly by the more than half of Plaintiffs who did exhaust their remedies—UBH was highly consistent in applying its flawed 2017 Guidelines. As a result, there is little chance that a plaintiff who was denied solely based on the challenged guidelines here could have achieved a different result during an administrative appeal. UBH points to the fact that 15 percent of plan members who appealed had their benefit denials overturned, but it does not explain whether those reversals were based on the challenged guidelines or on any of a variety of other factors at play in a given coverage claim. By contrast, Plaintiffs here had exceedingly narrow grounds for denial, based *solely* on challenged Guideline provisions, which the record shows UBH applied rigidly and systematically. While appeals might not have been futile for the average plan beneficiary at the time, the record shows a high chance they would have been futile for the class members here.[3]

Moreover, there is little or no unfairness to UBH if exhaustion is excused, because the

---

[3] The Ninth Circuit’s vacated opinion in *Wit II* echoed UBH’s point that “it is uncontested that some beneficiaries successfully appealed the denial of their benefit claims, so” the exceptions to exhaustion were “not satisfied.” *Wit II*, 58 F.4th 1080, 1097-98 (*vacated and superseded on rehearing*). Even setting aside the fact that the *Wit II* opinion was vacated, this case would still be distinguishable on substance. As explained at length above, the *Wit* class was much broader than the one here and included members who were denied, in whole or in part, based on *any* of the 2017 Guidelines, not just the challenged provisions. That broader class had many more potential bases for reversal, so it is likely true that administrative appeals may have borne fruit for some class members. The difference in class composition here requires a different conclusion.

named Plaintiff and many other class members exhausted their claims before laying them out here; that exhaustion "puts the defendant on notice of the absent class members' claims and thus fulfills the function of the internal grievance procedure." *Des Roches v. California Physicians' Service*, 320 F.R.D. 486, 500-01 (N.D. Cal. 2017) (quoting *Leon v. Standard Ins. Co.*, 2016 WL 768908, at *4 (C.D. Cal. Jan. 28, 2016)). Imposing an exhaustion requirement on unnamed plaintiffs in this case "would merely produce an avalanche of duplicative proceedings and accidental forfeitures, and so is not required." *Des Roches*, 320 F.R.D. at 500-01 (quoting *In re Household Int'l Tax Reduction Plan*, 441 F.3d 500, 502 (7th Cir. 2006)).

That said, UBH is correct that class members whose plans explicitly required exhaustion, and who did not exhaust their administrative remedies, are not entitled to the doctrine of excusal. Although there is no binding authority directly on point, the logic of the vacated opinion in *Wit II* is persuasive. The panel there explained that "federal common law doctrines cannot alter or override clear and unambiguous plan terms," so an express contractual requirement of administrative exhaustion is not subject to the discretionary exceptions that limit the *prudential* doctrine of exhaustion. *Wit II*, 58 F.4th 1080, 1097-98 (9th Cir. 2023) (*vacated and superseded on rehearing by Wit III*, 79 F.4th 1068).[4] For that reason, UBH is entitled to summary judgment only as to the denial of benefits claims brought by class members who (1) failed to exhaust administrative remedies *and* (2) were subject to plans that explicitly required such exhaustion. Since it will be readily determinable at claims administration whether those conditions are met, this does not present the sort of fact-intensive, individualized adjudication that would require a trial or defeat commonality of the remaining class members.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment is GRANTED and Defendant's motion for summary judgment is DENIED, except as to denial of benefits claims

[4] This logic does not apply to the fiduciary duty claims, which are statutory in nature and thus not subject to prudential or contractual exhaustion requirements, so long as they are not disguised claims for benefits. See *Wit III*, 79 F.4th 1068, 1089 (citing *Spinedex*, 770 F.3d at 1294).

brought by Plaintiffs who were subject to contractual exhaustion requirements and failed to fulfill them. The appropriate remedies for each claim will follow further briefing by the parties.

**IT IS SO ORDERED**.

Dated: September 29, 2026

RICHARD SEEBORG
United States District Judge

United States District Court
Northern District of California